IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALFRED CHESTNUT, | ) | |
| ANDREW STEWART, JR, | ) | |
| and RANSOM WATKINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:20-cv-02342 |
| | ) | |
| DONALD KINCAID, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

LEGAL STANDARD...................................................................................................1

ARGUMENT ...............................................................................................................3

I. Plaintiffs' Use of Initials Renders Their Claims Incognizable. ................................3

II. Plaintiffs Assert False Allegations Regarding "suppressed police reports."..............7

III. Plaintiffs' Malicious Prosecution Claim Fails to Properly Plead that Individual Defendants did not have Probable Cause to Arrest Plaintiffs. ..................................9

IV. Plaintiffs Fail to Plead Facts to Plausibly Suggest that Individual Defendants Fabricated Evidence Related to Witness Statements and Identifications. ..............11

V. Plaintiffs Fail to Plead Facts to Establish that Individual Defendants Suppressed Exculpatory or Impeachment Material, or Failed to Conduct an Adequate Investigation. ......................................................................................................14

a. Plaintiff Fail to Plead Facts to Plausibly Allege a *Brady* Violation. ..............14

b. Plaintiffs' Claim that Individual Defendants Failed to Adequately Investigate is not Plead with Facts to Establish a Basis for Liability. .............................15

VI. Plaintiffs' Failure to Intervene Claim Fails Because the Complaint Does not Plead Facts Sufficient to Plausibly Establish Primary Liability. ......................................16

VII. Plaintiffs Fail to Plead Facts to Establish Supervisory Liability Against Defendant Barrick. ................................................................................................................17

VIII. Absence of Any Evidence of Malice is Fatal to the State Claim of Malicious Prosecution. .........................................................................................................18

IX. Plaintiffs' IIED Claim is Unsupported.................................................................19

CONCLUSION............................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Arsham v. Mayor & City Council of Baltimore*, 85 F. Supp. 3d 841 (D. Md. 2015) ................................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 1, 2, 4, 6, 7

*Baker v. McCollan*, 443 U.S. 137 (1979) ................................................................................ 15

*Beaman v. Souk*, No. 10-CV-1019, 2011 WL 832506 (C.D. Ill. Mar. 3, 2011) ................................. 6, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 1, 2, 6, 7

*Blackmore v. City of Phoenix*, 126 F.App'x 778 (9th Cir. 2005) ................................................... 5

*Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009) ......................................................... 13

*Burgess v. Baltimore Police Dep't*, No. CV RDB-15-0834, 2016 WL 795975 (D. Md. Mar. 1, 2016) ....... 5

*Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986 (D. Md. 2019) ......................................... 18

*Chavez v. Martinez*, 538 U.S. 760 (2003) ........................................................................... 13

*Clipper v. Takoma Park*, 876 F.2d 17 (4th Cir. 1989) .............................................................. 9

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .......................................................... 11, 12

*Dunaway v. New York*, 442 U.S. 200 (1979) ......................................................................... 9

*Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012) ................................................................... 9

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ........................................................... 2, 10

*Garcia v. Gang Task Force*, RDB-16-674, 2017 WL 1944100 (D. Md. May 9, 2017) ......................... 2, 7

*Garrett v. Wal-Mart Stores, Inc.*, No. 1:19-CV-69, 2020 WL 1303896 (N.D.W. Va. Mar. 19, 2020) ...... 11

*Garrett v. Wal-Mart Stores, Inc.*, No. 1:19-CV-69, 2019 WL 9078396 (N.D.W. Va. Aug. 7, 2019) ........ 11

*Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500 (4th Cir. 2015) ............................ 8

*Harmon v. Unisys Corp.*, 356 F. App'x 638 (4th Cir. 2009) ....................................................... 2

*Harris v. Jones*, 281 Md. 560 (1977) ................................................................................. 19

*Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) ................................................ 16

*Hoover v. Langston Equipment Assoc., Inc.*, 958 F.2d 742 (6th Cir. 1992) .................................... 4

*Ibarra v. United States*, 120 F. 3d 472 (4th Cir. 1997) ........................................................... 2

*Illinois v. Gates*, 462 U.S. 213 (1983) ............................................................................... 9

*Jackson v. Experian Fin. Servs.*, No. CIV.A. RDB-13-1758, 2014 WL 794360 (D. Md. Feb. 26, 2014) .... 3

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ..................................................................... 3

*Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000) ...................................................................... 7

*Juntti v. Prudential-Bache Sec., Inc.*, 1993 WL 138523 (4th Cir. May 3, 1993) ............................. 4

*Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663 (1992) ........................................ 19

*Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006) ....................................................................... 2

*Malibu Media, LLC v. John Doe*, PWG-13-365 2014 WL 718822 (D. Md. Dec. 16, 2014) ..................... 2

*Manikhi v. Mass Transit Admin.*, 360 Md. 333 (2000) ............................................................................ 19

*McConnell v. Watauga Cty.*, 790 F. App'x 543 (4th Cir. 2020) ................................................................ 11

