**Brown Goldstein & Levy**

October 26, 2021

**VIA ECF**
Hon. A. David Copperthite
United States District Court
101 West Lombard Street, 8B
Baltimore, Maryland 21201

   Re: *Chestnut, et al. v. Kincaid, et al.,* Case No. LKG-20-2342

Dear Judge Copperthite:

  Days before the agreed-upon November 1 and 3 depositions of two fact witnesses (Edward Capers and Ronald Bishop), Defendants Kincaid, Joyce, and Barrick ("Defendants"[1]) now seek to: 1) prevent Plaintiffs from taking those depositions and 2) extend the fact discovery deadline by 90 days. Defendants' belated requests do not meet the applicable standards. Preventing the taking of a deposition is a remedy granted only in extraordinary circumstances. Defendants seek this remedy by claiming that they need certain documents they have requested from third parties. But Defendants' failure to obtain those documents is the product of their own unreasonable delay. Even if the Defendants had been diligent, the appropriate remedy would not be to prevent the depositions (for which all parties have ample material); rather, Rule 30(a)(2) provides a process for seeking to re-open a deposition. Defendants' requests appear to be nothing more than a tactic to circumvent the scheduled depositions and the Court's scheduling order, to which they previously agreed, and should be denied.

## Factual Background

  On April 28, 2021, Judge Bennett issued a Scheduling Order, directing the parties that "**[d]iscovery should commence immediately**[.]" ECF No. 37, at 1 (emphasis in original). Plaintiffs and Defendants conferred and agreed to case deadlines, including a December 15, 2021, deadline for the close of fact discovery. ECF No. 45.

  Defendants waited until September 14 —nearly five months into discovery—to send notice of records subpoenas to Plaintiffs' former counsel (eleven individuals/entities) despite knowing their identities long before then (as detailed below). Two days later, Defendants filed a motion for grand jury material in Circuit Court, which they again amended today (October 26).

  Despite Plaintiffs' efforts, no depositions have yet taken place. While Defendants initially claimed that they needed 150 hours to take 36 depositions, ECF No. 38 at 5, they have delayed depositions at every turn. On September 2, Plaintiffs requested a meeting "to discuss the scheduling of depositions" so as to "find dates that are convenient for everybody's schedules." Ex. 1 at 2. After a seven-day delay, Defendants' counsel responded that they were available for a call on September 13. *Id.* at 1. On that call, defense counsel stated they were unavailable the remainder of September but had availability in October. On October 5, Plaintiffs again initiated a call regarding scheduling; this time, counsel for Defendants represented that they were unavailable any of the remaining 26 days in October. Ex. 2 at 1. The parties agreed to hold

---

[1] Although the Baltimore Police Department is also a defendant in this matter, for ease of reference, Defendants Kincaid, Joyce, and Barrick are referred herein as "Defendants."

certain dates in November. *Id* at 2. In a subsequent e-mail on October 5, Defendants confirmed that "Individual Defendants will hold the following dates for Plaintiffs' depositions: November 1[,] November 3[,] November 4[,] November 9 – Joyce[, and] November 22 - Kincaid." *Id.* at 1.

In addition to Defendants Joyce and Kincaid, Plaintiffs will take the depositions of two witnesses, Mr. Capers and Mr. Bishop, who were present the day DeWitt Duckett was murdered and who testified against Plaintiffs at their 1984 trial— witnesses about whom Defendants have known from the start of the case, who were listed on Defendants' list of desired depositions, ECF No. 38 at 5, and whose pre-trial testimony, trial testimony, and interviews with the Conviction Integrity Unit have long been in all parties' possession. On October 8, Plaintiffs served Mr. Bishop with a deposition subpoena for the agreed-upon date of November 3. As soon as Plaintiffs' Unopposed Motion for Leave to Depose Incarcerated Individual, ECF No. 62, was granted on October 14, Plaintiffs noticed Mr. Capers' deposition for the agreed-upon date of November 1. At the request of the warden, Plaintiffs asked Defendants who would attend the deposition, and Defendants provided those names on October 19. Ex. 3 at 1. Two days later, counsel for Defendants told Plaintiffs they were "not prepared to move forward with these depositions at this time." Ex. 4 at 2. Plaintiffs responded the following day, *id.* at 1, and the parties conferred on October 25. Defendants initially wished to delay fact discovery indefinitely, but following the meet and confer, they changed their position to seeking a 90-day extension.

## Legal Standard

A motion seeking protective orders "to prevent the taking of a deposition is regarded unfavorably by the courts, [a]nd it is difficult to persuade a court to do so." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009). Such orders "should be rarely granted absent extraordinary circumstances," and the moving party bears a "heavy burden." *Id.* "[M]ethods of discovery may be used in any sequence." Fed. R. Civ. P. 26(d)(3)(A). "An agreed-upon deposition date is presumptively binding." Local Rules, App'x A, Guideline 4.c.

Under Rule 16(b)(4), "a movant must demonstrate good cause" to modify scheduling orders, which are mandatory. *Pinnacle Advisory Group, Inc. v. Krone*, Case No. ELH-19-2988, 2020 WL 1285527, at *3 (D. Md. Mar. 18, 2020). The "touchstone" of "good cause" is diligence." *Id.* (citing *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020)).

