**Brown Goldstein & Levy**

November 4, 2021

**VIA ECF**
Hon. A. David Copperthite
United States District Court
101 West Lombard Street, 8B
Baltimore, Maryland 21201

      Re:  *Chestnut, et al. v. Kincaid, et al.,* Case No. LKG-20-2342

Dear Judge Copperthite:

      On September 13, 2021, Plaintiffs propounded a narrow discovery request on Defendant Baltimore Police Department ("BPD") seeking BPD files regarding investigations of homicides occurring between 1980 and 1983, in which Defendant Donald Kincaid was the lead BPD homicide detective."[1] Ex. 1. BPD has raised a litany of objections to Plaintiffs' request, including that the request is "vague, ambiguous, irrelevant, overbroad . . . unduly burdensome. . . and disproportionate to the needs of the case." *Id.* BPD's boilerplate objections are inappropriate for three reasons. First, BPD misunderstands the significance of the requested records. Evidence of Defendant Barrick's involvement in Defendant Kincaid's prior homicide cases is essential to proving Plaintiffs' supervisory liability claim, *see* Am. Compl., Count V, ¶¶ 183–188, ECF No. 59. Second, Plaintiffs' request may lead to evidence admissible under Federal Rule of Evidence 404(b). Third, BPD has offered no evidence of burdensomeness. Because Plaintiffs' narrowly-tailored request is relevant and proportional to the needs of this case, the Court should order BPD to produce the requested records.

      Plaintiffs' request for four years of prior homicide files for cases in which Kincaid was the primary detective is relevant to proving the supervisory liability claim against Defendant Barrick. "Relevance for discovery purposes is viewed liberally." *Hake v. Carroll Cnty., Md.*, Civ. No. WDQ-13-1312, 2014 WL 3974173, at *5 (D. Md. Aug. 14, 2014). "Relevance is not, on its own, a high bar." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). "Information sought need only 'appear[ ] [to be] reasonably calculated to lead to the discovery of admissible evidence' to pass muster." *CX Reins. Co. v. City Homes, Inc.*, Civ. No. JKB-17-1476, 2018 WL 5080944, at *2 (D. Md. Oct. 18, 2018) (internal citation omitted).

      To prove the supervisory liability claim, Plaintiffs must demonstrate one of two theories: 1) Defendant Barrick's direct involvement in the misconduct by Defendants Kincaid and Joyce during the DeWitt Duckett murder investigation; or 2) that Barrick (a) "had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; [(b)] that [Barrick's] response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and [(c)] that there was an affirmative causal link

---

[1] While Plaintiffs believe that Barrick was Defendant Kincaid's supervisor between 1980 and 1983, Plaintiffs are willing to narrow their request to such homicide investigations (plus the file for the James Wise investigation discussed below, regardless of whether Barrick was the supervisor).

between [Barrick's ] inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citation omitted). To prove deliberate indifference under the latter theory, Plaintiffs must establish "continued inaction in the face of documented widespread abuses." *Id*; *see also Saltz v. Frederick, MD*, Civ. No. ELH-20-0831, 2021 WL 1856636, at *27 (D. Md. May 10, 2021) (stating that "[t]o qualify as 'pervasive,' a plaintiff must demonstrate that the challenged 'conduct is widespread, or at least has [occurred] on several different occasions'") (quoting *Shaw*, 13 F.3d at 799).

Records from prior homicide investigations are relevant to whether anomalies and/or patterns in Defendant Kincaid's investigative practices exist that are indicative of misconduct (*e.g.*, the absence of witness statements and documentation involving alternate suspects). To the extent that Defendant Barrick directly supervised Defendant Kincaid in these investigations, the records could establish that Defendant Barrick knew or should have known that Defendant Kincaid was engaging in unconstitutional conduct in the investigation of Duckett's murder. Plaintiffs already obtained the partial homicide file in this case, which includes investigative summaries prepared by Defendant Kincaid in which he identified Defendant Barrick as his "field supervisor." Analogous records in prior homicide investigations will similarly reveal what, if any, supervisory role Defendant Barrick played.

Plaintiffs' request for a few years of prior homicide investigation files is also proportional to the needs of this case. Factors relevant to proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Plaintiffs' request is limited to a four-year period immediately preceding Plaintiffs' 1984 convictions and relates only to the relatively small number of homicide investigations in which Defendant Kincaid was the primary detective. Thus, Plaintiffs have minimized any burden on BPD to search for and produce relevant records.

Moreover, BPD has not met its burden to demonstrate substantial burden. *See Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38 (D. Md. 2000) (Grimm, M.J.) ("[W]ith respect to assertions of unreasonable burden or expense, [the federal and local rules] impose an affirmative duty on the objecting party to particularize with facts, not conclusory statements, the basis for these objections."). BPD has not even attempted to search for responsive records, let alone articulate any specific burden that Plaintiffs' request purportedly imposes.

Plaintiffs attempted to reduce any burden on BPD by identifying specific homicide investigations between 1980 and 1983 involving Defendant Kincaid. Plaintiffs identified the investigation relating to the 1981 murder of James Wise, but BPD objected to producing its investigative file. The James Wise murder investigation is particularly relevant because the individual charged and convicted of Mr. Wise's murder, Wendell Griffin, raised allegations of unconstitutional conduct against Defendant Kincaid nearly identical to that alleged by Plaintiffs, including Defendant Kincaid's failure to disclose exculpatory and impeachment evidence and fabrication of evidence.

