**CITY OF BALTIMORE**

**BRANDON M. SCOTT,**
Mayor

**DEPARTMENT OF LAW**

JAMES L. SHEA, CITY SOLICITOR
100 N. HOLLIDAY STREET

SUITE 101, CITY HALL
BALTIMORE, MD 21202

The Hon. A. David Copperthite  
United States District Court for the District of Maryland  
101 West Lombard Street, 8B  
Baltimore, Maryland 21201

November 4, 2021

Re:   *Alfred Chestnut, et al. v. Donald Kincaid, et al*. (Civil Action No. LKG-20-2342)

Dear Judge Copperthite:

Plaintiffs allege that they were wrongfully convicted in 1984 for the murder of DeWitt Duckett as the result of coerced witness testimony and *Brady* violations. *See* ECF No. 59. Plaintiffs' *Monell* claim against BPD is bifurcated, and discovery on that claim is stayed pending the resolution of the underlying claims against the Defendant Officers. ECF No. 47. BPD agreed that it would participate in discovery to the extent that Plaintiffs' requests relate to the claims against the Defendant Officers, and in exchange, Plaintiffs agreed not to oppose bifurcation.

This dispute arises from Plaintiffs' discovery request, demanding that BPD produce "*all* BPD files regarding investigations of homicides occurring between *1980 and 1983*, in which Defendant Donald Kincaid was the lead BPD homicide detective." BPD objected to this Request, and the Defendant Officers join BPD's submission.

## ARGUMENT

Discoverable nonprivileged information must be relevant and proportional to the case. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs' Request exceeds the bounds of Rule 26 in both respects.

### I. Unrelated homicide investigations are irrelevant to the claims at issue before this Court.

Plaintiffs have repeatedly failed to proffer any good faith basis for how a mass production of unidentified and unrelated homicides files, spanning a four-year period, is at all probative or relevant to the claims against the Defendant Officers. Likewise, other than those supporting Plaintiffs' *Monell* claim, the Amended Complaint is devoid of any allegation that establishes the relevancy of this Request.

Judge Boardman recently rejected a similar – but markedly narrower – request from Plaintiffs' counsel in a similar matter. *See Est. of Bryant v. Baltimore Police Dep't*, No. ELH-19-384, 2020 WL 6161708, at *7 (D. Md. Oct. 21, 2020) (attached as Ex. 1). In that case, despite that plaintiff proffered at least *some* allegations of prior misconduct, Judge Boardman held that plaintiff's request for four specific homicide files was not proportional to the needs of the case, and that any probative value was outweighed by the burden and expense associated with the post-production investigation. *See id*. Judge Boardman also found one of the files irrelevant "because the allegations of misconduct against [the defendant] in th[at] investigation [were] not similar to the misconduct allegations here." *Id*. at 12.

Here, Plaintiffs not only fail to provide any good faith proffer of any misconduct by Kincaid to support their claimed entitlement to these files, but they also unabashedly make no effort to identify

any particular investigation falling within the scope of their Request.[1] *See* Fed. R. Civ. P. 26(b)(1); ECF No. 59. Nevertheless, even if Plaintiffs had identified a particular homicide investigation, and proffered allegations of similar misconduct here, it is unlikely that any evidence Plaintiffs could hope to find would be admissible, and their speculation, alone, is inadequate to show otherwise. *See Est. of Bryant*, 2020 WL 6161708 at *7 ("the likely benefit of discovery of the homicide files turns, at least in part, on how likely their production would lead to admissible evidence").

## II. Plaintiffs' supervisory liability claim is limited to Barrick's direct involvement.

During the meet and confer, Plaintiffs broadly claimed that the homicide files are relevant to their supervisory liability claim against Barrick. But Plaintiffs misapprehend this Court's prior ruling on the Motions to Dismiss. Indeed, the Fourth Circuit has stated that the first of the three elements necessary to establish supervisory liability under § 1983 is: "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff."[2] *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). But "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires *evidence that the conduct is widespread, or at least has been used on several different occasions*." *Id*. (emphasis added).

Here, however, it seems that Count V survived dismissal only because Judge Bennett found that allegations of Barrick's *direct involvement* with his subordinate's misconduct *in the underlying homicide investigation*, was sufficient to state a claim of supervisory liability. *See* ECF No. 35 at 27-28 (holding that liability can attach when a supervisor facilitates the unlawful conduct). As a result, this decision seems to craft a new theory of supervisory liability in this Circuit: that a supervisor's direct involvement in subordinate misconduct is sufficient to establish a "pervasive and unreasonable risk of harm," even when the alleged misconduct is not "widespread" or did not occur on "several different occasions." *See id*.; *contra Shaw*, 13 F.3d at 799.

