# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
A. DAVID COPPERTHITE
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0946
MDD_ADCChambers@mdd.uscourts.gov

November 9, 2021

TO COUNSEL OF RECORD

> Re: *Chestnut, et al., v. Kincaid, et al.,*
> Civil No. LKG 20-2342

Dear Counsel:

I am in receipt of Plaintiffs' correspondence (ECF No. 79) and Defendant BPD's response (ECF No. 80) regarding the most recent discovery dispute. Plaintiffs have requested all homicide files from 1980-1983 where Defendant Kincaid was the lead homicide detective. Plaintiffs argue that the documents are necessary for Plaintiffs to prove the supervisory liability of Sergeant Barrick. Plaintiffs allege also that the files may contain evidence admissible under Fed.R.Crim.P. 404(b) and that Defendant BPD has not presented evidence of burdensomeness. Plaintiffs contend this is a "narrowly-tailored request . . . relevant and proportional to the needs of this case." ECF No. 79 at 1. The Court disagrees, and therefore the request to require the production of all homicide files from 1980-1983 where Defendant Kincaid was the lead detective is DENIED.

In this Court's ruling on April 28, 2021, Judge Bennett recognized that Plaintiffs only alleged one theory of supervisory liability—that Barrick participated directly in the conduct which violated Plaintiffs' constitutional rights:

> In this case, the Plaintiffs allege that Sergeant Barrick was the immediate supervisor of the Homicide Unit and that as the direct supervisor, he "had the responsibility to provide leadership and to review all witness statements taken by detectives." (ECF No. 1 ¶¶ 48-49.) The Complaint not only alleges that he held this supervisory role, but also that Sergeant Barrick was directly involved in the allegedly unlawful investigation. For example, the Plaintiffs allege that both Barrick and Kincaid "coerced and intimidated" Y.T. into adopting their "false version of events;" "pressured Y.T. into making up details during the interrogation;" "told or to suggested to Y.T." that the Plaintiffs committed Duckett's murder; "wrote out a false statement that implicated the innocent teens and, through coercion, obtained 13-year-old Y.T.'s signature;" and "coerced Y.T. into identifying photos" of the Plaintiffs. (*Id.* ¶¶ 62-68.) Accepting these allegations as true, Defendant Sergeant Barrick's alleged direct involvement in the alleged wrongdoing of the Homicide Unit states a plausible claim for relief in Count V of the Complaint.

ECF No. 35 at 28. The Plaintiffs' election to pursue the theory of direct involvement of Barrick in this case is fatal to their argument that these three years of homicide files are relevant to this Complaint. Therefore, I do not find that Plaintiffs are entitled to discovery of these files on the basis of supervisory liability.

*Chestnut et al., v. Kincaid, et al.,*
LKG-20-2342
November 9, 2021
Page 2

Turning next to the issue that the files may contain evidence admissible under Rule 404(b), while there may be a theoretical argument for discovery, Plaintiffs' argument practically fails because it is purely speculative and lacks any basis in fact, with only the exception of the single file relating to the 1981 murder of James Wise. It is important to note that this Court dismissed the Plaintiff Wendell Griffin's complaint in the Wise murder case and the Fourth Circuit affirmed the dismissal. *See Griffin v. Baltimore Police Dep't*, 804 F.3d 692 (4th Cir. 2015).

Plaintiffs allege facts to support disclosure of the investigative file in the Wise murder. The question then becomes whether production of the Wise file is overly burdensome. Both parties have relied on a recent Opinion by this Court in *Estate of Malcom Bryant v. Baltimore Police Department, et al.*, ELH 19-384, ECF No. 80. In that case, Plaintiff identified four other homicide investigations alleged to have similar misconduct by homicide investigators resulting in wrongful convictions. Plaintiff requested the homicide files. In *Bryant*, this Court denied access to the files stating that while the burden and expense of producing the files would not be excessive, the inevitable investigations into those allegedly similar matters would be excessive. *Id.* at 13. The re-investigation of those homicides would involve additional witness interviews, depositions and document requests from Plaintiffs and Defendants would be forced to respond. Like *Bryant*, opening the Wise murder would be "time-intensive, resource-draining and costly for everyone." *Id.* It is also important to note that the Wise murder investigation is over 30 years old. Like *Bryant*, the burden and expense of production far outweighs the likely benefit of discovery. *Id.* Defendant BPD need not disclose the Wise murder file.

