# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALFRED CHESTNUT, | ) | |
| ANDREW STEWART, JR., | ) | |
| and RANSOM WATKINS | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 20-CV-02342-LKG |
| | ) | |
| DONALD KINCAID, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION TO COMPEL THE NEW YORKER TO COMPLY WITH INDIVIDUAL DEFENDANTS' RECORDS SUBPOENA

NOW COME Individual Defendants, Donald Kincaid, Bryn Joyce, and John Barrick (hereinafter the "Individual Defendants"), by and through their attorneys, Nathan & Kamionski LLP, and hereby move this Court pursuant to Fed. R. Civ. P. 45 for an order to compel Conde Nast Entertainment and The New Yorker, Advance Magazine Publishers Inc., (hereinafter "The New Yorker") to properly respond to Individual Defendants' Subpoena to produce records. In support of their motion, Individual Defendants[1] state as follows:

### Factual Background

This case arises out of the arrest, prosecution, and conviction of Plaintiffs for felony murder of a 14-year-old boy named DeWitt Duckett in 1983. *See* Am. Compl., ECF No. 59. More than thirty years later, Plaintiff Alfred Chestnut wrote to the State's Attorney's Office for Baltimore City (hereinafter "SAO"), requesting a reinvestigation of his conviction. *Id*. ¶ 124. The SAO

---

[1] Defendant Baltimore Police Department joins in seeking the requested relief.

1

ultimately joined Plaintiffs' Petition for Writ of Actual Innocence, which was granted on November 25, 2019. *Id*. ¶¶ 125-126. The SAO subsequently dismissed the charges against Plaintiffs. *Id*. ¶ 127. Following the dismissal of the charges, Plaintiffs filed this civil-rights lawsuit against Individual Defendants and the Baltimore Police Department ("BPD").

The crux of Plaintiffs' case is that the four eye-witness accounts, whose grand jury and trial testimony supported Plaintiffs' convictions, were all obtained through coercion by the Individual Defendants. *Id*. ¶¶ 59-80. Critically, although the four eye-witnesses were interviewed by the SAO in 2019, none have given sworn testimony since 1984. Simply put: the testimony of these four witnesses is vital to the claims and defenses in this case. As such, the credibility and the ability to properly assess the veracity of their testimony is indispensable to defending claims supported by their anticipated testimony.

On October 25, 2021, The New Yorker published an 8,666-word feature article titled "When a Witness Recants," by Ms. Jennifer Gonnerman, which explored in great detail the present-day claims of one the four trial witnesses, Mr. Ron Bishop. *See* Article, attached as Exhibit 1. Ms. Gonnerman directly quotes Mr. Bishop, the Plaintiffs, and others, such as the author of the SAO report and then-chief of the SAO's Conviction Integrity Unit, Ms. Lauren Lipscomb, more than 150 times. *Id*. As a result, Individual Defendants issued an extremely narrow subpoena to The New Yorker seeking only "audio or video recordings of statements provided or interviews conducted with anyone in connection with the article," which was properly served on November 8, 2021. *See* Subpoenas to The New Yorker with Certificates of Service, attached as Exhibit 2.

Counsel for The New Yorker initially requested that the Individual Defendants withdraw their subpoena, then refused to produce any responsive records, stating, "[w]ithout confirming whether or not The New Yorker has any such material, we decline to produce it..." *See* Emails

from Counsel, attached as Exhibit 3. In response, Counsel for Individual Defendants requested The New Yorker produce a privilege log as required under the federal and local rules and again requested confirmation whether responsive records even exist. *Id*. By formal letter, The New Yorker refused production – without a privilege log – and again refused to confirm the existence of any responsive records. *See* November 24, 2021 Letter from the New Yorker, attached as Exhibit 4. Despite The New Yorker's blatant disregard for the Rules of Discovery and this Court's Local Rules, Individual Defendants presented their legal authority and requested a meet an confer in compliance with the Maryland Local Rules. *See* Emails with Counsel 2, attached as Exhibit 5. The New Yorker subsequently retained outside counsel. *Id*. During a meet and confer, outside counsel for The New Yorker confirmed that hours of audio recordings responsive to Individual Defendants' subpoena existed, but after consulting their client, represented that The New Yorker still refused to produce a privilege log. *Id*. Accordingly, Individual Defendants move to compel the production of records responsive to their Subpoena, and to order The New Yorker to show cause why it should not be held in contempt failing to comply with the Rules of Discovery.

