

MAYER ENGELSBERG
*Associate Attorney*
mengelsberg@nklawllp.com
T: (410) 885-4349
F: (312) 448-6099

<u>**VIA ELECTRONIC COURT FILING**</u>  February 2, 2022

The Hon. A. David Copperthite
United States District Court for the District of Maryland

**Re:** *Alfred Chestnut, et al. v. Donald Kincaid, et al.*, Civil Action No. LKG-20-2342

Dear Judge Copperthite:

Individual Defendants properly issued tailored subpoenas seeking relevant and discoverable information related to a critical witness in this case. Plaintiffs' efforts to protect the witness's deposition testimony from basic scrutiny and fact-checking should be denied.[1]

Plaintiffs were convicted in 1984 for the murder of Dewitt Duckett at Harlem Park Junior High School ("HPJHS"). After more than 34 years, a key State's witness, Ron Bishop, was contacted by Plaintiffs' investigator, Mike McGee. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ On January 24, 2022, Bishop testified at his deposition in this case that he did not recant to McGee.[2]

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Bishop's claims underwent significant transformation after talking to a reporter at The New Yorker. During his deposition, Bishop testified that he spoke to the reporter on approximately ten occasions, and for a significant amount of time. He also spent an entire day with that reporter touring HPJHS, the courthouse, and his childhood neighborhood. The New Yorker published an article in October 2021, containing allegations by Bishop for the first time that Defendant Kincaid did anything improper.

> Soon, however, Kincaid began acting differently: angry, frustrated, accusatory. He stood a few inches from the boy; there was a second detective in the room, too. They acted as if Bishop were withholding crucial information-"We *know* you know who was there"-and, Bishop recalled, they made it clear that he would not be allowed to leave until he said who had been involved in Duckett's murder. "The

---

[1] Defendant Baltimore Police Department joins the Individual Defendants in the relief sought.
[2] A transcript of Bishop's deposition has not yet been produced to the parties.



threat was: if I didn't tell them who did it, I could be charged with accessory to murder," he said.

Kincaid conducted the photo array that night in a different way than he had before, according to Bishop. The boy pointed to the photos, and the detective made comments. Bishop recalled pointing to Chestnut and the detective saying something like, "Oh, he had the gun, right?" Bishop said, "And then I realized ... he wants me to say, 'Chestnut did it.'

EFC No. 87-2 at 4. At his deposition, Bishop admitted he never told the SAO this account.

At his deposition, Bishop's claims evolved yet again and in more startling fashion. He testified he met with Plaintiffs' counsel at least four times in person to prepare for his deposition. He alleged for the very first time that Kincaid specifically threatened to bash his head thru the window if he wouldn't testify truthfully. He also alleged that Kincaid made repeated gestures to his gun that Bishop interpreted as a threat.

The timeline and evolution of Bishop's story alone raise serious questions about the veracity of his claims, but Individual Defendants know very little about Bishop, other than what he testified to as his deposition. Who is he? Where has he been? Who has he talked to? And why has he suddenly made allegations of police misconduct more that 38 years after the incident, and more than two years after he originally recanted his trial testimony? The ability to gather relevant information that can answer these important questions is the very purpose of fact discovery.

At his deposition, Bishop himself addressed some of these questions. He testified that after his experience with the police in this case, his life was destroyed. He claimed that his grades fell and he began to struggle in school. He testified that he turned to wrestling as a distraction and that he received a wrestling scholarship to attend Coppin State University. He testified that he has been working at Sheppard Pratt for the last ten years as a Mental Health Associate. He admitted that he has had a least one disciplinary complaint lodged against him by a colleague.

Plaintiffs wish for Individual Defendants to simply accept these claims as fact. That is hardly fair play. Individual Defendant must be afforded the opportunity to test Bishop's claims against verifiable records. That is precisely what the Rules of Discovery provide. Rule 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b). Here, Bishop's lack of credibility is a pillar of Individual Defendants' defense. Thus, Individual Defendants issued subpoenas to T-Mobile to ascertain who Bishop has talked with, T-Mobile Subpoena, attached as Ex. 2, to Shepard Pratt to learn more about his disciplinary records, including regarding his truthfulness and relationships with others, Sheppard Pratt Subpoena, attached as Ex. 3, and to Coppin State University regarding his claims of falling grades and wrestling scholarship.[3] Coppin State Subpoena, attached as Ex. 4.

