February 2, 2022

**VIA ECF**
Hon. A. David Copperthite
United States District Court
101 West Lombard Street, 8B
Baltimore, Maryland 21201

  Re: *Chestnut, et al. v. Kincaid, et al.,* Case No. LKG-20-2342

Dear Judge Copperthite:

  On January 26, 2022, the Individual Defendants notified Plaintiffs that they intended to serve three subpoenas on (1) T-Mobile; (2) Coppin State University; and (3) Sheppard Pratt for personal records relating to non-party witness, Ron Bishop.[1] *See* Exs. 1–4. During the 1984 trial, Mr. Bishop testified that Plaintiffs were responsible for Dewitt Duckett's murder. During a reinvestigation of the case by the Conviction Integrity Unit ("CIU") of the Baltimore City State's Attorneys' Office ("SAO") in 2019, Mr. Bishop recanted his trial testimony and revealed that only one person shot Dewitt Duckett and that person was not any of the Plaintiffs. Because the subpoenas seek irrelevant information, are disproportionate to the needs of the case, and designed to harass Mr. Bishop, the Court should strike the subpoenas.

  After several attempts by the Individual Defendants to delay Mr. Bishop's deposition, Plaintiffs and the Individual Defendants deposed Mr. Bishop on January 24, 2022. During Mr. Bishop's deposition, he testified at length about the pressure, threats, and coercion he experienced from Detective Donald Kincaid and other Baltimore Police Department ("BPD") detectives to falsely identify Plaintiffs as the perpetrators of the crime. Mr. Bishop also testified briefly regarding his educational background and employment, including that he attended Coppin State University on a wrestling scholarship, obtained a bachelor's degree in psychology, and has been employed by Sheppard Pratt as a mental health worker for the past 13 years. In discussing his employment history, Mr. Bishop explained that he had one minor infraction, which resulted in no discipline. In response to questions from counsel for the Individual Defendants regarding Mr. Bishop's communications about Plaintiffs' exoneration and the murder of Mr. Duckett, Mr. Bishop testified that he had one cell phone conversation with a private investigator in 2018, several phone calls and text messages with members of the CIU in 2019, and calls with New Yorker reporter, Jennifer Gonnerman, beginning in 2021.[2]

  After serving Plaintiffs with the original subpoenas referenced above that sought the *entirety* of Mr. Bishop's personnel file and undergraduate records, counsel for the Individual Defendants informed Plaintiffs' counsel on January 31 that they intended to "amend the

---

[1] These latest subpoenas bring the total number of third-party subpoenas noticed and/or served by the Individual Defendants to 29, a number that is likely to grow in the remaining six weeks of fact discovery and which underscores the Individual Defendants' overreach and abuse of the subpoena power.

[2] Mr. Bishop also testified that he spoke with Plaintiffs' counsel several times to coordinate in-person meetings.

subpoenas" to Sheppard Pratt and Coppin State University. The amended subpoenas still seek *all* employee reviews, disciplinary records, and internal investigations from Mr. Bishop's employer, and *all* scholarship information, transcripts, attendance records, and disciplinary records from his alma mater. *See* Ex. 5. The Individual Defendants did not amend the subpoena to T-Mobile, which seeks four years of Mr. Bishop's cell phone records.

## Legal Standard

Rule 26(c)(1) provides that, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." For good cause shown, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* A party has standing to challenge a third-party subpoena by seeking a protective order. Fed. R. Civ. P. 26(c); *see also Sirpal v. Fengrong Wang*, No. WDQ-12-0365, 2012 WL2880565 (D. Md. July 12, 2012). "[W]hen a subpoena is directed at a nonparty, 'courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally.'" *Socol v. Haas*, No. 3:18-CV-00090, 2021 WL 2635847, at *4 (W.D. Va. June 25, 2021).

Judges are empowered to limit discovery to prevent a party from using discovery tools to embark on a fishing expedition. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent fishing expeditions or an undirected rummaging through . . . records for evidence of some unknown wrongdoing."); *Howard v. Coll. of the Albemarle & Kandi Deitemeyer*, No. 2:15-CV-00039-D, 2016 WL 4384658, at *3 (E.D.N.C. Aug. 16, 2016) ("Litigants may not use the discovery process as a fishing expedition."). Indeed, Rule 26 limits the scope of discovery to matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"A showing of irrelevancy of the proposed discovery can satisfy the good cause requirement for a protective order." *Hayat v. Fairley*, Civil Action No. WMN-08-3029, 2010 WL 11451124, at *2 (D. Md. May 6, 2010); *see also Sirpal,* 2012 WL 2880565, at *4 n. 12 (stating that when evaluating a motion for protective order, the court may "consider the Rule 26 factors, including relevance, in deciding the motion") (citation omitted). Similarly, Rule 26(b)(1) requires the court to assess whether the request is proportional to the needs of the case. Several proportionality factors should be considered, including "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

### I. The subpoenas are neither relevant to any claim or defense nor proportional to the needs of this case.

The records the Individuals Defendants seek are wholly unrelated to the claims and defenses at issue in this case, and the Individual Defendants failed during the meet and confer to present any specific arguments that the information sought is relevant. Information is relevant only if it is "reasonably calculated to lead to the discovery of admissible evidence." *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012). Mr. Bishop's personal and confidential employment, educational, and cell phone records have no relevance to the substance of this case (i.e., whether Defendants violated Plaintiffs' constitutional rights).

