## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
A. DAVID COPPERTHITE
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0946
MDD_ADCChambers@mdd.uscourts.gov

February 28, 2022

TO COUNSEL OF RECORD

Re: *Chestnut et al. v. Kincaid et al.*, Civil No. LKG-20-2342

Dear Counsel:

Pursuant to my Standing Order Concerning Discovery (ECF No. 52), counsel for Plaintiffs Alfred Chestnut, Andrew Stewart, Jr., and Ransom Watkins (collectively, "Plaintiffs") and counsel for Defendant Baltimore Police Department ("BPD") filed a joint letter regarding a discovery dispute over Topics Five (5) through Fifteen (15) in a draft Rule 30(b)(6) Deposition Notice. ECF No. 129. Parties have submitted letters detailing their positions. ECF Nos. 131, 132. Plaintiffs ask this Court to order BPD to produce a Rule 30(b)(6) designee to testify on all of the topics. ECF No. 132 at 1. BPD contends that the Topics 5 through 15 are overbroad, lack particularity, and exceed the permissible scope of discovery in light of the Court's Bifurcation Order (ECF No. 47), and thus seek a protective order. ECF No. 131 at 1. Having reviewed the briefings from both parties, no additional briefing is needed. Accordingly, the Court will DENY Plaintiffs' request that it order BPD to produce a Rule 30(b)(6) designee to testify on Topics 5 through 15.

Topics 5 through 15 in Plaintiffs' draft Rule 30(b)(6) Deposition Notice seek:

5. Statistics relating to BPD's homicide clearance and closure rates in the 1980s, including the policies, procedures, and methodology for calculating and reporting the same.

6. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning "red ball" cases, as defined above.

7. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning the sharing of information and/or files among BPD's police officers, agents, detectives, and any other employees, prosecutors with the SAO and/or a defendant in a criminal matter.

8. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning the interviewing and interrogation of witnesses, including minors.

9. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning the identification, investigation, and elimination of suspects.

10. BPD policies, practices, procedures, and rules, in place from November 18,

1983, to May 28, 1984, whether formal or informal, concerning the investigation of alibi witnesses.

11. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning seeking arrest warrants.

12. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning conducting eyewitness identification procedures, including photo arrays.

13. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning the preparation and completion of routine investigative reports, including all such reports contained in the homicide file of Dewitt Duckett, such as incident reports, supplement reports, arrest reports, laboratory reports, 24-hour reports, prosecution reports, police reports, and supplemental memoranda.

14. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning how to document the progress of a murder investigation

15. BPD policies, practices, procedures, and rules, in place from November 18, 1983, to May 28, 1984, whether formal or informal, concerning *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the disclosure of exculpatory and/or impeachment evidence.

ECF No. 131-1.

Rule 26(b)(1) provides general provisions regarding the scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1). Discovery rules are to be accorded broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Court is guided by Rule 26(b)(1) and Appendix A, Guideline 1 of the Local Rules, "to facilitate the just, speedy, and inexpensive conduct of discovery," in light of what is "relevant to any party's claim or defense; proportional to what is at issue in a case; and not excessively burdensome or expensive as compared to the likely benefit of obtaining the discovery being sought." Loc.R., App. A, Guideline 1 (D.Md. 2021).

"Central to resolving any discovery dispute is determining whether the information sought is within the permissible scope of discovery, as stated in Fed.R.Civ.P. 26(b)(1)." *Lynn v. Monarch Recovery Mgmt., Inc.,* 285 F.R.D. 350, 355 (D.Md. 2012). Rule 26(b)(2)(C) "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D.Md. 2010). Under that rule, the Court, acting *sua sponte* or at a party's request, must limit discovery if: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(i)–(iii).

Initially, I agree with BPD that Plaintiffs have not shown that Topic 5 is relevant and within the permissible scope of discovery. Plaintiffs contend that the "statistics and the underlying policies are likely to support Plaintiffs' allegation that the Individual Defendants were under immense pressure from the public and within the BPD to arrest a suspect" in the investigation underlying this case. ECF No. 132 at 2. However, it is unclear how such a broad range of internal statistics will reflect public pressure and be relevant to the specific investigation at issue, especially when considering the significant barriers BPD will face in trying to identify a proper Rule 30(b)(6) designee. *See* ECF No. 132 at 2. The requested materials are thus not within the permissible scope of discovery for Plaintiffs' claims against the Individual Officer Defendants.

Moreover, the remaining Topics 6 through 15, impermissibly seek *Monell* discovery. The Supreme Court explained in *Monell v. Department of Social Services of City of New York* that a municipality may be liable for injuries caused by the unconstitutional actions of Individual Officer Defendants acting pursuant to a government's official policy or custom. 436 U.S. 658, 694 (1978). Thus, cases including *Monell* claims "are good candidates for bifurcation." *Johnson v. Balt. Police Dep't*, 500 F.Supp.3d 454, 460 (D.Md. 2020) (quoting *Beasley v. Kelly*, No. CIV. A. DKC 10-0049, 2010 WL 3221848, at *3 (D.Md. Aug. 13, 2010)). In *Johnson*, this Court identified the range of interests served by bifurcation, including: advancing "the efficient and convenient resolution of the case," sparing "the parties from expending valuable resources in discovery," and preventing "potential prejudice as to the [Individual Officer Defendants] that might result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs." *Id.* (citing cases). In a case where a plaintiff challenged bifurcation, arguing that it would preclude discovery from BPD, this Court explained:

> [B]ifurcation will stay discovery related to plaintiff's *Monell* claim, *i.e.*, evidence of the BPD's policies, practices or customs. It will not, however, effect [sic] plaintiff's ability to pursue discovery concerning her claims against [the defendant officer.] Bifurcation therefore erects no barrier to plaintiff's ability to obtain documents pertaining to [the defendant officer] from the BPD to the extent that the BPD is the custodian of such records.

*Grim v. Balt. Police Dep't*, No. CV ELH-18-3864, 2020 WL 1063091, at *7 (D.Md. Mar. 5, 2020).

Here, Judge Bennett granted BPD's unopposed motion to bifurcate and stay discovery, and BPD in its motion stated that it would "participate in non-*Monell* fact discovery specific to Plaintiffs' claims regarding the underlying alleged incident." ECF Nos. 47, 46-1 at 2. In light of the Bifurcation Order, the question is then whether the discovery requested from BPD is specific to Plaintiffs' claims against the underlying Individual Officer Defendants, and not its *Monell* claims about BPD's policies, practices, or customs. Plaintiffs' requests certainly seek BPD's policies in place at the time of the underlying investigation by the Individual Officer Defendants, but Plaintiffs have not shown that the requested topics are specific to the Individual Officer Defendants and thus distinct from *Monell*-related discovery. Instead, the topics at issue seek policies on BPD's patterns and practices which fall squarely within the context of *Monell* discovery. To find otherwise would be contrary to the rationale for bifurcation in cases such as these, including sparing parties from expending resources in discovery and preventing prejudice to the Individual Officer Defendants that may result from the municipality's policies, practices, or customs. *See Johnson*, 500 F.Supp.3d at 460.

For the reasons stated above, Plaintiffs' request for the Court to Order BPD to provide a Rule 30(b)(6) designee to testify as to topics five through fifteen is DENIED. Despite the informal nature of this letter, it is an ORDER of the Court and will be docketed accordingly.

Very truly yours,

A. David Copperthite
United States Magistrate Judge