IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALFRED CHESTNUT, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) 20-CV-02342-LKG |
| DONALD KINCAID, et al., | ) ) ) ) |
| Defendants. | ) ) |

**INDIVIDUAL DEFENDANTS' REPLY TO NONPARTY ANGELA MCKNIGHT'S OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO COMPEL**

Angela McKnight used her efforts to write a book as pretext to talk to witnesses who testified at Alvin Chestnut's criminal trial. ECF 151, Ex. 14, at 26-28; Ex. 8, at 66-68. During McKnight's deposition, Individual Defendants discovered that the book was not just a ruse and that she had written about a hundred pages of a chapter discussing her love story with Chestnut: a story that necessarily includes his conviction, incarceration, release (that she helped secure), and his early post-release experience. *See* ECF 151, Ex. 8, at 79-84. McKnight now claims that her writing is not relevant to any parties' claim or defenses. *See* ECF 162, at 4-5. She is mistaken and this Court should order that she produce it or conduct an *in camera* review of the writing over whether it holds relevance for this action.[1]

---

[1] If the Court has concerns about the timeliness of this motion to compel, on February 14, upon learning that McKnight had drafted a chapter about Chestnut in her book, Individual Defendants immediately renewed their request for compliance with their Subpoena issued on September 15, 2021. *See* ECF 151, Ex. 9. As a gesture of good faith, Individual Defendants issued a second subpoena that explicitly requested McKnight's writing about Chestnut and that had a response date before the close of discovery. ECF 151, Ex. 12. Following her objection on March 2 (ECF 151, Ex. 13), Individual Defendants sought to notify the Court of this dispute in their March 10 letter

**I.     McKnight's Chapter About Chestnut is Relevant to Individual Defendants' Defenses Concerning Plaintiffs' Assertions of Actual Innocence and Chestnut's Damages**

McKnight asserts that Individual Defendants presume the draft of her book discussed Chestnut's case and explains instead that her discussion of Chestnut was merely as part of their love story. ECF 162, at 4. But McKnight's reliance on part of her deposition testimony ignores the rest of her description. When asked if she talked about her investigative work in the Chestnut chapter, McKnight explained:

> No. It's more of our love story, you know. It's more of, you know, me reconnecting with my first love, okay, and *me trying to do something that I felt like I should have done a long time ago and actually being able to do it*. . . . it's moreso about faith . . . *God put it in my heart to do this, to help this*, you know, so that's it.

ECF 151, Ex. 8, at 82-83 (emphasis added).

McKnight's view that the Chestnut chapter is "more of [a] love story" or a profession of faith than a discussion of her investigation does not negate the relevance of any investigative efforts she felt she should have done a long time ago or that God put in her heart.

As McKnight recounted during her deposition, the investigation she undertook included speaking with at least three individuals who are witnesses here. *See* ECF 151, Ex. 8, at 57-62; 66-77. Thus, memorialization of these conversations would bolster witness credibility or provide impeachment material. What is more, McKnight ignores that if she had produced the book chapter when Individual Defendants first requested it, they could have used it to refresh her recollection about her experiences documented in it.

---

requesting a discovery extension in part to resolve outstanding discovery issues. *See* ECF 141, at 2. Individual Defendants also tried to meet and confer with McKnight's counsel that did not occur until March 21. *See* ECF 151. Individual Defendants maintain that McKnight's chapter about Chestnut is responsive to their initial subpoena and that this motion does not conflict with the Court's extension of discovery to complete depositions. ECF 144.

Separate from her investigation, McKnight testified about trouble in her relationship with Chestnut, including physical violence and alcohol abuse. ECF 151, Ex. 8 at 23-30; 125-28. And she blamed issues in their relationship, at least in part, on the difficulty of Chestnut's transition from life in prison, likely in support of Chestnut's claim of emotional damages. ECF 151, Ex. 8, at 19. Because McKnight's book chapter about Chestnut holds impeachment or rehabilitation value for witnesses here, including McKnight, and information related to Chestnut's emotional damages, it is relevant to important issues of the case and this Court should compel her to produce it. *See Peters v. Balt. City Bd. of Sch. Comm'rs*, Civ. No. WMN-13-3114, 2014 WL 4187307, at *5 (D. Md. Aug. 21, 2014) (allowing discovery of relevant information including evidence relating to damages incurred, efforts to mitigate damages, and alleged emotional and mental anguish); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) (ordering production of impeachment evidence responsive to a specific discovery request).

