**NATHAN & KAMIONSKI LLP**

MAYER ENGELSBERG
Associate Attorney
mengelsberg@nklawllp.com
T: (410) 885-4349
F: (312) 448-6099

---

<u>**VIA ELECTRONIC COURT FILING**</u>                                                           June 22, 2022

The Hon. A. David Copperthite
United States District Court for the District of Maryland

        Re: *Alfred Chestnut, et al. v. Donald Kincaid, et al.*, Civil Action No. LKG-20-2342

Dear Judge Copperthite,

        Pursuant to Fed. R. Civ. P. 35, Individual Defendants ("Defendants") respectfully request that the Court order Plaintiffs to submit to mental examinations to assess their claims that they suffer from ███████████████████, ███████████████████, and other emotional damages. Plaintiffs intend to call expert witness, Susan E. Rushing MD, JD, to support these claims. In order to reasonably respond to these allegations, Defendants need their own expert to examine Plaintiffs to properly evaluate their alleged diagnoses.

        On June 3, 2022, Plaintiffs disclosed expert reports, including three reports by Dr. Rushing, that evaluated the effects of 36-years of incarceration on Plaintiffs' mental health. Dr. Rushing's reports describe that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[1] On June 8, 2022, Defendants requested that Plaintiffs "submit to a mental examination by an expert psychologist retained by Defendants." *See* Ex. 1 at 13. During a meet and confer on June 13, 2022, and in subsequent correspondence, Plaintiffs objected claiming that Defendants' request lacks good cause.[2] *See id.* at 8, 3. According to Plaintiffs, their treatment records, deposition testimony, and Dr. Rushing's reports provide "more than enough information for [] Defendants' experts to evaluate [their] mental health and Dr. Rushing's [conclusions]..." *Id.* at 3.

        But Plaintiffs' objections defy the very principles of equity that the drafters of Rule 35 sought to remedy and their arguments are unsupported by the law. Rule 35(a)(1) provides that the court "may order a party whose mental or physical condition... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."

> Like all discovery rules, Rule 35 is to be accorded a broad and liberal treatment in order to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark. But given the potentially serious invasion of privacy called for by a mental or physical examination, Rule 35 includes express limitations on compelling an individual to submit to such examinations for discovery purposes. The party requesting

---

[1] Defendants can produce Dr. Rushing's confidential expert reports at the Court's request.

[2] Plaintiffs' later timeliness objection is unsupported by the law. Ex. 1 at 3. Defendants requested exams five days after Plaintiffs disclosed expert reports containing formal diagnoses under the Diagnostic and Statistical Manual 5 and a month before Defendants' expert disclosures were due. *See Eller v. Prince George's Cnty. Pub. Sch.*, No. CV TDC-18-3649, 2019 WL 13108488, at *3 (D. Md. Oct. 18, 2019) ("Defendants sought [Plaintiff's] consent to undergo the examination less than two weeks after receiving her expert report and more than two weeks before their expert disclosure deadline… Because Defendants were diligent [] there is good cause to extend the scheduling order."); *see also Walti v. Toys R Us*, No. 10 C 2116, 2011 WL 3876907, at *4 n.5 (N.D. Ill. Aug. 31, 2011), objections overruled, No. 10 CV 2116, 2011 WL 4715198 (N.D. Ill. Oct. 6, 2011) (collecting cases); Am. Sched. Order, ECF 171.

an order to compel a Rule 35 examination must demonstrate that (1) the physical or mental condition of the person to be examined is genuinely in controversy and (2) there is good cause to order the particular examination requested.

*Rich v. Diana Consulting Servs. LLC*, No. CV SAG-21-1670, 2022 WL 1289663, at *3 (D. Md. Apr. 29, 2022) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15, 118 (1964)) (citations omitted). Based on Plaintiffs' representations at the meet and confer and in subsequent emails, there seems to be no dispute that Plaintiffs' mental conditions are genuinely in controversy.[3]

"The assessment of good cause for a particular examination is intensely fact–specific and varies from case to case. Good cause has been found when an examination is needed to defend against the claim of an opposing party and where the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries." *Id*. (citations omitted).

Plaintiffs' expert alleges that ███████████████████████████████████████████ These are formal diagnoses under the Diagnostic and Statistical Manual ("DSM") 5 which, by definition, can only be determined by the knowledge, skills, and observations of a trained professional – not a lay person. *See id*. Plaintiffs' argument that submitting to examinations would be traumatic because of their experiences is tautological. By that logic, no Plaintiff could ever be examined about conditions allegedly caused by past traumas. Moreover, Plaintiffs' argument is belied by the fact that they voluntarily submitted to lengthy examinations by their own expert. This, in turn, further demonstrates that an examination by Defendants' expert is warranted to conduct a proper evaluation. More fundamentally, Defendants must be afforded the same opportunities as Plaintiffs to ensure a level playing field. *See Zumstein v. Bos. Sci. Corp.*, No. 2:13-CV-02344, 2014 WL 7236406, at *1 (S.D.W. Va. Dec. 17, 2014) ("Plaintiff has also been examined by her own expert witness specifically to provide opinions about the nature, extent, and cause of her alleged injuries, supplying an additional ground for Defendant to obtain the opinion of its expert based upon his personal examination of Plaintiff. Without the opportunity to conduct an independent medical examination, Defendant would be forced to offer a defense limited to the mere cross-examining of evaluations offered by Plaintiff's experts. Clearly, the drafters of Rule 35 sought to remedy such an inequity.").