*McConnell v. Watauga Cty.*, No. 5:17-CV-195-MOC-DCK, 2019 WL 2344223 (W.D.N.C. May 31, 2019) ....................................................................................................................................................... 11

*McPherson v. Balt. Police Dep't*, 2020 WL 6063479 (D. Md. Oct. 14, 2020) ..................................... 4, 6

*Montgomery Ward v. Wilson*, 339 Md. 701 (1995) .................................................................................. 19

*Okwa v. Harper*, 360 Md. 161 (2000) ...................................................................................................... 19

*Owens v. Baltimore city State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014). ................................. 14

*Randall v. Prince George's Cty.*, 302 F.3d 188 (4th Cir. 2002) .................................................. 16, 17, 18

*Revene v. Charles Cty. Comm'rs*, 882 F.2d 870 (4th Cir. 1989) ........................................................ 2, 10

*Roberts v. Prince George's Cty., MD*, 157 F. Supp. 2d 607 (D. Md. 2001) ............................................. 4

*Sattler v. Johnson*, 857 F.2d 224 (4th Cir. 1988) .................................................................................... 15

*Shaw v. Straud*, 13 F.3d 791 (4th Cir. 1994) .......................................................................................... 17

*Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933 (D. Md. July 17, 2013) ........................................................................................................................................................... 6

*United States v. Gray*, 137 F.3d 765 (4th Cir. 1998) ................................................................................ 9

*United States v. Marrero*, 904 F.2d 251 (5th Cir. 1990) ......................................................................... 15

*United States v. White*, 970 F.2d 328 (7th Cir. 1992) .............................................................................. 15

*Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) ..................................................................................... 5

*Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599 (4th Cir. 2009) ............................................. 4

*Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005) ........................................................................... 11

*White v. Wright*, 150 F. App'x 193 (4th Cir.2005) ................................................................................... 11

*Williams v. Hall*, No. 5:11-CV-279-D, 2013 WL 3200512 (E.D.N.C. June 24, 2013) ........................... 11

**STATUTES**

42 U.S.C. § 1983 ............................................................................................................................ passim

28 U.S.C. § 1367 (c)(3) ......................................................................................................................... 20

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................... 1, 2

**<u>INTRODUCTION</u>**

This case arises from the November 18, 1983 murder of a 14-year-old student, DeWitt Duckett, at Harlem Park Junior High School. Following a week-long investigation in the wake of the murder, Police arrested three former students, Plaintiffs Chestnut, Stewart, and Watkins. The exhaustive investigation was supported by probable cause. All three Plaintiffs admitted being inside the school around the time of the murder and four eyewitnesses provided investigators with statements and later testified that Plaintiffs robbed and murdered DeWitt Duckett for his jacket. Police also found a jacket matching the description of the one taken from Duckett in Plaintiff Chestnut's closet. In 1984, a Baltimore City Jury found Plaintiffs guilty of felony murder and each was sentenced to prison.

More than three decades after the convictions, Plaintiffs now assert broad and conclusory allegations that BPD officers "coerced, suggested, and/or fabricated a false statement and identifications" from unnamed witnesses; failed to disclose these vague activities; failed to adequately follow-up on alleged leads about one of 18 suspects; and "ignored and suppressed" these alleged leads. Plaintiffs' failure to even name the witnesses and "suspect" at the heart of their allegations, relating to a murder that occurred more than thirty-five years ago, makes it impossible for the Individual Defendants to defend against Plaintiffs' broad and conclusory claims. As a result, Plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted.

**<u>LEGAL STANDARD</u>**

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). If a complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it fails to satisfy the pleading requirements and dismissal is appropriate. *Id*. (quoting *Twombly*, 550 U.S. at 555). A complaint must also allege facts that allow "the Court to infer more than the mere possibility of misconduct" and requires "factual enhancements" of "naked assertions" of wrongdoing. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (applying the *Twombly* and *Iqbal* pleading standard to individual officers named in a complaint).

When evaluating a motion to dismiss under 12(b)(6), a court must accept as true all the well-pleaded material facts and must draw all reasonable inferences from those facts in the light most favorable to the pleader. *Ibarra v. United States*, 120 F. 3d 472, 474 (4th Cir. 1997). But unsupported legal conclusions and conclusory factual allegations that do not reference specific events do not suffice. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Thus, a court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). Similarly, a complaint's conclusory allegations based solely 'upon information and belief' are "insufficient to defeat a motion to dismiss." *Harmon v. Unisys Corp.*, 356 F. App'x 638, 640-41 (4th Cir. 2009). Pleading "upon information and belief" is improper when "used as an inadequate substitute for providing detail as to why the element is present in an action" rather than when "a plaintiff does not have personal knowledge of the facts being asserted." *Malibu Media, LLC v. John Doe*, PWG-13-365 2014 WL 718822 at *4 (D. Md. Dec. 16, 2014). Pleading requirements are supposed to ensure a defendant receives fair notice of the factual basis for claims contained within a complaint. *Garcia v. Gang Task Force*, RDB-16-674, 2017 WL 1944100, at *3 (D. Md. May 9, 2017) (citing *Twombly*, 550 U.S. at 545).