## Discussion

Defendants cannot meet their heavy burden to prevent the scheduled depositions of Mr. Capers and Mr. Bishop. Defendants not only agreed to the deposition dates, but their position overlooks this Court's admonition that "[t]he existence of a discovery dispute as to one matter does not justify delay in taking any other discovery." ECF No. 37; *see also* L.R. 104.3. Nor have Defendants come close to showing extraordinary circumstances. Their contention that they are entitled to every possible document before any deposition disregards case law finding that document delays do not prevent the taking of depositions; ignores their delay in seeking the documents; and rests on speculation that they are entitled to documents from prior counsel (which are likely privileged) and that those documents are germane to the upcoming depositions.

Defendants' claim to need outstanding documents from third-party subpoena recipients is belied by their delay in issuing those subpoenas. Defendants knew of <u>all</u> eleven individuals long

before issuing their subpoenas on September 14. Four of the recipients (those involved with Plaintiffs' exoneration) were listed on the November 2019 Joint Writ of Actual Innocence; they were referenced in exhibits to Defendants' November 2020 Motion to Dismiss, along with the three attorneys who represented Plaintiffs in the 1984 criminal trial. *See* ECF No. 22-2, at 1. The prior civil attorney was on documents provided to Defendants in March 2020. And the final three subpoena recipients were included in the State's Attorney's Office ("SAO") production of July 15, 2021 and identified in Plaintiffs' July 29, 2021, discovery responses.

Defendants cannot explain why they waited 139 days into discovery to issue the subpoenas. They have already received many of the subpoenaed documents through Plaintiffs' July 30, 2021, document production. Further, defense counsel knew or should have known that broad subpoenas seeking prior counsel's case files would draw objections on privilege grounds. Granting Defendants' request would incentivize similar dilatory behavior in other cases.

Defendants' dispute with the SAO has no bearing on the depositions of Mr. Capers or Mr. Bishop. The SAO disclosed unredacted versions of its notes and recordings of its interviews with both witnesses during the reinvestigation. Thus, Defendants cannot credibly claim any unfair prejudice as a result of its unresolved discovery dispute with the SAO. The SAO provided privilege logs as part of its February 3 and July 14 productions, yet Defendants waited until October 12 to move to compel withheld documents. *See* ECF No. 64. Defendants received Plaintiffs' privilege log on July 30 but waited more than 80 days, until October 20, to ask for supplementation of that log. Finally, Defendants waited 141 days into the discovery period to properly file a motion for grand jury materials, and they ignore that, in other similar matters involving the same counsel, all parties have taken depositions without grand jury materials.

Even if Defendants had been diligent, postponement is not an appropriate remedy. *See Givens v. Prime Office Prods.*, Case No. CCB-04-731, 2005 WL 8174325, at *1 (D. Md. Aug. 10, 2005) (citing L.R. 104.3 and denying request to reopen discovery where plaintiff "cancelled [] depositions at last minute because he had not received any documents pursuant to his document requests."); *S.E.C. v. Berry*, No. C07-03798 JW (HRL), 2009 WL 2079420, at *2 (N.D. Cal. July 14, 2009) (denying protective order and noting defendant "has provided no legal support for the position that the court must limit the timing of her depositions until she reviews all relevant documents; Fed. R. Civ. P 26(d)(3)(A) ("methods of discovery may be used in any sequence"). A protective order is particularly inappropriate here given that the deponents are not Defendants' clients, and Plaintiffs are not the source of any delay.

If, despite Defendants' lack of diligence, something they learn from later-produced documents warrants additional questioning of Mr. Capers or Mr. Bishop, the appropriate remedy would be to request leave to re-open the depositions. *See* Fed. R. Civ. P. 30(a)(2)(A)(2). Alternatively, a party may seek to extend a deposition under Rule 30(d)(1), if they can show later-produced documents are needed to fairly examine a deponent. *See Proa v. NRT Mid-Atlantic, Inc.*, Civil No. AMD-05-2157, 2008 WL 11363286, at *32 (D. Md. June 20, 2008).

Finally, Defendants' request to extend the discovery deadline should be denied. They cannot meet the good cause standard because, as noted, they have been anything but diligent. Plaintiffs were wrongfully convicted 37 years ago and have a right to proceed on the current agreed-upon schedule, before witnesses pass away or become unavailable.

Respectfully,

    /s/
Kobie A. Flowers (Bar No. 16511)
kflowers@browngold.com
Andrew D. Freeman (Bar No. 03867)
adf@browngold.com
Neel K. Lalchandani (Bar No. 20291)
nlalchandani@browngold.com
Chelsea J. Crawford (Bar No. 19155)
ccrawford@browngold.com
Anthony J. May (Bar No. 20301)
amay@browngold.com
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

    /s/
Larry A. Nathans (Bar No. 03023)
nathans@nathanslaw.com
Booth M. Ripke (Bar No. 25764)
bripke@nathanslaw.com
Nathans & Biddle LLP
120 E. Baltimore Street, Suite 1800
Baltimore, Maryland 21202
Tel: (410) 783-0272
Fax: (410) 783-0518

*Attorneys for Plaintiffs Alfred Chestnut, Andrew Stewart, Jr., and Ransom Watkins*