In a civil § 1983 lawsuit, Mr. Griffin alleged misconduct by Defendant Kincaid that is strikingly similar to the allegations of misconduct in this case. Mr. Griffin alleged that Defendant

Kincaid: (1) failed to disclose evidence that witnesses did not identify Mr. Griffin during photo arrays; (2) omitted material exculpatory information from search warrant affidavits; (3) suppressed statements that Griffin was not the perpetrator of the crime; and (4) threatened witnesses. *See* Compl., *Griffin v. Baltimore Police Dep't*, Civ. No. JFM-13-3387 (D. Md. Nov. 23, 2013), ECF No. 1; *see also* Pls.' Am. Comp. ¶ 134, ECF No. 59. Mr. Griffin filed a civil lawsuit against Defendant Kincaid, the BPD, and another detective, but the district court dismissed his case pursuant to the "*Heck* bar," and the Fourth Circuit affirmed the dismissal. *See Griffin v. Baltimore Police Dep't*, 804 F.3d 692 (4th Cir. 2015). Given the similar allegations of misconduct in Mr. Griffin's case, there is at least a reasonable possibility that discovery of this file and other contemporaneous files will lead to evidence admissible under Rule 404(b).

The similarity between the allegations in Plaintiffs' and Mr. Griffin's cases underscores why Plaintiffs' discovery request to BPD is appropriate: the related homicide file in Mr. Griffin's case, and other homicide files from the same period in which Defendant Kincaid was the primary detective, may lead to the discovery of evidence admissible under 404(b) of the Federal Rules of Evidence. Rule 404(b) "permits introduction of prior acts to show intent, lack of mistake, plan, knowledge, etc." *Kopf v. Skyrm*, 993 F.2d 374, 380 (4th Cir. 1993). Plaintiffs' § 1983 claims require proof that the Individual Defendants acted with a heightened level of intent, making 404(b) evidence not only relevant, but also necessary. Plaintiffs must prove that the Individual Defendants did more than engage in unconstitutional misconduct by mistake or negligence. Plaintiffs must prove that the Individual Defendants committed unconstitutional misconduct by "deliberately" fabricating evidence (Count II), with "bad faith" when they violated *Brady* by failing to disclose exculpatory evidence and adequately investigate this case (Count III), and by being "deliberately indifferent" to the misconduct of a subordinate (Count V). *See, e.g.*, *Massey v. Ojanit*, 759 F.3d 343, 354–57 (4th Cir. 2014) (requiring proof that defendant acted deliberately for fabrication of evidence and malicious prosecution claims); *Owens v. Baltimore City State's Attorney's Off.*, 767 F.3d 379, 396 n.6, 401 (4th Cir. 2014) (noting that a *Brady* claim requires proof that the officers suppressed evidence in bad faith); *Gilliam v. Sealey*, 932 F.3d 219, 240–41 (4th Cir. 2019) (requiring proof of bad faith in connection with due process claim for failure to adequately investigate); *Shaw*, 13 F.3d at 799 (describing deliberate indifference standard for supervisory liability claim).

Detective Kincaid's practices in the James Wise and other contemporaneous homicide investigations could well provide admissible evidence relevant to proving his intent and absence of mistake in this case. This Court reached a similar conclusion in an analogous § 1983 case against a former BPD detective, in which the plaintiff sought production of homicide files relating to the detective's other investigations. *See Estate of Malcolm Bryant v. Baltimore Police Dep't*, Civ. No. ELH-19-384, 2020 WL 6161708, at *4 (D. Md. Oct. 21, 2020) (finding that for two of the requested investigative files, the allegations of misconduct were "similar to the allegations in this case . . . [and] could contain information relevant to Detective Ritz's intent in this case"). There was no supervisory liability claim in *Bryant*. Thus, the *Bryant* Court's ruling on proportionality is not instructive here. Unlike *Bryant*, the need created by Plaintiffs' supervisory liability claim outweighs the non-existent burden demonstrated by BPD. *See id.* at *6–8.

Hon. A. David Copperthite
November 4, 2021
Page 4 of 4

                                                  Respectfully,

                                                  /s/

Kobie A. Flowers (Bar No. 16511)
kflowers@browngold.com
Andrew D. Freeman (Bar No. 03867)
adf@browngold.com
Neel K. Lalchandani (Bar No. 20291)
nlalchandani@browngold.com
Chelsea J. Crawford (Bar No. 19155)
ccrawford@browngold.com
Anthony J. May (Bar No. 20301)
amay@browngold.com
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

                                                  /s/

Larry A. Nathans (Bar No. 03023)
nathans@nathanslaw.com
Booth M. Ripke (Bar No. 25764)
bripke@nathanslaw.com
Nathans & Biddle LLP
120 E. Baltimore Street, Suite 1800
Baltimore, Maryland 21202
Tel: (410) 783-0272
Fax: (410) 783-0518

*Attorneys for Plaintiffs Alfred Chestnut,
Andrew Stewart, Jr., and Ransom Watkins*