Judge Bennett specifically allowed Plaintiffs' supervisory liability claim to proceed solely based on Plaintiffs' allegations that Barrick directly oversaw and participated in the alleged unlawful conduct during the criminal investigation *of this case*. ECF No. 35 at 27-28. Plaintiffs never alleged facts to support that Barrick was aware of widespread and pervasive misconduct. Rather, they generally claimed only that he "knew, or should have known" that Kincaid, Joyce, and other detectives in the homicide unit previously engaged in similar unconstitutional conduct in other murder investigations. ECF No. 59 at ¶ 185.[3]

Plaintiffs cannot simply rely on rank speculation to gain unfettered access into a substantial portion of four years' worth of homicide files, hoping to unearth some nebulous evidence of misconduct

---

[1] Other than a single reference to the James Wise homicide, ECF No. 59 at ¶ 134, Plaintiffs fail to identify any prior investigation to support this claim. Most significantly, Plaintiffs produced the James Wise homicide file in discovery.
[2] The two remaining elements are: "(2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F.3d at 799.
[3] As noted, *supra* n.1, Plaintiffs already possess the James Wise homicide, and the Amended Complaint is bereft of any claim that Barrick knew Kincaid committed misconduct in that case, that Barrick was Kincaid's supervisor during that investigation, or that Barrick was ever even involved in that case.

that they suspect occurred nearly forty years ago. Plaintiffs fail to proffer how this request will lead to admissible evidence, and the information they seek is more readily obtained through personnel files or internal investigations. To this end, BPD already produced all relevant, nonprivileged records for Kincaid that it was able to locate.

### III.   Plaintiffs' Request Is Not Proportional To The Needs Of The Case

The burden and expense of producing the homicide files outweighs their probative value. This Court has already stated that it is "guided by Fed. R. Civ. P. 26(b)(l) and App. A, Guideline 1 of the Local Rules, 'to facilitate the just, speedy, and inexpensive conduct of discovery,' in light of what is 'relevant to any party's claim or defense; proportional to what is at issue in a case; and not excessively burdensome or expensive as compared to the likely benefit of obtaining the discovery being sought.'" ECF No. 58 (citations omitted). Accordingly, Judge Boardman's ruling in *Bryant* is even more applicable here. Judge Boardman explained:

> [t]o be clear, the burden and expense of producing the files themselves would not be particularly burdensome or expensive. But any subsequent investigation into Ritz's conduct in the other cases would be. If the homicide files were produced, plaintiffs almost certainly would attempt to investigate the police conduct in those cases. The investigations likely would include interviews and depositions of myriad individuals and additional document requests. In response, defendants would be forced to conduct counter-investigations to refute the allegations of misconduct. These investigations would be time-intensive, resource-draining, and costly for everyone.
>
> The burden and expense that production of the homicide files would impose outweighs the likely benefit of the discovery, which I find would be minimal. The homicide files are nearly twenty years old. Memories fade over time, and the memories of people with knowledge of the decades-old homicide cases are no exception. Plaintiffs claim that the files may lead to the discovery of admissible prior bad act evidence, but at this point, that is mere speculation.

Ex. 1 at 13-14. In *Bryant*, the plaintiff only requested four homicide files. Here, producing the dozens of files that Plaintiffs presume are responsive to their Request would lead to additional "time-intensive, resource-draining, and costly" investigations of a magnitude far greater than the investigations contemplated by Judge Boardman. *Id*.

Further, in this case, producing the requested files themselves will be extremely burdensome and expensive. The files from the requested era are cataloged into a Dewey Decimal-like system, consisting of tens of thousands of index cards, manually transcribed over time, and alphabetically sorted by the names of suspects or victims. Thus, this Request would require BPD to parse through tens of thousands of index cards to first determine whether Kincaid was lead detective. Then, BPD would need to physically locate and retrieve hundreds of investigative files and, yet again, parse through the hundreds of records in each pulled file to determine whether the records are responsive, relevant, and disclosable. This process would consume an unconscionable amount of BPD's time and resources simply based on Plaintiffs' unsupported hunch.

*Bryant* is directly applicable here. This Court should deny Plaintiffs' request.

Respectfully,

_____/s/_____
Kyle A. Ashe (Bar No. 21551)
Natalie R. Amato (Bar No. 20749)
Justin S. Conroy (Bar No. 28480)
Kara K. Lynch (Bar No. 29351)
Baltimore City Law Department
Office of Legal Affairs
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
T: (410) 396-2495/F: (410) 396-2126
kyle.ashe@baltimorepolice.org
natalie.amato@baltimorecity.gov
justin.conroy@baltimorepolice.org
kara.lynch@baltimorepolice.org

*Attorneys for Baltimore Police Department*


_____/s/_____
Avi T. Kamionski, Bar No. 20703
Shneur Nathan, Bar No. 20707
Mayer Engelsberg Bar No. 21105
Michael J. Elliker, Bar No. 20810
Nathan & Kamionski LLP
575 S. Charles Street Suite 402
Baltimore, MD 21201
T: (312) 612-1928
akamionski@nklawllp.com
snathan@nklawllp.com
mengelsberg@nklawllp.com
melliker@nklawllp.com

*Attorneys for Defendant Officers*