Defendant BPD has set forth convincing facts regarding the burden and expense of producing the homicide files.

> Further, in this case, producing the requested files themselves will be extremely burdensome and expensive. The files from the requested era are cataloged into a Dewey Decimal-like system, consisting of tens of thousands of index cards, manually transcribed over time, and alphabetically sorted by the names of suspects or victims. Thus, this Request would require BPD to parse through tens of thousands of index cards to first determine whether Kincaid was lead detective. Then, BPD would need to physically locate and retrieve hundreds of investigative files and, yet again, parse through the hundreds of records in each pulled file to determine whether the records are responsive, relevant, and disclosable. This process would consume an unconscionable amount of BPD's time and resources simply based on Plaintiffs' unsupported hunch.

ECF No. 80 at 3.

This matter is before me in the posture of informal discovery dispute resolution. While it is not a motion to compel, the analysis is the same. Discovery rules are to be accorded broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Nevertheless, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). Protective orders pursuant to Rule 26(c) "should be sparingly used and cautiously granted." *Baron*

*Chestnut et al., v. Kincaid, et al.,*
LKG-20-2342
November 9, 2021
Page 3

*Financial Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D.Md. 2006) (citation omitted). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (citation omitted).

The party moving for a protective order bears the burden of establishing good cause. *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 278 (D.Md. 2012). The proponent may not rely on stereotyped or conclusory statements, but "must present a particular and specific demonstration of fact as to why a protective order should issue." *Id.* at 279 (citation omitted). Good cause exists where the information sought in discovery is not relevant to any issue in the case.

The Court is guided by Fed.R.Civ.P. 26(b)(1) and Appendix A, Guideline 1 of the Local Rules, "to facilitate the just, speedy, and inexpensive conduct of discovery," in light of what is "relevant to any party's claim or defense; proportional to what is at issue in a case; and not excessively burdensome or expensive as compared to the likely benefit of obtaining the discovery being sought." Local Rules, Appendix A, Guideline 1 (2021).

Central to resolving any discovery dispute is determining whether the information sought is within the permissible scope of discovery, as stated in Fed.R.Civ.P. 26(b)(1). *Lynn v. Monarch Recovery Management, Inc.*, 285 F.R.D. 350, 355 (D.Md. 2012). Federal Rule of Civil Procedure 26(b)(2)(C) "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D.Md. 2010). Under that rule, the court, acting *sua sponte* or at a party's request, "must limit the frequency or extent of discovery" if: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," considering "the importance of the issues at stake in the action, the amount in controversy, . . . the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C)(i)–(iii); 26(b)(1).

In this case, Defendant BPD would have to take extraordinary measures to search for hand-written documents created on an index card system to locate any potential homicide files. As I stated previously, Plaintiffs have failed to show the relevance of these files. Assuming *arguendo* that the 1980-1983 files were relevant, Defendant BPD has shown good cause with convincing evidence that any attempt to recover these files would be unduly burdensome. The burden of producing these files clearly outweighs any likely benefit for discovery. *Victor Stanley, Inc*. at 523. Therefore, Plaintiffs' request for the production of all homicide files from 1980-1983 where Defendant Kincaid was the lead detective is DENIED.

*Chestnut et al., v. Kincaid, et al.,*
LKG-20-2342
November 9, 2021
Page 4


     Despite the informal nature of this letter, it is an ORDER of the Court and will be docketed accordingly.

Very truly yours,

A. David Copperthite
United States Magistrate Judge