## Legal Standard

Under the Federal Rules of Civil Procedure, courts have broad powers to govern conduct of discovery. *Dashiel v. Montgomery County*, 131 F.R.D. 102, 103 (D. Md. Nov. 16, 1989). Federal Rule of Civil Procedure 45(A)(iii) commands each person, to whom a subpoena is directed to "produce designated documents," to comply with said subpoena at "a specified time and place." "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Phillips v. Ottey*, No. CV DKC 14-0980, 2016 WL 6582647, at *2 (D. Md. Nov. 7, 2016). "Thus, regardless of whether the Court considers [the parties'] Motion under Rule 45 or Rule 26, the Court must review [ ] subpoenas under the relevancy standards set forth in Rule

3

26(b)." *Id*. Under Rule 26(b), documents are discoverable so long as they are (1) non-privileged, (2) relevant to any party's claim or defense, and (3) proportional to the needs of the case.

**Discussion**

## I.  The New Yorker Failed to Properly Respond to the Individual Defendants' Subpoena.

Rule 45(d)(2)(A)(ii) requires that a person withholding subpoenaed information under a claim of privilege must: "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." The party claiming the privilege generally bears the burden of proof as to its application. *See, e.g.*, *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011). The party must assert "privilege/protection with particularity for each document, or category of documents, for which privilege/protection is claimed." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008). "Guideline 10(d)(ii)(b) of the Local Rules provides additional information that a party objecting to the production of a particular document under an analogous provision of the federal rules, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii), should include in its particularized description of the allegedly protected documents." *Am. Home Assur. Co. v. KBE Bldg. Corp.*, No. CIV. CCB-13-1941, 2015 WL 348292, at *13 (D. Md. Jan. 13, 2015) ((i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other...).

The New Yorker's requests that Individual Defendants withdraw their subpoena, their refusal to confirm the existence of the requested records, and the subsequent letter offering

4

boilerplate objections that relying on law outside this jurisdiction do not comply with its obligations set forth by the Federal Rules of Discovery and the Maryland Local Rules. Moreover, The New Yorker's disregard for the proper procedures of this Court also frustrates Individual Defendants' efforts to develop their case within this litigation's discovery timeline. As such, through its inaction and disregard for this Court's rules, The New Yorker has effectively waived any claims of privilege it may have. *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573–74 (D. Md. 2010) ("Objections to discovery must be specific, non-boilerplate, and supported by particularized facts where necessary to demonstrate the basis for the objection. Failure to do so may constitute a waiver of grounds not properly raised.") (internal quotations and citations omitted); *Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. CIV.A. 5:05CV41, 2006 WL 2715164, at *4 (N.D.W. Va. Sept. 22, 2006) ("Failure to timely produce a privilege log or the production of an inadequate privilege log may constitute a waiver of any asserted privileges."); *Mosely v. City of Chicago*, 252 F.R.D. 421, 426 (N.D. Ill.), *order vacated in part on reconsideration sub nom. Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D. Ill. 2008) ("By failing to comply with Rule 45, the Respondents have waived whatever claim of privilege they might have had in the tapes and interview notes.").

## II.  Individual Defendants Satisfy All Three Prongs Of the *LaRouche* Test.

When considering a civil litigant's right to compel evidence from a reporter and the First Amendment claim of the press to protect its newsgathering activities, the Fourth Circuit has adopted the following three-part balancing test: "(1) [W]hether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986). Here, the requested audio/video recordings of statements made by critical witnesses in

this case are indispensable to assessing the credibility of the witnesses. These recordings, or their substantive equivalent, are not available by any alternative means. Thus, their absence, in light of the unique circumstances of this case, will severely prejudice Individual Defendants' ability to effectively cross-examine the witnesses and assess their credibility.