Courts in this district specifically articulated that "[p]ersonnel files may also be discoverable if they contain information useful for impeachment." *U.S. E.E.O.C. v. McCormick & Schmick's Seafood Restaurants*, No. CIV.A. DKC-11-2695, 2012 WL 3563877, at *4 (D. Md. Aug. 16, 2012) (citing *Marlow v. Chesterfield Cnty. Sch. Bd.*, No. 3:10cv18–DWD, 2010 WL 3660770, at *6 (E.D.Va. Sept.15, 2010); *cf. Behler v. Hanlon*, 199 F.R.D. 553, 555–60, 561

---

[3] At Plaintiffs' request, none of the subpoenas have been served. *See* Joint Letter, ECF No. 111. Additionally, Individual Defendants agreed to narrow the scope of the riders that were noticed with the subpoenas to be exactly tailored to the information sought. *See* Letter to Plaintiffs' Counsel, dated Jan. 31, 2022, attached as Ex. 5.



(D.Md.2001) (Rule 26 permits "discovery of facts that relate to any of the six forms of impeachment," namely, bias impeachment, impeachment by contradiction, impeachment by incapacity, character for untruthfulness/prior bad act impeachment, impeachment by prior conviction, and impeachment by prior inconsistent statement)); *see also Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) ("No special status is given to impeachment evidence under Rule 26(b)(1)... Production of impeachment evidence is required in the ordinary course of discovery.").

Critically, unlike *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) a case where the court held that Defendant's subpoenas were overbroad and not tailored to a specific purpose, Individual Defendants have targeted their requests to information specifically relevant to Bishop's testimony. In *Singletary*, "[t]he complete employment file of [Plaintiff], including application, evaluations, payroll records, correspondence, notes, records, omitting nothing." *Id*. Here, Individual Defendants only seek records directly tailored to evaluate Bishop's responses to basic questions probing his claims. Individual Defendants' subpoena to T-Mobile requests only the call logs for Bishop's cell phone for the specific time period when he began interacting with others regarding this case. Ex. 2 at 4. Their subpoena to Sheppard Pratt seeks only information related to his disciplinary record and interactions with others. Ex. 5. Their subpoena to Coppin State seeks only his grades, disciplinary records, and scholarship information. *Id*.

Moreover, in *Fangman v. Genuine Title, LLC*, No. CV RDB-14-0081, 2016 WL 560483, at *4 (D. Md. Feb. 12, 2016) the court provided the following caution:

> Courts may restrict the scope of discovery requests, but must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case. The burden is on the movant to establish good cause under Rule 26(c); the movant must set forth specific and particular facts, rather than broad conclusory statements as to why a protective order should issue. In order to obtain a protective order, the moving party must demonstrate that the discovery sought lacks relevance to the extent that the likelihood and severity of the harm or injury caused outweighs any need for the information.

*Id*. (citations and quotations omitted).

As explained above, Individual Defendants seek only relevant and material records to Bishop's testimony and this case. Further, it is difficult to conceive of any harm or injury this limited discovery will cause Plaintiffs.[4] [5] Therefore, Individual Defendants respectfully ask that the Court deny Plaintiffs' request for a protective order enjoining Individual Defendants' from serving these subpoenas.

---

[4] Plaintiffs do not have standing to allege a privacy interest in the subpoenaed records. *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."). Necessarily, their standing is limited to a claim of irrelevance under Rule 26 (b), which could also be construed as "undue burden" under Rule 26(c). *See Singletary*, 289 F.R.D. at 241. As the party resisting discovery, Plaintiffs bear the burden to demonstrate the subpoenas seek wholly irrelevant information. *See Stone v. Trump*, 453 F. Supp. 3d 758, 766 (D. Md. 2020).

[5] There is no reason to believe this limited discovery would cause any harm to Bishop. If, out of an abundance of caution the Court is nonetheless concerned, an order that any records be treated pursuant to the Stipulated Confidentiality Order would be more than sufficient to ensure these records are treated appropriately. *See* ECF No. 28.



Respectfully,

/s/ Mayer Engelsberg
Avi T. Kamionski, Bar No. 20703
Shneur Nathan, Bar No. 20707
Mayer Engelsberg, Bar No. 21105
Michael J. Elliker, Bar No. 20810
Nathan & Kamionski LLP
575 S. Charles Street, Suite 402
Baltimore, MD 21201
T: (312) 612-1928
snathan@nklawllp.com
akamionski@nklawllp.com
mengelsberg@nklawllp.com
melliker@nklawllp.com

*Attorneys for Individual Defendants*