The requested records are also likely to be inadmissible character evidence. *See* Fed. R. Evid 404(a) (prohibiting evidence of a person's character or trait to prove that on a particular occasion that person acted in conformity therewith); Fed. R. Evid. 404(b) (prohibiting evidence of a crime, wrong, or other act to prove a person's character in order to show conformity therewith); Fed. R. Evid. 608(b) (prohibiting extrinsic evidence to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness).

Furthermore, the records are far outside the scope of what this Court has deemed permissible discovery between the parties to this case. *See, e.g.*, ECF No. 58 (concluding that portions of the Individual Defendants' BPD personnel files were irrelevant, including the Individual Defendants' personal identifying information, criminal background history, and post-incident performance reviews); ECF No. 81 (concluding that Plaintiffs' request for homicide files between 1980-1983 in which Detective Kincaid was the lead detective was not relevant and unduly burdensome). Subpoenas seeking more expansive, personal, and confidential records for a non-party witness from long after the underlying events are similarly irrelevant and burdensome or even more so. *See ISpine, PLLC v. Allstate Prop. & Cas. Ins. Co.,* No. CV ELH-20-145, 2020 WL 705176, at *2 (D. Md. Feb. 12, 2020) ("Subpoenas that are overbroad and that seek information irrelevant to the case should be considered unduly burdensome.") (citation omitted). This is particularly true given the "special weight" afforded to Mr. Bishop's non-party status. *Socol*, 2021 WL 2635847, at *4.

Even assuming, *arguendo*, that the records are marginally relevant, the requested discovery "must be measured against the yardstick of proportionality." ECF No. 58 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010)). The subpoenas here are overbroad. The Individual Defendants cannot demonstrate how 13 years' worth of "all" disciplinary history, internal investigations, and employee reviews for a non-party is proportional to proving any of their affirmative defenses. Likewise, seeking "Call Detail Records" for every incoming and outgoing call to Mr. Bishop over an approximately-four-year period is facially overbroad. *See* Ex. 2. Mr. Bishop described the calls on which he spoke about Plaintiffs' exoneration and Mr. Duckett's murder, but was unable to recall specific dates, making any attempt to corroborate his testimony a fishing expedition that will require the Individual Defendants to sort through thousands of call records after Mr. Bishop's deposition has concluded—a pointless exercise at the great expense of Mr. Bishop's privacy.

## II. The subpoenas are designed to annoy and harass Mr. Bishop.

The irrelevance of the subpoenas demonstrates their likely true purpose: to annoy and harass Mr. Bishop. Mr. Bishop already produced dozens of documents in response to a subpoena from the Individual Defendants, including emails and text messages with the CIU and Ms. Gonnerman, and cooperated during a nearly seven-hour deposition. The Individual Defendants will likely attempt to depose Mr. Bishop again if they obtain grand jury transcripts. Subjecting Mr. Bishop to the embarrassment and "potential reputational damage" of a subpoena directed to his current employer is unreasonable. *United States v. Handrup*, No. 13 C 7733, 2016 WL 8738943, at *2 (N.D. Ill. July 11, 2016) (granting Plaintiff's motion for protective order to prevent subpoena to former employer).

For all the reasons stated above, this Court should strike the three subpoenas in their entirety.

Respectfully,

_____/s/_____
Kobie A. Flowers (Bar No. 16511)
kflowers@browngold.com
Andrew D. Freeman (Bar No. 03867)
adf@browngold.com
Neel K. Lalchandani (Bar No. 20291)
nlalchandani@browngold.com
Chelsea J. Crawford (Bar No. 19155)
ccrawford@browngold.com
Anthony J. May (Bar No. 20301)
amay@browngold.com
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

_____/s/_____
Larry A. Nathans (Bar No. 03023)
nathans@nathanslaw.com
Booth M. Ripke (Bar No. 25764)
bripke@nathanslaw.com
Nathans & Biddle LLP
120 E. Baltimore Street, Suite 1800
Baltimore, Maryland 21202
Tel: (410) 783-0272
Fax: (410) 783-0518

*Attorneys for Plaintiffs Alfred Chestnut, Andrew Stewart, Jr., and Ransom Watkins*