## II.     The Writing Individual Defendants Seek is not Unreasonably Duplicative

According to McKnight, Individual Defendants' request is duplicative because the same information was available through McKnight's testimony at deposition and the testimony of other witnesses. ECF 162, at 7. But Rule 26(b)(1) does not require the Court to limit discovery if information is duplicative. The point of inquiry is whether "the discovery sought is *unreasonably* cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed.R.Civ.P. 26(b)(2)(C)(i) (emphasis added). The Court balances several factors in assessing whether documents sought will be produced including: "(1) whether the expense and/or burden associated with the discovery request is proportional to the benefits the information will provide in the case; and (2) 'the parties' resources and the importance of the discovery as related to the importance of the particular issues implicated by the discovery.'"

*Jardaneh v. Garland*, No. 8:18-cv-02415-PX, 2021 WL 4169600, at *15 (D. Md. Sept. 14, 2021) (quoting *Hall v. Sullivan*, 231 F.R.D. 468, 472 (D. Md. 2005)). As for subpoenas to third parties, this Court has explained that it conducts "a more demanding variant of the proportionality analysis" and that the ultimate question is "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient [of the third-party subpoena]." *Chestnut v. Kincaid*, Civ. No. LKG-20-2342 2022 WL 358170 (D. Md. Feb. 7, 2022).

      McKnight provided Individual Defendants no explanation about how electronic production of an electronically maintained document would be burdensome or expensive. *See* ECF 151, Ex. 13. Nor has she explained how production of the Chestnut chapter would be unreasonably duplicative beyond that she and other witnesses have been deposed. ECF 162, at 7-8. Indeed, under McKnight's approach, no third party would have to disclose subpoenaed documents if the third party were available for deposition. That McKnight misled Individual Defendants by producing documents without mentioning the book chapter should not excuse its production simply because she has already been deposed.

      Even so, McKnight's book chapter is not unreasonably duplicative. McKnight denied doing anything to prepare for her deposition. ECF 151, Ex. 8, at 12. And she did not specifically reference any of her deposition testimony as having come from her book. It is inconceivable that McKnight provided all the information in the 100-page chapter during her deposition. In fact, her own testimony suggests that her memory is not as comprehensive as her writing. For example, when asked what information Floueritta Hunter provided, McKnight responded "Oh, I can't – I mean, it was so much going on back then, I cannot tell you word for word what she said[.]" ECF 151, Ex. 8, at 69. McKnight then provided what information she could recall, limited to her first of "maybe two[,] [m]aybe three[]" conversations. ECF 151, Ex. 8, at 68-69. In fact, that McKnight

has already been deposed answers the question posed by Rule 26(b)(2)(C)(i): whether Individual Defendants could obtain the information from some other source. They could not. Because McKnight's chapter about Chestnut is not unreasonably duplicative of her deposition testimony, the Court should not order that McKnight need not produce it.

## Conclusion

The chapter that McKnight wrote about Chestnut is relevant to Plaintiffs' claims and Individual Defendants' defenses in this case. It does not take a leap of faith to see the relevance of a book chapter written by a witness about her relationship with one of the plaintiffs that was shaped by his incarceration and her efforts win his freedom, and the dissolution of their union following his release. Because the writing is relevant and McKnight articulated no other basis for her refusal to produce it, Individual Defendants' Motion to Compel should be granted. If the Court has concerns about whether the Chestnut chapter is relevant to the parties' claims and defenses, then Individual Defendants request that the Court conduct an *in camera* review of the writing.

DATED: April 20, 2022

Respectfully submitted,

 /s/ Michael Elliker
Sheneur Nathan, Bar No. 20707
Avi T. Kamionski, Bar No. 20703
Mayer Engelsberg, Bar No. 21105
Michael J. Elliker, Bar No. 20810
NATHAN & KAMIONSKI LLP
575 S. Charles Street Suite 402
Baltimore, MD 21201
(312) 612-1928
(312) 448-6099
snathan@nklawllp.com
akamionski@nklawllp.com
mengelsberg@nklawllp.com
melliker@nklawllp.com

*Attorneys for Donald Kincaid, Bryn Joyce, And John Barrick*

## **CERTIFICATE OF SERVICE**

I certify that on April 20, 2022, I caused the document above to be electronically filed with the Court's CM/ECF system and served on all counsel of record.

    /s/ Michael Elliker