---

[3] To determine whether an allegation of emotional distress puts a plaintiff's mental condition "in controversy," courts look to whether in addition to a claim for emotional distress damages, one or more of the following factors is also present:

(1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder; (3) plaintiff has claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of her claim for emotional distress damages; and (5) plaintiff concedes that her mental condition is "in controversy" within the meaning of [Rule] 35(a).

*Ricks v. Abbott Labs.*, 198 F.R.D. 647, 648-49 (D.Md. 2001) (quoting *Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998)); *see also, e.g.*, *J.F. v. Correct Care Sols., LLC*, No. 16-cv-2177-GJH, 2018 WL 1276801, at *2 (D. Md. Mar. 9, 2018). Plaintiffs satisfy every factor. (1) Plaintiffs specifically allege Intentional Infliction of Emotional Distress. Am Compl., ECF 59, at 35. (2) ███████████████████████████████████████████ (3) Plaintiffs allege unusually severe damages. ECF 59 at ¶18 ("From their teenage years until their fifties, [Plaintiffs] endured unimaginable pain while incarcerated: the torture of solitary confinement, physical violence at the hands of fellow inmates, and the horror of waking up each morning, separated from society and their loved ones, to face the injustice of wrongful conviction."). (4) Plaintiffs disclosed Dr. Rushing as an expert witness for their emotional distress claims. (5) Plaintiffs did not object to this issue.

Plaintiffs' objection that an examination is unnecessary in light of the available record is blatantly unfair. *Pauley v. U. S.*, No. 3:12-CV-08558, 2013 WL 6195730, at *2 (S.D.W. Va. Nov. 27, 2013). Defendants should not be forced to rely exclusively on Plaintiffs' medical records to contest the nature and extent of their claimed injuries. *Id.* (citing *Funez v. Wal–Mart Stores East, LP*, No. 1:12–cv–0259–WSD, 2013 WL 123566, at *7 (N.D. Ga. Jan. 9, 2013) (collecting cases)); *see also Roberson v. Bair*, 242 F.R.D. 130, 137 (D.D.C. 2007) ("Defendant has the right to challenge Plaintiff's claim that she was harmed and that Defendant was the source of that harm, and to secure from whatever source available information that will challenge that claim."). "Moreover, Defendant[s] should be permitted to counter Plaintiff[s'] expert testimony by introducing opinions of its own expert that are based, in part, on evidence obtained through the expert's personal examination of [the] Plaintiff[s]." *Id.* (citing *Simon v. Bellsouth Advert. and Pub. Corp.*, No. 3:09–CV–177–RJC–DCK, 2010 WL 1418322, at *4 (W.D.N.C. Apr. 1, 2010) (The need to counter plaintiff's expert constitutes good cause for an independent medical examination)). "While Defendant[s'] expert can certainly review the voluminous documentation detailing [Plaintiffs'] care and treatment, his opinions will undoubtedly carry more weight if they are 'based on a personal examination, rather than on secondhand information.'"[4] *Id.* (citing *Bennett v. White Labs., Inc.*, 841 F.Supp. 1155, 1158 (M.D. Fla. 1993) ("When it comes to the credibility of a medical expert, there are few, if any, acceptable substitutes for a personal physical examination.")).

Finally, Defendants acknowledge Judge Chasanow's recent order denying, without prejudice, a Rule 35 examination, where medical records had not yet been produced and an examination was thus premature. *See Nicholson v. Balitmore Police Dep't*, No. CV DKC 20-3146, 2022 WL 1104575, at *3 (D. Md. Apr. 13, 2022). *Nicholson* is not applicable to this case because Nicholson withdrew the expert testimony he offered in his case, thus removing concerns of an uneven playing field. *Id.* More importantly, Defendants are indeed well prepared to respond to Judge Chasanow's call "to explain in clear and specific terms what information necessary to [their] defense [they] still require and why it can only be obtained by an expert examination." *Id.*

Relying on another experts' testing is not the standard of practice in the field of forensic psychology. An examiner must be able to choose the psychological tests to administer to a client to make an accurate assessment. In addition, specific interview information is critical to attribute any mental health issues and claims of emotional distress to specific past traumas or events with any degree of medical certainty. An examination is necessary to complete a comprehensive clinical interview along with the appropriate psychological testing for this case, including symptom validity testing to assess the veracity of Plaintiffs' self-report.[5]

Accordingly, Defendants have demonstrated good cause and respectfully request that the Court order Plaintiffs to submit to mental examinations to be performed by Steven Gaskell, Psy.D., at a date and time to be agreed upon by the Parties.

---

[4] In fact, Plaintiffs' contention that they have produced treatment records is disingenuous. Stewart did not produce any treatment records, and Chestnut's records are extremely limited. Only Watkins produced substantial therapy treatment notes to date.

[5] The tests the examiner intends to administer include: Beck Depression Inventory – to assess the level and severity of depressive symptoms; Beck Anxiety Inventory – to assess level and severity of anxiety; MMPI-3 – the most widely used psychological test, to assess approach to the testing and to assess for general psychopathology; TSI-2 – to assess for possible symptoms of Post-Traumatic Stress Disorder and veracity of symptom presentation; and SIMS – a symptom validity test to assess for the possible exaggeration or feigning of symptoms.

Respectfully,

/s/ Mayer Engelsberg
Avi T. Kamionski, Bar No. 20703
Shneur Nathan, Bar No. 20707
Mayer Engelsberg, Bar No. 21105
Michael J. Elliker, Bar No. 20810
Nathan & Kamionski LLP
575 S. Charles Street Suite 402
Baltimore, MD 21201
T: (312) 612-1928
snathan@nklawllp.com
akamionski@nklawllp.com
mengelsberg@nklawllp.com
melliker@nklawllp.com

*Attorneys for Individual Defendants*