## ARGUMENT

The Complaint recites the elements of claims against Individual Defendants for: (I) Malicious Prosecution; (II) Fabrication of Evidence; (III) Failure to Disclose Exculpatory and Impeachment Material; (IV) Failure to Intervene; and, (V) Supervisory Liability; as well as state claims for (VII) Malicious Prosecution; and, (VIII) Intentional Infliction of Emotional Distress. For the reasons below, this Court should dismiss the claims against Individual Defendants.

## I. Plaintiffs' Use of Initials Renders Their Claims Incognizable.

Plaintiffs allege that Individual Defendants improperly obtained identifications and statements from four eyewitnesses. Rather than identify the witnesses at the heart of Plaintiffs' claims, throughout their entire complaint Plaintiffs refer to each of the four witnesses with initials, rendering their claims impossibly vague. Additionally, Plaintiffs allege Individual Defendants failed to properly investigate one of 18 potential suspects mentioned in the course of their investigation. Again, Plaintiffs choose not to identify this "suspect," referring to him instead as "John Doe." Plaintiffs' unilateral decision to conceal the identities of important witnesses and alleged suspects improperly substitutes Plaintiffs' judgment for that of this Court. *See James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993) (Whether circumstances warrant that the general presumption of open trials—including identification of parties and witnesses by their real names—should yield in favor of anonymity is a question for the trial court.). Without knowledge of the identities of even the parties supposedly involved in the alleged misconduct, Individual Defendants face an insurmountable challenge — defending against claims that are incomprehensible. *See Jackson v. Experian Fin. Servs.*, No. CIV.A. RDB-13-1758, 2014 WL 794360, at *3 (D. Md. Feb. 26, 2014) (granting a motion to dismiss because plaintiff's claims were not presented in "an understandable and efficient manner") (internal citations omitted).

Not only do Plaintiffs fail to properly identify key parties to their allegations, Plaintiffs fail to properly identify Individual Defendants in their pleading as well. Plaintiffs' Complaint inappropriately groups various Defendants together without differentiation or explanation as to what each person did or did not do, how they were involved in the purported action giving rise to civil liability, or what they are being thrust into this suit to defend against. Individual Defendants are left to wonder as to what allegations they are actually facing. *See McPherson v. Balt. Police Dep't*, 2020 WL 6063479, at *5 (D. Md. Oct. 14, 2020) ("While group pleading can be permissible in certain circumstances, it must be 'plausible that each defendant was involved in all of the facts as alleged.'") (internal citation omitted). The Fourth Circuit, in *Juntti v. Prudential-Bache Sec., Inc.*, wrote of group pleading that, "[s]uch pleading practice is insufficient either to provide a defendant with fair notice of the claim against him or to protect a defendant from harm to his reputation or goodwill … the burden rests on plaintiffs to 'enable a particular defendant to determine with what it is charged.'" 1993 WL 138523, at *2 (4th Cir. May 3, 1993) (quoting *Hoover v. Langston Equipment Assoc., Inc*., 958 F.2d 742, 745 (6th Cir. 1992)).

Group pleading fails not only because of the pleading standards applicable here, but also because Plaintiffs' federal claims are brought pursuant to Section 1983 ("§1983"). It is well-established that liability under §1983 does not attach unless an individual defendant caused or participated in a constitutional deprivation. *Iqbal*, 556 U.S. at 676 (". . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). To state a claim under §1983, "a plaintiff must aver that [each defendant] acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009). In *Roberts v. Prince George's Cty., MD*, the District of Maryland held that "[i]n a §1983 personal

or individual capacity suit, a plaintiff must show that the official charged *personally* caused the deprivation of his federal rights." 157 F. Supp. 2d 607, 608 (D. Md. 2001) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977)); *see also Blackmore v. City of Phoenix*, 126 F.App'x 778, 782 (9th Cir. 2005) (affirming district court's decision to grant summary judgment because "[§]1983 liability . . . cannot be based on a group liability theory").

Here, Plaintiffs' Complaint is replete with inappropriate group pleading and thus fails to meet the pleading standard. *See* Compl. at ¶52 ("the Officer Defendants questioned…"); *id*. at ¶54 ("The Officer Defendants later interrogated…"); *id*. at ¶55 ("told the police…"); *id*. at ¶56 ("the Officer Defendants questioned…"); *id*. at ¶57 ("the Officer Defendants failed to memorialize…"); *id*. at ¶69 ("The Officer Defendants interviewed…"); *id*. at ¶70 ("Officer Defendants sent patrol cars…"); *id*. at ¶71 ("The Officer Defendants threatened and intimidated the young boys…"); *id*. at ¶71 ("The Officer Defendants also used suggestive tactics…"); *id*. at ¶87 ("the Officer Defendants coached and intimidated…"); *id*. at ¶88 (The Officer Defendants fabricated…"); *id*. at ¶89 ("The Officer Defendants fed these details…"); *id*. at ¶91 ("…told the Officer Defendants…"); *id*. at ¶92 ("The Officer Defendants also attempted to coerce…"); id. at ¶105 ("as the Officer Defendants had coerced and coached them to do…"); *id*. at ¶160 ("the Officer Defendants caused…"); *id*. at ¶165 ("the Officer Defendants fabricated…"); *id*. at ¶169 ("the Officer Defendants deprived…"); *id*. at ¶191 ("The Officer Defendants caused…"); *id*. at ¶198 ("…conduct of the Officer Defendants…").