### a.   The Subpoenaed Records Are Highly Relevant.

There can be no dispute, as The New Yorker implicitly concedes in its boilerplate objections, that the subpoenaed records are extremely relevant to this case. *See* Ex. 1; *see also* Ex. 4. The allegations and quotations attributed to a critical trial witness that he publicly recants for the very first time, inform every aspect of the claims and defenses in this case.[2] *See* Ex. 1 ("He e-mailed me in May of 2020, and when I called him he spoke for more than three hours."); *see also* June 17, 2021 Email from Gonnerman to Bishop, attached as Exhibit 6 ("Thank you so much for the chance to spend yesterday with you. I was so glad to get the chance to finally meet you in person-and I was just so grateful for the chance to see your old school, Sandtown, and the courthouse with you. Thank you for making the time to show me around! I really appreciated it."). Similarly, the statements made by Ms. Lipscomb are equally as relevant. *See id*. ("In early 2020, I met with Lipscomb in her office to learn more about this case."); Dkt. No. 64-9. And, the statements by Plaintiffs themselves regarding their claims and damages are undoubtedly relevant. *See* Ex. 1 ("At the end of the summer, I met with Chestnut and Watkins in a conference room at Brown, Goldstein & Levy, the main law firm representing them, in downtown Baltimore. Stewart, who now lives in South Carolina, appeared via Zoom on a large screen.").

---

[2] The SAO promised the witnesses to protect their anonymity. *See* Dkt No. 49 at p. 1. Their names were not disclosed in Plaintiffs and the SAOs' jointly filed Petition for Writ of Actual Innocence, the SAO's Conviction Integrity Unit Report, or Plaintiffs' Complaint. *See* Dkt. No. 64-9; Dkt. No. 1.

**b.  The Information Sought Cannot be Obtained by Alternative Means.**

Individual Defendants have no alternative source from which to obtain the requested recordings. In considering the standard for the second prong of the *LaRouche* test, the Fourth Circuit has emphasized that the "test does not ask whether there is **other** evidence,… it asks 'whether the **information** [sought from the reporter] can be obtained by **alternative means**.'" *United States v. Sterling*, 724 F.3d 482, 507 (4th Cir. 2013) (citing *LaRouche*, 780 F.2d at 1139 (emphasis added)).

There is no equivalent to audio/video recordings, other than, perhaps, a transcription taken by a trained stenographer to determine what a witness has previously stated. Similarly, there is no equivalent to past recorded statements when assessing a witness's credibility. Past recorded statements are of extraordinary import when, as here, they form the entire basis for a federal civil rights lawsuit. *See* Dkt. Nos. 59, 64-9. Plaintiffs' entire case rests on their claims that four witnesses were coerced to identify them as the murderers in the 1983 homicide based almost entirely on their unsworn recantation statements procured more than 35 years after their trial testimony.

The New Yorker's insistence that the information sought can alternatively be obtained by deposing the four eye witnesses themselves, underscores the boilerplate nature of its objections. *See* Ex. 4. Where the credibility of a witness is at issue, there is simply no substitute for past recorded statements. This reality is heightened when one considers the actual facts of this case. Mr. Bishop's sworn grand jury and trial testimony supported Plaintiffs' convictions in 1984. Dkt. No. 59 ¶¶ 111-115. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████ The recordings Individual Defendants presently seek

from The New Yorker are the only other known recorded statements by Mr. Bishop. Ms.

Gonnerman spent hours upon hours discussing every detail of the case with Mr. Bishop, and she

even spent a day with him in Baltimore to visit the site of the shooting, the courthouse, and his

childhood neighborhood. *See* The New Yorker Email and Fact-Checking Memo, attached as Ex.

7; Ex. 6. ██████████████████████████████████

██████████████████████████████████

████████████████████████ To suggest that the substance of these recordings is

somehow available elsewhere ignores the unique circumstances of this case as well as the basic

principles that underly our legal system, including: that opposing counsel must be afforded the

opportunity to properly cross examine a witness, *see* Fed. R. Evid. 611; and a witness who cannot

be impeached by past recorded statements cannot be cross examined as effectively as a witness

who must remain consistent with prior statements. *See* Fed. R. Evid. 613. Moreover, Mr. Bishop

cannot not possibly remember all of the relevant and material statements he gave to The New

Yorker over so long a period, let alone recount them all in the allotted time of a deposition.

Ms. Lipscomb's recorded statements are similarly indispensable to assess her credibility.