Although Individual Defendants acknowledge this Court's holding in *Burgess v. Baltimore Police Dep't*, No. CV RDB-15-0834, 2016 WL 795975 (D. Md. Mar. 1, 2016), finding that a plaintiff did not improperly utilize group pleading, the circumstances of this case are completely dissimilar. Unlike in *Burgess*, Plaintiffs' extensive reliance on group pleading in combination with

their failure to name essential parties to their claims add up to create a pleading so vague as to render it legally insufficient. Individual Defendants are left to wonder about most basic facts necessary for Plaintiffs' allegations. Who "coerced" whom?! Regarding whom did who "not disclose" details of their interactions?! Whom did who fail to "properly investigate" as an alternative suspect?!

Recently, a Court sitting in this district dismissed §1983 claims against defendant officers due to improper group pleading. *McPherson*, 2020 WL 6063479. The Court found that Plaintiffs did not satisfy the requisite pleading standard because they wrongly "use[d] group pleading to extend their . . . allegations to officers who had no specifically alleged involvement in the problematic portions of the investigation, without pleading any plausible factual basis to do so." *Id*. at *5. Plaintiffs' inability to "ple[a]d facts from which [the] court can plausibly infer" unconstitutional actions rendered the complaint insufficient under federal pleading requirements of fair notice. *Id*. In short, "merely grouping every defendant together as 'defendants' [does] not meet the standard of *Twombly* and *Iqbal*" required in this Court to sustain the complaint. *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013).

On top of Plaintiffs' failure to plead essential facets of their claims — the very identity of the parties — Plaintiffs' dizzying use of initials impossibly muddles their claims so badly that Plaintiffs' pleading does not provide Individual Defendants fair notice of the factual basis of the claims as required by law. The problem of vague pleading against a collective group, like Individual Defendants, is particularly acute in a case such as this one where liability is predicated upon personal involvement in a specific alleged constitutional wrong. *See, e.g.*, *Beaman v. Souk*, No. 10-CV-1019, 2011 WL 832506, at *12 (C.D. Ill. Mar. 3, 2011) (dismissing *Brady* claim as

impermissibly vague where group pleading made it impossible to discern if the evidence at issue was withheld by the police or prosecutor). As discussed above, the very purpose of the *Twombly* pleading standard is to provide defendants with fair notice of plaintiffs' claims. *Garcia*, 2017 WL 1944100, at *3. Plaintiffs' complaint should be dismissed for failing to articulate a cognizable claim.

## II. Plaintiffs Assert False Allegations Regarding "suppressed police reports."

Plaintiffs' due process claim alleging a *Brady* violation occurred in this case based upon "suppressed police reports" is impermissibly vague. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). To the extent that these allegations are rooted in alleged suppression of notes or reports prepared by Detective Kincaid, the undisputed evidence, of which this Court may properly take judicial notice, irrevocably establishes that these materials were appropriately disclosed to the prosecutor. *See Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (To the extent that Section 1983 creates a *Brady* like duty on a police officer, the duty is discharged by presenting the impeaching or exculpatory material to the prosecutor.).

Plaintiffs dramatically claim that "after decades of perseverance, they uncovered suppressed police reports that identified the likely perpetrator of the murder." (Compl. at ¶4.) In fact, Plaintiffs incorporate Plaintiff Chestnut's 2019 letter to State's Attorney Marilyn Mosby where he claims "[t]he things I read in my police reports I've never seen befor, (sic) all of this is newly discovered evidence." (*Id*. at ¶117.) Shockingly, an elementary review of the appellate record plainly belies these erroneous allegations.

The truth is, as plainly reflected in the record and in Plaintiffs' own brief on direct appeal, at trial Plaintiffs requested that the State turn over any notes or reports prepared by Detective Kincaid for use on cross-examination. (Brief for Appellants at 9, *Chestnut v. State of Maryland*,