For instance, The New Yorker presents the following quotes from Ms. Lipscomb:

> In early 2020, I met with Lipscomb in her office to learn more about this case. Three
> months had passed since she had finished her reinvestigation, and she was still livid.
> Speaking about the prosecutorial misconduct that she had uncovered, she said,
> "This is absolutely the worst that I have seen." Why did the prosecutor refuse to
> give the police investigatory reports to the defense lawyers and then bury them in
> the court file? "I haven't spoken to anyone yet who can explain why that occurred,"
> she said.

Ex. 1.

These published comments alone raise serious questions about Ms. Lipscomb's credibility. Notably, the Maryland Court of Special Appeals held that the prosecutor's conduct was lawful and that the Trial Court properly denied the criminal defendants' (Plaintiffs') motion for the production of the police investigatory reports. *See* Dkt. No. 22-4 at pp.10-12; Dkt. No. 22 at Sec. II. Moreover, Plaintiffs withdrew this claim through their Amended Complaint. *See* Dkt. No. 59-1 ¶¶ 4, 5, 100, 123. Consequently, Ms. Lipscomb is no ordinary witness. She is a prosecutor and an officer of the Court, who had an added responsibility, as an arbiter of guilt and innocence within her "extra-judicial" investigations and findings while leading the Conviction Integrity Unit. Unfortunately for the Individual Defendants, given Mr. Lipscomb's status, her credibility is much harder to question. Consequently, her past recorded statements are even more critical to assessing her credibility, and they simply cannot be replicated with other evidence.

The Court's conclusion in *Sterling* that "[c]learly, [the information] cannot be [obtained by alternative means]. There are no other witnesses who can offer this testimony, nor is it found in any other form of evidence," is directly applicable to the facts and circumstances of recordings made by The New Yorker. *Sterling*, 724 F.3d at 507; *see also Federico v. Lincoln Mil. Hous., LLC*, No. 2:12-CV-80, 2014 WL 3962823, at *5 (E.D. Va. Aug. 13, 2014) (applying *LaRouche* and finding that relevant outtakes and video footage, as well as communication between the media outlet and individuals, parties, and their attorneys, could not be obtained by alternative means).

### c.  Individual Defendants Have a Compelling Interest in the Information.

"The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 176 (1970) (Black, J., concurring).

"Wisely employed it is perhaps the most powerful weapon in the arsenal of the lawyer in pursuit of the whole truth." *Treharne v. Callahan*, 426 F.2d 58, 62 (3d Cir. 1970). As Judge Grimm observed in *Behler v. Hanlon*, 199 F.R.D. 553, 560 (D. Md. 2001), the most frequent and popular method of impeachment is by prior inconsistent statement. In this instance, the requested recordings are the only known prior recorded statements by Mr. Bishop that detail any allegations of misconduct by Individual Defendants. Thus, they are critical to any cross-examination. Likewise, Ms. Lipscomb's recorded statements to The New Yorker are equally crucial.[3]

In an extremely similar set of circumstances, the court in *Mosely v. City of Chicago* made the following observations directly applicable here:[4]

> Mr. [Bishop, Ms. Lipscomb, and Plaintiffs] will be [ ] central witness in the case, and its outcome may hinge in large measure on the defendants' ability to effectively cross-examine [them]. A component of that exercise is to point out to the jury statements made that would be inconsistent with [their] version of events. Unlike [other situations], there is every reason to conclude that the subpoenaed information is likely to contain critical information that could constitute or lead to admissible evidence. Of course, the trier of fact will be able to observe the demeanor of Mr. [Bishop, Ms. Lipscomb, and Plaintiffs]. But that does not in the slightest reduce the need for and relevance of the information that is being sought, for credibility involves more than demeanor. Evidence to be worthy of credit must not only be credible in itself, but must proceed from a credible source. Admission and prior inconsistent statements of a witness undermine credibility.

*Mosely*, 252 F.R.D. at 430-31 (internal quotations and citations omitted).

---

[3] It bears mentioning that, despite this Court's order and admonishment to produce responsive discovery, the SAO still failed to disclose multiple emails between Ms. Lipscomb and Mr. Bishop, in which they coordinate an interview with Ms. Gonnerman to take place at the SAO offices. The SAO also continues to improperly withhold text messages between the SAO's Investigator and Mr. Bishop, which Mr. Bishop provided to Ms. Gonnerman. Individual Defendants have learned of the existence of these records since they have been produced by Mr. Bishop in response to a records subpoena.