No. 75 Sept. Term 1984 (Md. Ct. Spec. App. Sept. 30, 1985), attached hereto as Ex. 1.); (Excerpts of Trial Transcripts, May 23, 25, 1984, attached hereto as Ex. 2.) (reflecting the prosecutor's stipulation that reports authored by Detective Kincaid exist, and that they were submitted into evidence as "Watkins Exhibit 5" and sealed).[1] The request was denied and the court ordered that the relevant documents be collected for purposes of appellate review. *Id.* These reports appeared in the record as "Watkins' Exhibit No. 5." (*Id.*; *see also* Watkins Criminal Docket, at p. 2, Entry of May 25, 1984, attached hereto as Ex. 3.) Plaintiffs' appellate brief discussed the contents of these reports, including a report that highlighted potential suspects, and argued that Plaintiffs were denied a chance to attack the Police Department's investigation. (*Id.* at 11.) Plaintiffs' direct appeal also argued, in the alternative, that the reports should have been disclosed because they contained *Brady* material. (*Id.*) The Court of Special Appeals rejected Plaintiffs' arguments, holding that Plaintiffs' purpose in requesting production of Detective Kincaid's notes and records was to "conduct a 'fishing expedition'" and that the trial court did not err in denying Plaintiffs' request. (*Chestnut v. State of Maryland*, No. 75 Sept. Term 1984, at 11 (Md. Ct. Spec. App. Sept. 30, 1985), attached hereto as Ex. 4.)

These public records prove that Individual Defendants properly produced all records to the trial prosecutor before trial. After objecting to providing the police reports for cross-examination, the trial prosecutor filed them under seal pursuant to the trial court's ruling. Consistent with the court's holding, Plaintiffs received the reports in preparation for their appeal. Plaintiffs' appellate briefs discuss the reports' contents ad-nauseam and still failed to mount a successful *Brady* argument on direct appeal. Plaintiffs' claims that they have never seen these reports and that

---

[1] These documents are all part of the public record and are subject to judicial notice under Fed. R. Evid. 201. *See Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Defendants suppressed them are false and are a misleading attempt to build a narrative of police misconduct despite any factual support.

To the extent the SAO now regrets its posture in a case more than three decades old, they are free to "accept responsibility" for decisions the Courts correctly held lawful at the time. To that end, the SAO was free to join Plaintiffs' Joint Petition for Writ of Innocence.[2] (Compl. at ¶118.) However, Plaintiffs now seek to pursue the wrong parties in an attempt to somehow link the "mistakes" of the SAO to the Individual Defendants. Plaintiffs provide no factual enhancement beyond conclusory allegations in an attempt to somehow drag Individual Defendants into their story.

### III. Plaintiffs' Malicious Prosecution Claim Fails to Properly Plead that Individual Defendants did not have Probable Cause to Arrest Plaintiffs.

To state a claim for malicious prosecution, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). "Under the fourth amendment, probable cause for arrest 'exists where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Clipper v. Takoma Park*, 876 F.2d 17, 19 (4th Cir. 1989) (quoting *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, (1979) (alterations in *Clipper*)).

Probable cause "is an objective standard of probability that reasonable and prudent persons apply in everyday life . . . and determined by a 'totality of the circumstances' approach." *United*

---

[2] The State of Maryland, acting on the grant of the SAO's Joint Petition for a Writ of Actual Innocence, has already agreed to pay each Plaintiff approximately 2.9 million dollars. (*See* Minutes of Board of Public Works Meeting of March 4, 2020 at p. 10, attached hereto as Ex. 5.)

*States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Probable cause for an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect had committed . . . an offense." *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Here, the Complaint lacks factual detail to suggest that Individual Defendants lacked probable cause to arrest Plaintiffs. To begin with, Plaintiffs concede that four witnesses identified Plaintiffs and gave statements that they were involved in the murder, (Compl. at ¶71-74), that Plaintiffs were at the school on the day of the murder, (*Id*. at ¶40), and that inside Plaintiff Chestnut's house, officers found a Georgetown jacket like the one the victim wore at the time of the murder. (*Id*. at ¶83). Nonetheless, Plaintiffs claim the four witness statements were the product of unspecified police misconduct.

Plaintiffs' claims lack factual support sufficient to sustain plausible claims and are entirely devoid of factual enhancement. Plaintiffs merely assert broad conclusory allegations that Individual Defendants improperly obtained witness statements. Plaintiffs employ precisely the techniques this Circuit has held insufficient in presenting claims by stating unsupported legal conclusions and conclusory factual allegations. *See Francis*, 588 F.3d at 193; *Revene*, 882 F.2d at 873. With no indication of police misconduct for over 35 years, Plaintiffs now baldly allege Individual Defendants "coerced and intimidated" one witness and "threatened and intimidated" others. But how? Who? Where? When? The complaint is silent on these critical points providing no factual enhancement. Elsewhere, Plaintiffs throw alternative claims at the wall claiming Individual Defendants "coerced, suggested, and/or fabricated a false statement and identification."

Plaintiffs asserted no facts to support these conclusions and rely upon shadowy descriptions of impropriety in attempt to blur the gaping holes of their pleading.