[4] Individual Defendants acknowledge that *Mosley* applies the law of the Seventh Circuit, which does not recognize a unique reporter's privilege and, instead, requires that a subpoena be "reasonable in the circumstances, which is the general criterion for judicial review of subpoenas." *Mosely*, 252 F.R.D. at 427 (citing *McKevitt v. Pallasch*, 339 F.3d 530, 532 (7th Cir. 2003)). The dicta included is instructive and directly on point nonetheless.

The Fourth Circuit's application of the third prong of *LaRouche*—whether there is a compelling interest in the information—evidences that the central inquiry is not so much about any potential harm to a free press, which was never an explicit consideration in *Sterling*, but rather, focuses on the extent of the compelling interest in disclosure.[5] *See Sterling*, 724 F.3d at 509-10. While it is true that, unlike in *Sterling*, the interest in this case is not "the security of the Nation," *Federico* illustrates that a compelling need is demonstrated when relevant information that cannot be obtained from an alternative source "could play a role in the outcome of [the] proceedings." *Federico*, 2014 WL 3962823, at \*6.

Additionally, wrongful convictions inherently shake the bedrock of the criminal justice system. When a wrongful conviction claim hinges on recanted statements, the interest in obtaining any former statements of those witnesses is indisputably heightened. Thus, there is an added interest in ascertaining the truth behind claims that attack the integrity of law enforcement and the judicial system, institutions that deserve and require the public trust to be effective. This interest is further amplified when, as in this case, the recantations occur more than 35 years after the convictions.

Moreover, the compelling nature of the right to adequately examine critical witnesses cannot be overstated. The entire legal system is predicated on the elicitation of evidence from witnesses on direct and cross-examination, and a key component of cross-examination is the introduction of extrinsic evidence of a prior inconsistent statement. *See* Fed. R. Evid. 611; Fed. R. Evid. 613. The New Yorker, alone, is the only source of these prior inconsistent statements.

In sum, to again borrow from the *Mosely* opinion:

---

[5] Indeed, the harm to the free press cannot be that great as demonstrated by the fact that CBS-Viacom produced the audio/video recorded statements requested of them by subpoena without any objection.

The importance of and need for the information sought by the defendants in the instant case are in inverse proportion to the burden imposed on the Respondents if they are required to produce audio and video tapes of the [ ] interviews. Indeed, the stakes for the individual defendants could scarcely be greater. Not only is there the prospect of a crippling damage award, but their reputations will be ruined—justifiably so if they did what the complaint alleges.

*Mosely*, 252 F.R.D. at 433.

## <u>Conclusion</u>

The New Yorker has not complied with the Federal Rules of Discovery or those promulgated by this Court. The requested recordings are unavailable by any alternative means and their absence, in light of the unique circumstances of this case, will severely prejudice Individual Defendants' ability to effectively cross-examine the witnesses and assess their credibility.

WHEREFORE, Individual Defendants respectfully request that this Court enter an order compelling the full production and inspection of the requested recordings, and for such other relief as this Court may deem appropriate.

DATED: December 22, 2021

Respectfully submitted,

*/s/ Mayer Engelsberg*
Shneur Nathan, Bar No. 20707
Avi T. Kamionski, Bar No. 20703
Mayer Engelsberg Bar No. 21105
Michael J. Elliker Bar No. 20810
NATHAN & KAMIONSKI LLP
575 S. Charles Street Suite 402
Baltimore, MD 21201
(312) 612-1928
(312) 448-6099
akamionski@nklawllp.com
snathan@nklawllp.com
mengelsberg@nklawllp.com
melliker@nklawllp.com

*Attorneys for Donald Kincaid, Bryn Joyce, &*
*John Barrick*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2021, I caused the foregoing document to be

electronically filed with the Court's CM/ECF system, which will send an electronic copy of the

same to all counsel of record, and that I served a copy of the same on counsel for Conde Nast

Entertainment and The New Yorker, Advance Magazine Publishers Inc. via email.

/s/ Mayer Engelsberg