In a weak attempt to bolster their claims, Plaintiffs allege that Individual Defendants should have known the witness statements were false because they did not perfectly match prior statements, evidence implicated another suspect, and there was an alleged lack of physical evidence. These kinds of generalized and self-serving allegations are insufficient to form the basis of a cognizable claim. *See Garrett v. Wal-Mart Stores, Inc*., No. 1:19-CV-69, 2019 WL 9078396, at *8 (N.D.W. Va. Aug. 7, 2019), report and recommendation adopted, No. 1:19-CV-69, 2020 WL 1303896 (N.D.W. Va. Mar. 19, 2020) (vague claim that other similarly situated employees were treated differently is insufficient to state a disparate impact claim). Moreover, the mere fact that the unspecified witness statements were not perfectly consistent could properly describe homicide investigations underlying thousands and thousands of murder convictions across the nation and cannot support a plausible claim for relief. *See Williams v. Hall*, No. 5:11-CV-279-D, 2013 WL 3200512, at *5 (E.D.N.C. June 24, 2013) (inconsistencies in witness's statements did not preclude a finding of probable cause); *see also McConnell v. Watauga Cty*., No. 5:17-CV-195-MOC-DCK, 2019 WL 2344223, at *6 (W.D.N.C. May 31, 2019), aff'd, 790 F. App'x 543 (4th Cir. 2020) (officers entitled to rely upon witness for probable cause despite his "troubled past, various inconsistencies in his story, and other factors that could negate a finding that his story was his credible"). As such, Plaintiffs' claim of malicious prosecution should be dismissed.

### IV.    Plaintiffs Fail to Plead Facts to Plausibly Suggest that Individual Defendants Fabricated Evidence Related to Witness Statements and Identifications.

To establish a due process violation based on fabrication of evidence, Plaintiffs must show that the Individual Defendants fabricated evidence and that the fabrication caused a deprivation of liberty. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005). Unsupported allegations and

speculation of fabricated evidence will not suffice. *White v. Wright*, 150 F. App'x 193, 199 (4th Cir.2005) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)). To sustain a fabrication of evidence claim, a plaintiff must at a minimum show that "[d]efendants continued their investigation of plaintiff[s] despite the fact that they knew or should have known that [plaintiffs were] innocent" or "used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076. The Complaint does not plead facts to plausibly show that Individual Defendants knew or should have known that Plaintiffs were innocent. Similarly, the Complaint does not plead facts to plausibly show that Individual Defendants used investigative techniques that they knew or should have known would yield false information. None of the purported threats, suggestions, or pressure are supported with facts.

The Complaint does not assert that any of the witnesses deny providing the statements attributed to them by investigators. Plaintiffs instead question the veracity of the statements by relying exclusively on their conclusory assertion that because of the "circumstances" of the interviews Individual Defendants should have known the witnesses' statements were false.

As detailed in the context of Plaintiffs' malicious prosecution claim, Plaintiffs simply conclude that Individual Defendants should have known the witness statements were false because witnesses' statements inculpating Plaintiffs differed from prior statements, there was allegedly no physical evidence implicating Plaintiffs, and there were statements about an alternative suspect. But these allegations do not establish that officers knew or should have known that the witnesses' statements inculpating Plaintiffs were false. As emphasized earlier, even if the Court takes Plaintiffs' allegations as true, these alleged facts cannot serve as indication that Individual Defendants knew or had reason to know the statements were less than true. In fact, the factors cited

by Plaintiffs weigh against their claim of fabrication. A lack of substantial physical evidence and uncooperative witnesses offering conflicting statements only add complexity to an otherwise challenging investigation and are reasons why Individual Defendants could not possibly know with any certainty that the statements they believed to be true were indeed "false." Put another way, the absence of physical evidence is an indication that the Individual Defendants had no way to objectively test whether witness statements were true or false. Therefore, Plaintiffs cannot demonstrate that Individual Defendants knowingly fabricated witness statements.

Plaintiffs also question the "circumstances" of the undisputed witness statements by alleging the Individual Defendants "coerced and intimidated," "threatened and intimidated," or "coerced, suggested, and/or fabricated" false statements from the witnesses. But the Complaint does not provide any facts to support Plaintiffs' conclusion that Individual Defendants used coercive or abusive tactics, let alone provide facts which would indicate that police interview tactics were so coercive or abusive that Individual Defendants knew or should have known that the witness statements would be false. The Complaint is devoid of any support about the nature of any supposed "threats" or "coercion" and Plaintiffs' facts do not suggest that Individual Defendants used anything more than ordinary police work when relying on one witness's statement to suggest to another witness that investigators believed he or she was lying. *See Chavez v. Martinez*, 538 U.S. 760, 776 (2003) (finding no due process violation based on police interview which took place while suspect was "hospitalized and in severe pain"). As such, the Court should dismiss Plaintiffs' claim of fabrication of evidence.

**V.** **Plaintiffs Fail to Plead Facts to Establish that Individual Defendants Suppressed Exculpatory or Impeachment Material, or Failed to Conduct an Adequate Investigation.**

Continuing a theme of conclusory allegations, in Count III, Plaintiffs seek to plead a combination of what looks like a *Brady* claim with a novel claim called "Failure to Adequately Investigate." *See Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) (affirming dismissal of plaintiff's complaint which attempted to assert "a sort of hybrid substantive due process claim under the Fourteenth Amendment.").

**a.** **Plaintiff Fail to Plead Facts to Plausibly Allege a *Brady* Violation.**

To establish a claim against a police officer that he or she violated *Brady*, the plaintiff must show "(1) the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 396-97 (4th Cir. 2014). Plaintiffs do not identify which evidence was supposedly suppressed by Individual Defendants.

As emphasized earlier, Plaintiffs cannot present a viable allegation if they are referring to the "police reports," as the plain record undisputedly reflects that Individual Defendants turned over these documents to the trial prosecutor before trial. (*See supra* Section II.) This undisputed fact is unambiguously supported by the trial court's order that these very records be filed under seal. (*See* Ex. 3.) It cannot be Plaintiffs' intent to assert a *Brady* claim against Individual Defendants for material withheld by the **prosecutor** and Plaintiffs do not plead any facts that would rebut the plain record. If Plaintiffs are referring to other evidence, they do not say so. Individual Defendants could not possibly mount a defense against claims of a *Brady* violation without knowing which evidence was supposedly withheld. Because Plaintiffs have not plead facts

to establish that Individual Defendants suppressed exculpatory or impeachment material, Plaintiffs' *Brady* claims must be dismissed.

### b. Plaintiffs' Claim that Individual Defendants Failed to Adequately Investigate is not Plead with Facts to Establish a Basis for Liability.

If Plaintiffs separately assert that Individual Defendants violated their constitutional rights by failing to adequately investigate an alternative suspect, Plaintiffs' claim fails. Law enforcement has no constitutional duty to "investigate independently every claim of innocence" or "perform an error-free investigation." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). There is also no independent constitutional right to the investigation of a third party. *See Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988). "While the Supreme Court in *Brady* held that the government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the government to conduct a defendant's investigation or assist in the presentation of the defense's case." *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992) (quoting *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990)).

Plaintiffs do not plead facts to plausibly support that Individual Defendants did a less than perfect investigation, let alone that there was a deliberate effort to frame innocent teenagers. Plaintiffs instead rely on their post-incarceration status to conclude that Individual Defendants must not have investigated an alternative suspect. Plaintiffs' very pleading undermines the notion that Individual Defendants did not investigate a particular alternative suspect. Plaintiffs repeatedly refer to "investigative notes" created by Individual Defendants, relating to the investigation of the alternative suspect that Individual Defendants purportedly failed to investigate. Moreover, Plaintiffs themselves highlight that "BPD knew of approximately 18 suspects" before asserting that one of them was "inadequately" investigated. (Compl. at ¶93.) It bears repeating that the

existence of alternative suspects was undisputedly disclosed by Individual Defendants to the trial prosecutor before trial. (*See supra* Section II.)

## VI. Plaintiffs' Failure to Intervene Claim Fails Because the Complaint Does not Plead Facts Sufficient to Plausibly Establish Primary Liability.

Plaintiffs' claims that Individual Defendants maliciously prosecuted them, fabricated evidence, and failed to disclose exculpatory and impeachment evidence were not plead with sufficient facts to support their claims. At bottom, Plaintiffs' allegations that Individual Defendants failed to intervene must be dismissed because Plaintiffs' failed to plead primary liability. Without factual support to properly plead that Individual Defendants acted improperly, Plaintiffs' claims that Individual Defendants failed to stop each other from acting improperly lack factual support.

A failure-to-intervene claim lies where there is "an omission to act . . . coupled with a duty to act." *Randall v. Prince George's Cty.*, 302 F.3d 188, 202 (4th Cir. 2002). To state a claim "on a theory of bystander liability," the plaintiff must plausibly allege that the officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable chance to prevent the harm; and (3) chose not to act. *Id.* Thus, to properly plead failure-to-intervene, Plaintiffs must plausibly allege that their individual constitutional rights were violated. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) (observing that bystander liability claim was "derivative" of excessive force claim and holding that claim failed "[i]n the absence of any underlying use of excessive force").

As has been discussed, Plaintiffs failed to meet the pleading standard to establish that Individual Defendants violated their constitutional rights. At best, without supporting facts, Plaintiffs speculate that Individual Defendants violated the **witnesses'** constitutional rights, violations for which Plaintiffs lack standing to complain. The remaining claim that Individual Defendants did not investigate the alternative suspect is speculative and unsupported by the

criminal trial record. Plaintiffs' allegations do not supply any factual details about any specific constitutional violation that any Individual Defendant was aware of and had a reasonable chance to stop. *See Beaman*, 2011 WL 832506 at *12 (failure to intervene claim dismissed because a "conclusory statement" not tying a factual allegation to any particular defendant is "not entitled to weight"). Thus, the claim that other officers should have known about these insufficiently plead violations and failed to intervene must also fail. As such, the Court should dismiss these claims of failure to intervene.

## VII.    Plaintiffs Fail to Plead Facts to Establish Supervisory Liability Against Defendant Barrick.

The theory of supervisory liability is a species of bystander liability akin to a failure to intervene claim and is similarly disfavored. *Randall*, 302 F.3d at 206. "[W]hen on notice of a subordinates' tendency to act outside the law" a supervisor cannot remain deliberately indifferent. *Id.* This is a rigorous standard which requires a showing "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Straud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiffs seem to assert two theories of liability against Detective Sergeant Barrick for his role as supervisor: (1) that he was an active participant in an investigation in which he failed to prevent subordinates from violating Plaintiffs' rights; and (2) that he failed to supervise subordinates that he knew or should have known had a propensity for engaging in unconstitutional

conduct and whom had done so in the past. Both theories are conclusory and unsupported by factual allegations.

Whether Plaintiffs assert that Detective Sergeant Barrick actively participated and stood by while other Individual Defendants violated Plaintiffs' constitutional rights with impunity or turned a blind eye to subordinates' acts is of no consequence. Plaintiffs did not properly plead that Individual Defendants acted outside the law, and so, Plaintiffs have not properly plead facts to establish that Detective Sergeant Barrick failed to prevent subordinates from acting outside the law. Furthermore, Plaintiffs cite no factual support, and revert to improper pleading introduced by "[u]pon information and belief," for their assertion that Defendants Kincaid and Joyce engaged in unlawful conduct in the course of prior murder investigations, or that Detective Sergeant Barrick was or should have been aware of that misconduct. (Compl. at ¶128.)

Moreover, Plaintiffs fail to plead that Detective Sergeant Barrick had actual or constructive knowledge that his subordinates were engaged in conduct to such degree that it posed "a pervasive and unreasonable risk" of constitutional injury. *Randall*, 302 F.3d at 206. They have not provided any factual support for the claim that his response was so inadequate as to demonstrate "deliberate indifference to or tacit authorization of the alleged offensive practices." *Id*. Finally, they do not allege an "affirmative causal link" between Detective Sergeant Barrick's alleged inaction and a particular constitutional injury. *Id*. Plaintiffs have not properly plead supervisory liability claims and the Court should dismiss them.

**VIII.   Absence of Any Evidence of Malice is Fatal to the State Claim of Malicious Prosecution.**

To state a claim for malicious prosecution under Maryland law, Plaintiffs must allege that Defendants acted with malice or had a primary purpose other than legitimately bringing an offender to justice. *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1035 (D. Md. 2019)

(citing *Okwa v. Harper*, 360 Md. 161, 183 (2000)). Negligence in instituting an unjustified criminal proceeding does not satisfy the malice element. *Montgomery Ward v. Wilson*, 339 Md. 701, 719 (1995). For the same reasons that Plaintiffs fail to negate probable cause, as discussed above for the federal claim for malicious prosecution, they similarly provide no factual support that Individual Defendants ever exhibited actual malice. As a result, this claim is deficient and should be dismissed.

### IX. Plaintiffs' IIED Claim is Unsupported.

"A claim of IIED has four elements: (1) intentional or reckless conduct that is (2) extreme and outrageous and is (3) causally connected to the emotional distress, which is (4) severe." *Arsham v. Mayor & City Council of Baltimore*, 85 F. Supp. 3d 841, 849 (D. Md. 2015) (citing *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000)). The Court of Appeals of Maryland has discussed that the "extreme and outrageous" element of IIED has been a troublesome question. *Harris v. Jones*, 281 Md. 560, 567 (1977). "The tort of IIED 'is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct . . . of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *Arsham*, 85 F. Supp. 3d at 849 (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663 (1992)).

As already indicated above, Plaintiffs have failed to reveal with any specificity that Individual Defendants willfully did anything that violated Plaintiffs' constitutional rights. As probable cause existed to arrest Plaintiffs, there is no legitimate factual support for the argument that Individual Defendants' conduct was extreme and outrageous as specifically required by this claim. Thus, the claim of intentional infliction of emotional distress should be dismissed.

## **CONCLUSION**

For all these reasons, Individual Defendants respectfully request that this Court Dismiss Plaintiffs' Complaint. Should the Court find that any of Plaintiffs' claims survive, Defendant Barrick should still be dismissed from this action. If any state law claims survive, this Court should decline to exercise supplemental jurisdiction over the state law claims based on 28 U.S.C. § 1367 (c)(3).

DATED: November 20, 2020                          Respectfully Submitted,

*/s/ Shneur Nathan*
Shneur Nathan, Bar No. 20707
snathan@nklawllp.com
Avi Kamionski, Bar No. 20703
akamionski@nklawllp.com
Mayer Engelsberg Bar No. 21105
mengelsberg@nklawllp.com
Michael J. Elliker Bar No. 20810
melliker@nklawllp.com
201 N. Charles St. Ste. 1202
Baltimore, MD 21201
(312) 612-1955
(952) 658-3011
*Attorneys for Individual Defendants*
*Donald Kincaid, Bryn Joyce, &*
*John Barrick*

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that I have caused true and correct copies of the above and foregoing to be served on all counsel of record via to the Court's CM/ECF system, in accordance with the rules of electronic filing of documents, on this 20th day of November, 2020.

*/s/ Shneur Nathan*
Shneur Nathan