## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALFRED CHESTNUT, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. LKG 20-2342 |
| | ) | |
| DONALD KINCAID, *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Individual Defendants Donald Kincaid and Bryn Joyce, by and through their undersigned

counsel, submit the below reply memorandum in support of their motion for summary judgment.

Dated: November 18, 2022

Respectfully submitted,

_____/s/_____

Avi T. Kamionski (Bar No. 20703)
akamionski@nklawllp.com
Shneur Nathan (Bar No. 20707)
snathan@nklawllp.com
Mayer Engelsberg (Bar No. 21105)
mengelsberg@nklawllp.com
Michael J. Elliker (Bar No. 20810)
melliker@nklawllp.com
Nathan & Kamionski LLP
575 S. Charles Street Suite 402
Baltimore, MD 21201
T: (312) 612-1928

*Attorneys for Individual Defendants*
*Donald Kincaid, Jr. & Bryn Joyce*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION…………..………………………………………………………..1

ARGUMENT……...…………………………………………………………………….3

   I.   Plaintiffs' Speculation that Officer Defendants Coerced Thomas's and Caldwell's Statements is Not Enough to Survive Summary Judgment……...…………………3

   II.   There was Overwhelming Probable Cause for Plaintiffs' Prosecution and No Material Facts Suggest Otherwise………………………….………………………………...5

   III.   No Material Facts Suggest that Officer Defendants Knowingly or Recklessly Created False Evidence or Made Material Misrepresentations or Omissions…………………7

       A.   Proving that Officer Defendants had Reason to Doubt Thomas's or Caldwell's Inculpatory Statements is Germaine to Plaintiffs' Fabrication Claim…..…...…7

       B.   Inaccuracies in the Warrant Affidavit Do Not Support Plaintiffs' Fabrication Claim Because They Were Unnecessary to the Finding of Probable Cause...11

   IV.   No Material Facts Suggest that Officer Defendants Suppressed Brady Material in Bad Faith…………..………………………………………………………………12

       A.   Alderman's and Hunter's Statements Were Disclosed to the State's Attorney's Office and Inferences to the Contrary or that Officer Defendants Advanced Fabricated Statements are Impermissibly Speculative………….………...13

       B.   Hunter's and Alderman's Statements Were Not Material or Suppressed in Bad Faith…………………………………………………………………15

       C.   Even Assuming Witness Statements were Suppressed, the Statements Do Not Support Plaintiffs' *Brady* Claim Because the Information was not Solely with the State and Plaintiffs were on Notice to Look for it yet Failed to Exercise Reasonable Diligence…..……………………………………………...17

          a.   Bishop's and Capers's Statements Do Not Support Plaintiffs' *Brady* Claim………..………………………………………………....21

          b.   Hunter's and Alderman's Statements, if Material, Do Not Support Plaintiffs' *Brady* Claim……………………….……………………21

       D.   Whether the State Should have Discovered the Alleged Coercion is Important to the Reasonableness of an Inference of Bad-Faith Suppression…………….23

V.  No Material Facts Suggest that Officer Defendants Intended to Cover-Up a Constitutional Violation Through Their Investigation……………………….…..24

VI. Plaintiffs' Failure to Intervene Claim Fails Because § 1983 Does Not Support Claims of Vicarious Liability…………………………………………………...………26

VII. Plaintiffs' Intentional Infliction of Emotional Distress Claim Fails Because Officer Defendants' Actions did not go Beyond All Possible Bounds of Decency…...……27

VIII. Officer Defendants are Entitled to Qualified Immunity for All of Plaintiffs' Claims……………………………………………………...…………………27

CONCLUSION………………………………………………………………………..28

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................ 15

*Arsham v. Mayor & City Council of Balt.*,
85 F. Supp. 3d 841 (D. Md. 2015) .................................................................. 27

*Ashcroft v. Iqbal*,
556 U.S. 622 (2009) ........................................................................................ 26

*Baker v. McCollan*,
443 U.S. 137 (1979) ........................................................................................ 25

*Banks v. Dretke*,
540 U.S. 668 (2004) ........................................................................................ 20

*Beale v. Hardy*,
769 F.2d 213 (4th Cir. 1985) ........................................................................ 3, 14

*Beauchamp v. City of Noblesville, Inc.*,
320 F.3d 733 (7th Cir. 2003) .......................................................................... 12

*Blankenship v. United States*,
No. 5:18-cv-00591 2020 WL 247313 (S.D.W.V. Jan. 15, 2020) .................. 18, 19

*Burgess v. Balt. Police Dep't*,
No. RDB-15-0834, 2016 WL 795975 (D. Md. Mar. 1, 2016) ................... 21, 22, 28

*Cahaly v. Larosa*,
796 F.3d 399 (4th Cir. 2015) ............................................................................ 6

*Clawson v. FedEx Ground Package Sys, Inc.*,
451 F. Supp. 2d 731 (D. Md. 2006) ................................................................ 25

*Coleman v. City of Peoria*,
925 F.3d 336 (7th Cir. 2019) ............................................................................ 8

*D'Ambrosia v. Mariono*,
747 F.3d 378 (6th Cir. 2014) .......................................................................... 13

*DeShaney v. Winnebago Cnty. Dept. of Soc. Services*,
489 U.S. 189 (1989) ........................................................................................ 26

*District of Columbia v. Wesby*,
138 S. Ct. 577 (2018) ................................................................................... 5, 12

*Franks v. Delaware*,
438 U.S. 154 (1978) ..................................................................................... 6, 11

*Fridley v. Horrighs*,
291 F.3d 867 (6th Cir. 2002) ............................................................................ 7

*Gilliam v. Sealy*,
932 F.3d 216 (4th Cir. 2019) ................................................................... passim

*Halsey v. Pfeiffer*,
   750 F.3d 273 (3d Cir. 2014)................................................................. 4

*Harris v. Jones*,
   281 Md. 560 (1977)........................................................................... 27

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ........................................................................... 2

*Hoke v. Netherland*,
   92 F.3d 1350 (4th Cir. 1996)................................................. 18, 19, 22

*Holland v. City of Chicago*,
   643 F.3d 248 (7th Cir. 2011)............................................................ 23

*Howard v. City of Durham*,
   487 F. Supp. 3d 377 (M.D.N.C. 2020)......................................... 4, 7, 8

*Howard v. Dowdy*,
   No. 17cv477, 2022 WL 1720156 (M.D.N.C. May 27, 2022)............. 9, 10

*Humbert v. Mayor and City Council of Baltimore City*,
   866 F.3d 546 (4th Cir. 2017)............................................................. 7

*Hyatt v. Miller*,
   No. 19-cv-00250-MR-WCM, 2021 WL 535856 (W.D.N.C. Feb. 12, 2021)............................ 7

*Illinois v. Gates*,
   462 U.S. 213 (1983) ........................................................................... 5

*Jackson v. City of Cleveland*,
   925 F.3d 793 (6th Cir. 2019)............................................................. 9

*Jean v. Collins*,
   221 F.3d 656, 660 (4th Cir. 2000)..................................................... 13

*Johnson v. BPD*,
   No. 1:19-cv-00698-ELH, 2022 WL 9976525 (D. Md. Oct. 14, 2022) ..................... 5, 7, 12, 16

*Jones v. United Health Grp.*,
   Civ. No. JKB-17-3500 2019 WL 3037854 (D. Md. July 11, 2019) ..................... 3, 14

*June v. Thomasson*,
   No. GLR-14-2450 2017 WL 3642944 (D. Md. Aug. 24, 2017) ............................ 25

*Juniper v. Zook*,
   876 F.3d 551 (4th Cir. 2017)............................................................ 16

*Kyles v. Whitley*,
   514 U.S. 419 (1995) ......................................................................... 23

*Loc. Union 7107 v. Clinchfield Coal Co.*,
   124 F.3d 639 (4th Cir. 1997)............................................................ 14

*Lovitt v. True*,
   403 F.3d 171 (4th Cir. 2005)............................................................ 19

*Lugo v. Munoz*,
  682 F.2d 7 (1st Cir. 1982) ................................................................. 18

*Massey v. Ojaniit*,
  759 F.3d 343 (4th Cir. 2014)................................................. 8, 10, 12

*McPherson v. Baltimore Police Dep't*,
  494 F. Supp. 3d 269 (D. Md. 2020) ..................................................... 9

*Miller v. Prince George's Cnty., Md.*,
  475 F.3d 621 (4th Cir. 2007)........................................................ 11, 12

*Monell v. New York City Dep't of Soc. Services*,
  436 U.S. 658 (1978) ............................................................................ 26

*Mwangangi v. Nielsen*,
  48 F.4th 816 (7th Cir. 2022)................................................................ 26

*Osborne v. Georgiades*,
  Civ. No. RDB-14-182, 2015 WL 6447503 (D. Md. Oct. 23, 2015) ..... 9

*Petty v. City of Chicago*,
  754 F.3d 416 (7th Cir. 2014).............................................................. 11

*Randall v. Prince George's Cnty.*,
  302 F.3d 188 (4th Cir. 2002).............................................................. 26

*Ray Communications, Inc. v. Clear Channel Communications, Inc.*,
  673 F.3d 294 (4th Cir. 2012).............................................................. 17

*Repass v. Travelers Cas. & Sur. Co. of Am.*,
  770 F. Supp. 2d 751 (D. Md. 2011) .................................................... 27

*Sattler v. Johnson*,
  857 F.2d 224 (4th Cir. 1988).............................................................. 25

*Stanton v. Sims*,
  134 S.Ct. 3 (2013) .............................................................................. 28

*Stevenson v. City of Seat Pleasant*,
  743 F.3d 411 (4th Cir. 2014).............................................................. 26

*Stockton v. Murray*,
  41 F.3d 920 (4th Cir. 1994).......................................................... 17, 18

*United States v. Bagley*,
  473 U.S. 667 (1985) ............................................................................ 17

*United States v. Blankenship*,
  19 F.4th 685 (4th Cir. 2021)......................................................... 19, 20

*United States v. Bosyk*,
  933 F.3d 319 (4th Cir. 2019)............................................................ 5, 12

*United States v. Davis*,
  787 F.2d 1501 (11th Cir. 1986)................................................ 19, 20, 21

*United States v. Foster*,
    874 F.2d 491 (8th Cir. 1988) ............................................................................... 23

*United States v. Grossman*,
    843 F.2d 78 (2d Cir. 1988) .................................................................................... 18

*United States v. Higgs*,
    663 F.3d 726 (4th Cir. 2011) ............................................................................... 18

*United States v. Johnson*,
    No. 20-4616 2022 WL 989353 (4th Cir. 2022) ...................................................... 18

*United States v. Ortiz*,
    669 F.3d 439 (4th Cir. 2011) ................................................................................. 5

*United States v. Prior*,
    546 F.2d 1254 (5th Cir. 1977) .............................................................................. 17

*United States v. Robinson*,
    627 F.3d 941 (4th Cir. 2010) ............................................................................... 23

*United States v. Wilson*,
    901 F.2d 378 (4th Cir. 1990) ................................................................... 18, 19, 20

*Wilson v. Russo*,
    212 F.3d 781 (3d Cir. 2000) ................................................................................. 12

**Statutes**

MD. CODE ANN., CRIM. PROC. § 2-202(c) ..................................................................... 12

## INTRODUCTION

The question at issue in Donald Kincaid and Bryan Joyce's ("Officer Defendants") summary judgment motion is not whether Plaintiffs are factually guilty or whether the multiple eyewitness accounts that convinced a Baltimore City jury of their guilt are factually true. The relevant question is whether Plaintiffs can point to nonspeculative evidence that Officer Defendants *knowingly* fabricated false eyewitness accounts, that they withheld material exculpatory or impeachment evidence in bad faith, or that they prosecuted Plaintiffs without probable cause. The answer, as explained in Officer Defendants' Motion and below, is a resounding no.

It is immaterial that witnesses Bishop and Capers now claim that their prior sworn testimony about Plaintiffs' guilt were lies. Officer Defendants believed that the information they relied on to arrest Plaintiffs was truthful and dependable. The undisputed evidence shows that the Officer Defendants engaged in a good-faith investigation that uncovered multiple, reasonably consistent witness accounts that Plaintiffs participated in the shooting of Dewitt Duckett at Harlem Park Junior High School when he was robbed of his Georgetown jacket.

Indeed, Thomas's and Caldwell's accounts alone gave the Officer Defendants probable cause to arrest the Plaintiffs. *See* ECF 196-1 at 7-8. Their eyewitness accounts were corroborated by the fact that teacher Shirley Woodard said that she kicked Plaintiffs out of her classroom minutes before the shooting. *See* ECF 196-1 at 5; ECF 196-16 at 34:7-35:4; 155:6-157:8; ECF 196-21 at 4:12-22; 5:23-6:4; 15:4-6; 18:1-19; 104:2-5; 108:17-111:19. The probable cause was corroborated even more by Plaintiffs' admissions that they were inside the school even though they were unauthorized to be there. *See* ECF 196-1 at 6. And probable cause was further bolstered by Plaintiffs' inconsistent alibis and their admissions that one among them said that they were at

the school to "get coats." *See* ECF 196-1 at 5-6; ECF 196-18 at HP3_LI_MAIP 9932; HP3_LI_MAIP 10058.

Based on these undisputed facts, probable cause unquestionably existed to arrest Plaintiffs, notwithstanding Bishop's and Capers's present-day claims of coercion. Given the overwhelming evidence supporting probable cause, Officer Defendants also could not have known whether the accounts of Bishop and Capers were ultimately inaccurate. Thus, Plaintiffs' malicious prosecution and fabrication claims must be dismissed.

As for Plaintiffs' Brady claims, it is beyond dispute that Officer Defendants disclosed Hunter's and Alderman's statements to the State and that the State—not the Officer Defendants— kept them from Plaintiffs' criminal defense counsel. *See* ECF 196-1 at 10-11; ECF 196-14 at 10:12-14; 14:18-15:6. It is also beyond dispute that Capers and Bishop swore for the first time at their depositions that they were under duress when they made claims that inculpated Plaintiffs, after interviews with the CIU and Plaintiffs' release from prison.[1] ECF 196-1 at 15; 16. Plaintiffs now claim that Officer Defendants suppressed Capers's and Bishop's exculpatory oral statements that immediately preceded the inculpatory statements, even though Plaintiffs learned the substance of all the statements during a suppression hearing. *See* ECF 196-9 at 45:20-94:5; 134:11-173:11; ECF 196-14 at 110:12-122:14; 140:21-152:2. Given that the State possessed Hunter's and Alderman's statements and that Plaintiffs' criminal counsel failed to make obvious inquiry about

---

[1] Plaintiffs claim that Individual Defendants' attack of the CIU reinvestigation is a red herring because this case is not about the CIU's actions in 2019 but rather whether Plaintiffs' convictions were caused by violations of their civil rights. But the resolution of Plaintiffs' underlying criminal charges in their favor strikes at the very heart of their claims. But for the CIU's investigation, Plaintiffs' convictions would not have been vacated and they would lack standing to file suit. *See Heck v. Humphrey*, 512 U.S. 477 (1994). The details of the CIU's investigation are particularly relevant here because the purported civil rights violations on which Plaintiffs' claims are based were not discovered *before* the CIU's investigation.

why Capers and Bishop identified Plaintiffs after at first not cooperating on November 23, the purportedly suppressed materials do not support Plaintiffs' *Brady* claims nor inferences of bad-faith suppression of evidence.

Furthermore, because Plaintiffs' constitutional claims fail, there is no basis to infer that Officer Defendants conducted their investigation to cover up constitutional malfeasance or that their conduct was extreme and outrageous and intended to cause Plaintiffs emotional distress. Thus, Plaintiffs' failure to investigate claim and intentional infliction of emotional distress claim fails as well. Finally, because Plaintiffs failed to adduce any evidence that Kincaid and Joyce conspired to fabricate evidence to convict Plaintiffs or that they knew that the other was violating Plaintiffs' constitutional rights, Plaintiffs' failure to intervene claim fails. For these reasons, the Officer Defendants are entitled to summary judgment on all of Plaintiffs' claims.

## **ARGUMENT**

### I.     **Plaintiffs' Speculation that Officer Defendants Coerced Thomas's and Caldwell's Statements is Not Enough to Survive Summary Judgment**

Plaintiffs have no answer for the fact that John Caldwell and Yvette Thomas provided probable cause for Plaintiffs' arrests and prosecution. In hopes of avoiding summary judgment, Plaintiffs rely on rank speculation to suggest that a reasonable jury could find that Officer Defendants coerced Thomas and Caldwell or that their statements are otherwise unreliable. These inferences are essential to Plaintiffs' malicious prosecution, fabrication of evidence, and failure to intervene claims to survive summary judgment. But as rank speculation, Plaintiffs' suggested inferences deserve no weight. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) ("[t]he nonmoving party [] cannot create a genuine issue of material fact through mere speculation or building of one inference upon another"); s*ee also Jones v. United Health Grp.*, Civ. No. JKB-17-3500 2019 WL 3037854, *1 (D. Md. July 11, 2019) ("[t]he Court need not draw inferences in the

nonmoving party's favor where those inferences would be based only on speculation, rather than the factual record").

Simply put: Plaintiff's theory does not square with the evidence. Neither the CIU nor Plaintiffs developed any evidence suggesting that Caldwell's or Thomas's statements or testimony related to the Duckett murder investigation and Plaintiffs' criminal trial were coerced. To the contrary, the record is clear that they were not coerced. Thomas testified at her deposition that she was truthful and that no officer coerced her to testify as she did in 1983 and 1984. ECF No. 196-32 at 38:16-42:20; 46:14-105:5; 107:6-178:16. And during the CIU reinvestigation, Caldwell never claimed that anyone coerced him, instead stating that he identified Plaintiffs because they were the ones he saw kill Duckett. ECF No. 196-26 at NK DEF 20606-07.

Caldwell's second statement to the CIU—that he could not see faces during the murder—cannot serve as the basis for Plaintiffs to survive summary judgment because Caldwell gave no explanation about why his recollection of the events changed. Without an explanation for why his testimony may have changed, this Court cannot conclude that Caldwell's trial testimony was unreliable. *See Howard v. City of Durham*, 487 F. Supp. 3d 377, 406-07 (M.D.N.C. 2020), *appeal dismissed sub nom. Howard v. Dowdy*, No. 20-2114, 2021 WL 1529288 (4th Cir. Jan. 27, 2021). "To hold otherwise would undermine the sanctity of the oath and the trial process, thus permitting any witness who chooses subsequently to testify contrary to his or her sworn trial testimony to support a fabrication claim." *Id.* at 406.

Even if Caldwell and Thomas were mistaken, neither Plaintiffs nor the CIU developed evidence that Officer Defendants *knew* that their identifications were incorrect. Thus, the mistakes would not support Plaintiffs' claims. *See Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) ("[a] witness's misidentification should not be regarded as a fabrication in the absence of persuasive

evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith").

Plaintiffs' requested inference flouts Thomas's and Caldwell's sworn testimony and Thomas's persistence that she was not coerced. What is more, neither Caldwell nor Thomas have tried to distance themselves from their prior testimony. Because Plaintiffs' speculative inference is unsupported by any evidence, it cannot overcome Thomas's or Caldwell's sworn testimony identifying Plaintiffs as those who murdered Duckett. So too, the requested inference casts no doubt on the reasonableness of the Officer Defendants' belief in and reliance on Thomas's and Caldwell's statements and identifications of Plaintiffs as Duckett's assailants. Without the support of Plaintiffs' speculative inferences about the reliability of Thomas's and Caldwell's statements, and as explained below, their malicious prosecution, fabrication of evidence, and failure to intervene claims fail.

## II.     There Was Overwhelming Probable Cause for Plaintiffs' Prosecution and No Material Facts Suggest Otherwise

Lack of probable cause for Plaintiffs' arrests is vital to their malicious prosecution claim. *See Johnson v. BPD*, No. 1:19-cv-00698-ELH, 2022 WL 9976525, *60-61 (D. Md. Oct. 14, 2022). But probable cause is "'not a high bar.'" *United States v. Bosyk*, 933 F.3d 319, 315 (4th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). It requires less of a showing than the formal preponderance-of-the evidence standard. *United States v. Ortiz*, 669 F.3d 439, 444-45 (4th Cir. 2011).

For an arrest, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243-44, n.13 (1983); *see also Wesby*, 138 S. Ct. at 586. Importantly, probable cause is determined based on the totality of the circumstances. *Gilliam v. Sealy*, 932 F.3d 216, 234 (4th Cir. 2019). An officer has

probable cause to arrest when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Cahaly v. Larosa*, 796 F.3d 399, 407 (4th Cir. 2015) (quotation omitted).

The investigation showed that Plaintiffs were at the scene. Plaintiffs even admitted to this in addition to admitting that one among them stated that they were at the school to "get coats"— precisely what was taken from Duckett during the robbery. *See* ECF No. 196-1 at 5-8; ECF No. 196-18 at HP3_LI_MAIP 9932; HP3_LI_MAIP 10058. Despite Plaintiffs' assertions that they were gone before the murder, Ms. Woodard stated that she had to chase them out of her classroom after they claimed to have left. *Compare* ECF No. 196-18 at HP3_LI_MAIP 10066-67; HP3_LI_MAIP 10056; HP3_LI_MAIP 9930; *with* ECF 196-21 at 4:12-22. Plaintiffs also provided inconsistent alibis. *Compare* ECF 196-18 at HP3_LI_MAIP 9930-31; HP3_LI_MAIP 10059-60; HP3_LI_MAIP 10067. And Thomas, Caldwell, Bishop, and Capers told detectives that Plaintiffs were the perpetrators of the crime. ECF No. 196-17 at NK DEF 7004; ECF No. 196-15 at 114:11-116:23; ECF No. 196-21 at 187:23-188:20; ECF No. 196-15 at 107:14-111:12; ECF No. 196-14 at 118:15-122:9; ECF No. 196-9 at 70:3-78:21. Thus, Plaintiffs' arrests were supported by a mountain of probable cause even if Capers's and Bishop's accounts are excluded.

Plaintiffs suggest that their arrests lacked probable cause because a warrant affidavit included assertions that Bishop, Capers, and Hunter identified Plaintiffs as those who killed Duckett. But Plaintiffs' suggestion is wide of the mark. Plaintiffs lack evidence that the misstatements were intentionally or recklessly made and that they were necessary to the finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Indeed, Kincaid testified that information about Ms. Hunter identifying photographs was not intentionally included in the

affidavit. ECF No. 196-35 at 48:4-49:5. Thomas's and Caldwell's statements undoubtedly established probable cause for Plaintiffs' arrests. To this end, in Maryland, an officer with probable cause to believe a suspect has committed a felony does not need a warrant to arrest the individual. *See Johnson v. BPD*, 2022 WL 9976525, at *61. Accordingly, for the reasons discussed above, Plaintiffs' arrests were valid even if the arrest warrants were not.

Plaintiffs' assertion that probable cause is "undermined" by purportedly suppressed exculpatory evidence similarly misses the mark. What matters is whether any information *negated* probable cause. *See, e.g.*, *Humbert v. Mayor and City Council of Baltimore City*, 866 F.3d 546, 556 (4th Cir. 2017). The only reasonable conclusion to draw from Caldwell's and Thomas's statements was that Plaintiffs killed Dewitt Duckett. *See Hyatt v. Miller*, No. 19-cv-00250-MR-WCM, 2021 WL 535856, at *7 (W.D.N.C. Feb. 12, 2021) (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) ("[i]n general, the existence of probable cause in a § 1983 action presents a jury question, *unless there is only one reasonable determination possible*") (emphasis added)). Because none of the allegedly suppressed evidence or supposedly unexplored leads negate Thomas's or Caldwell's statements and identifications of Plaintiffs, Plaintiffs' malicious prosecution claim must be dismissed.

### III. No Material Facts Suggest that Officer Defendants Knowingly or Recklessly Created False Evidence or Made Material Misrepresentations or Omissions

#### A. Proving that Officer Defendants had Reason to Doubt Thomas's or Caldwell's Inculpatory Statements is Germaine to Plaintiffs' Fabrication Claim

In their Opposition, Plaintiffs assert that it does not matter whether Officer Defendants believed Thomas's or Caldwell's assertions that Plaintiffs killed Duckett because a plaintiff may prove a fabrication claim by showing that an officer fabricated false evidence "deliberately or with reckless disregard for the truth." *Howard v. City of Durham*, 487 F. Supp. 3d at 404-05 (quoting

*Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014)); *but see Coleman v. City of Peoria*, 925 F.3d 336, 348 (7th Cir. 2019) (describing a fabrication claim as "a high bar to clear" because it requires proof not only that the officer defendants knew "with certainty" that the evidence was false but also that it was "manufactured"). But Plaintiffs ignore the role of an officer's understanding of the truth in the Fourth Circuit's analysis. Fabrication is shown where an investigator "entertained serious doubts as to the truth of [the] statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* at 405 (quoting *Massey*, 759 F.3d at 357). Thus, what information the officer had in forming his belief of the truth and accuracy of the information he reports is a critical point of reference from which the alleged fabrication must deviate.

Here, the information provided by Bishop and Capers was about the same event witnessed by Caldwell and Thomas. The truth, as Caldwell and Thomas told Kincaid, was that Plaintiffs murdered Duckett. Plaintiffs have no evidence that Kincaid "entertained serious doubts as to the truth of [the] statements or had obvious reasons to doubt the accuracy of the information he reported[.]" *Massey*, 759 F.3d at 357. Because Kincaid had no reason to doubt the truth of Caldwell's and Thomas's statements, there is no reasonable inference that Kincaid had reason to doubt the truth in Bishop's or Capers's 'coerced' accounts, or more importantly, that he presented Bishop's or Capers's statements in deliberate or reckless disregard of the truth.

Plaintiffs cite several cases to support their argument, but none resemble the unique circumstances here. Unlike in the cases cited by Plaintiffs, Capers's and Bishop's allegedly fabricated November 23 statements tracked and indeed were duplicative of Caldwell's and Thomas's eyewitness statements that inculpated Plaintiffs. The information that the Officer Defendants gathered from Thomas and Caldwell, and Caldwell's admission that on the day of the murder he lied about what he saw because he was scared, negated any reason for Officer

Defendants to entertain serious doubts in the accuracy of the information that they received from Capers and Bishop.

In *Gilliam*, the officers purportedly coerced a single witness who testified after the officers accused him of being part of a crime, despite having no evidence suggesting his culpability and after he passed a polygraph. 932 F.3d at 228. The lone witness later testified that one of the criminal defendants confessed to him the day after the murder and that they had conspired in front of him to rape the victim. *Id.* In *McPherson*, this Court denied the individual defendants' 12(b)(6) motion to dismiss, finding that the plaintiffs met the pleading standard for a fabrication claim that involved a statement from a single co-defendant. *McPherson v. Baltimore Police Dep't*, 494 F. Supp. 3d 269, 282 (D. Md. 2020). In *Jackson*, the fabrication claim was based on the alleged coercion of the lone eyewitness who identified the plaintiffs at their criminal trials. *Jackson v. City of Cleveland*, 925 F.3d 793, 803-05 (6th Cir. 2019). And in *Osborne*, the plaintiff's prosecution rested on the testimony of a victim who was purportedly induced to fabricate accusations despite the victim's repeated refutations of abuse and the lack of corroboration from any medical examination. *Osborne v. Georgiades*, Civ. No. RDB-14-182, 2015 WL 6447503, *4 (D. Md. Oct. 23, 2015). Here, the testimony of the eyewitnesses was corroborated by other eyewitness testimony.

Plaintiffs' reliance on *Howard v. Dowdy*, No. 17cv477, 2022 WL 1720156 (M.D.N.C. May 27, 2022) is similarly unconvincing. In that case, a witness who later claimed to have been unduly coerced by the officer defendant provided testimony which was essential to the prosecution. *Id.* at *5. During the § 1983 trial, the prosecutor testified that he could not imagine obtaining a conviction without the witness's testimony. *Id.* Indeed, the defendant officer believed she was the key witness because she verified that she was at the scene of the murder; the defendant officer also

acknowledged that a conviction would have been unlikely without the witness's testimony. *Id.* at *5-6.

Unlike this case, the information provided by the witness in *Howard v. Dowdy*, was unique to that witness. The statement that the officer defendant allegedly coerced from the witness was unsupported by other evidence that suggested the officer defendant could have believed that the witness's coerced statement was true. The witness was the only one who testified that she saw the murder. *Id.* at *6. In total, the state put on eight witnesses who all presented circumstantial inculpatory evidence while the plaintiff himself testified he was not involved in the homicide and put on witnesses who corroborated his testimony. *Id.* at *6.

Here, Caldwell and Thomas corroborated the information provided by Bishop and Capers. Thus, there is no reasonable inference that Kincaid presented Capers's or Bishop's statements, even if false, in knowing disregard of the truth. The truth, as Caldwell and Thomas had told him, was that Plaintiffs murdered Duckett. Plaintiffs developed no evidence that Kincaid "entertained serious doubts as to the truth of [the]statements or had obvious reasons to doubt the accuracy of the information he reported[.]" *Massey*, 759 F.3d at 357. Plaintiffs have no evidence that Kincaid doubted Thomas's or Caldwell's accounts such that he might have doubted Bishop's or Capers's assertions any more than any other uncooperative witness who decides to become cooperative.

Engaging in argumentative hyperbole, Plaintiffs suggest that Officer Defendants endorse the proposition that an officer has license to threaten others with violence and prosecution if they do not fall in line with the statement the officer chooses to credit. That is not so, nor do Officer Defendants make any sort of such a shameful suggestion. Officer Defendants merely suggest that aggressive interview techniques do not necessarily create a fabrication claim for a criminal defendant. As highlighted in Officer Defendants' Motion, "[c]oercively interrogating witnesses,

paying witnesses for testimony, and witness-shopping may be deplorable, and these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation when their fruits are introduced at trial," because "[e]vidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true." *Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014) (quotation omitted). Considering Caldwell's and Thomas's truthful accounts, Kincaid had no reason to entertain serious doubts about the veracity of Bishop's and Capers's statements that inculpated Plaintiffs and so their alleged coercion does not support Plaintiffs' fabrication claim.

As Plaintiffs developed no evidence that Officer Defendants doubted Thomas's or Caldwell's accounts, there is no reasonable inference that Kincaid's actions were in reckless disregard of the truth and Plaintiffs' fabrication claim fails.

### B. Inaccuracies in the Warrant Affidavit Do Not Support Plaintiffs' Fabrication Claim Because They Were Unnecessary to the Finding of Probable Cause

Plaintiffs suggest that a false statement in a police report or warrant affidavit gives rise to a claim of fabrication of evidence. But this assertion ignores the vital inclusion of the requisite state of mind in the Fourth Circuit's analysis. For an arrest pursuant to a warrant to be unreasonable, a plaintiff must show that the officer defendant "deliberately or with a reckless disregard for the truth made material false statements in his affidavit, . . . or omitted from the affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (citations omitted). Materiality is key: "the false statements or omissions must be . . . 'necessary to the finding of probable cause.'" *Id.* at 628 (quoting *Franks*, 438 U.S. at 156). If an officer's omissions are at issue, "'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would *negate* probable cause.'" *Id.*

11

at 627 (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)) (emphasis added).

"To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'" *Id.* at 628 (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). As discussed above, probable cause "'is not a high bar.'" *United States v. Bosyk*, 933 F.3d at 325 (quoting *Wesby*, 138 S.Ct. at 586). "The 'standard' of reasonable ground for belief of guilt requires less of a showing than does the formal preponderance-of-the evidence standard." *Johnson,* 2022 WL 9976525, at *61 (quotation omitted). It does not require proof beyond a reasonable doubt. *Id.*

That said, the court's review of an issuing judge's probable cause finding is typically limited to the four corners of the application document. *Johnson*, 2022 WL 9976525, at *61. "But, in Maryland, an officer who has probable cause to believe a suspect has committed a felony does not need a warrant to arrest the individual." *Id.*; *see* MD. CODE ANN., CRIM. PROC. § 2-202(c).

As discussed above, Plaintiffs' arrests were supported by probable cause. And none of Plaintiffs' proposed 'corrections' negate the probable cause determination that Plaintiffs attacked and killed Duckett supported by Thomas's and Caldwell's statements and identifications. Because the Officer Defendants had probable cause aside from the warrant affidavit, the purported fabrication of the affidavit did not cause Plaintiffs' convictions and Plaintiffs' fabrication claim based on the warrant application fails. *See Massey*, 759 F.3d at 354 ("Fabrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty . . . resulted from the fabrication").

IV.     **No Material Facts Suggest that Officer Defendants Suppressed Brady Material in Bad Faith**

### A. Alderman's and Hunter's Statements Were Disclosed to the State's Attorney's Office and Inferences to the Contrary or that Officer Defendants Advanced Fabricated Statements are Impermissibly Speculative

As highlighted in Officer Defendants' Motion, a police officer's duty to disclose *Brady* material ends with disclosure to the State. *See Jean v. Collins*, 221 F.3d 656, 660 (4th Cir. 2000); *D'Ambrosia v. Mariono*, 747 F.3d 378, 389 (6th Cir. 2014) ("police officers fulfill their *Brady* obligation as long as they inform the prosecutor about evidence that undermine[s] the state's preferred theory of the crime") (quotation omitted). Before Plaintiffs' criminal trial, Kincaid gave Hunter's and Alderman's statements to the prosecutor, as shown by the State's identification of the witnesses during discovery and in the prosecutor's proffer to the Court that he had statements from the State's witnesses and intended to disclose them the night before each witness was to testify. *See* Ex. 1, State's Disclosure, HP3_LI_MAIP 13393, 913395; ECF No. 196-14 at 10:12-14; 14:18-15:6; ECF No. 196-9 at 21:23-22:1; 119:13-120:4; 124:21-125:2. Still, Plaintiffs assert that it would be unreasonable for the Court to infer that Officer Defendants disclosed statements to prosecutors and that the State violated its ethical duties to disclose them to criminal defense counsel. Yet this is precisely what Plaintiffs' criminal counsel accused the State of having done before and during the trial. *See* ECF No. 196-14 at 17:16-18:21; ECF No. 196-9 at 109:10-111:118:1; ECF No. 196-15, 75:22-77:3.

Even before ASA Shoup announced that he did not intend to call Alderman, he represented that he had the statements of all the State's witnesses. Plaintiffs' criminal defense counsel fought for Shoup to disclose those statements, but he resisted until finally agreeing to produce the statements from the witnesses he intended to call to testify. *See* ECF No. 196-14 at 10:12-14; 14:18-15:6. Plaintiffs now demand that the Court infer that because the State's proffers about those statements suggested that Hunter's and Alderman's statements were useful to the prosecution, the

statements that the State had were not those of Hunter or Alderman. That is yet another inference that is mere speculation.

Ultimately, the State did not produce Hunter's or Alderman's statements and the State's Attorney's Office has been unable to produce its trial file. Thus, Plaintiffs' assertion that Hunter's or Alderman's statements would be exculpatory or were fabricated is speculative. Hunter now asserts that she saw Plaintiffs outside the school just after the murder, contrary to the Plaintiffs' assertions that they left the school grounds *before* the murder. *See* ECF No. 196-36 at 126:17-128:8; 167:8-168:4; 168:15-23. And Alderman now asserts that she may have identified Ransom Watkins in a photo book and told detectives she had once seen him with a gun. *See* ECF No. 196-37 at 149:3-14; 171:22-172:18. If any of this information were in either witnesses' statement, it would have been useful to the State. At bottom, Plaintiffs can only speculate why the State believed that the statements were inculpatory and did not include the information that Plaintiffs now claim was suppressed.

Plaintiffs similarly lack any reasonable basis to infer that Officer Defendants suppressed the 'true' statements given by Hunter and Alderman and instead advanced other statements from which the State made proffers. *See Loc. Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) ("[f]anciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment"); *see also Beale*, 769 F.2d at 14 ("[t]he nonmoving party [] cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another"); *Jones*, 2019 WL 3037854, at *1 ("[t]he Court need not draw inferences in the nonmoving party's favor where those inferences would be based only on speculation, rather than the factual record"). Plaintiffs claim that Officer Defendants suppressed Hunter's and Alderman's statements because Hunter and

Alderman now claim that they told the police they had not witnessed the murder yet the prosecutor's proffers were inculpatory. All the same, Plaintiffs' theory suffers from a significant flaw, Hunter and Alderman do not claim that they were coerced by any officer defendant or that they told Officer Defendants that Thomas did not witness the murder. *See* ECF No. 196-36 at 168:15-23; ECF No. 196-37 at 56:5-20; 62:7-63:6. Plaintiffs have no explanation for how Alderman or Hunter moved from purportedly giving exculpatory statements (if they were exculpatory) and impeachment material to having given statements on which the State felt compelled to identify them as witnesses whom they may call to testify.

Plaintiffs also claim that Kincaid's inability to recall whether he memorialized Hunter's statement in writing supports the denial of Officer Defendants' Motion to Suppress. But this mere scintilla of evidence cannot overcome the only reasonable inference from the prosecutor's proffers and Hunter's representation to criminal defense counsel: that Shoup had and refused to produce Hunter's and Alderman's statement and that they are now confused about what they told detectives and the State before trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("the mere scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

## B.  Hunter's and Alderman's Statements Were Not Material or Suppressed in Bad Faith

Plaintiffs claim that the fact that their criminal defense lawyers did not use Hunter's and Alderman's statements when cross-examining Thomas amounts to circumstantial evidence that Officer Defendants did not disclose those statements to the prosecutor. But the inference that Plaintiffs demand based on their counsels' decision not to ask questions explicitly rooted in the witness statements is more rank speculation and nothing else.

Even if the statements were not disclosed to the State, they were not material for *Brady* purposes. Plaintiffs' assertion ignores the weakness in the impeachment value that Hunter's and Alderman's statements would have provided during cross-examination—neither witness claimed to have told police that *Thomas* did not witness the murder or that Plaintiffs were not involved. *See* ECF No. 202-20; ECF No. 202-22. Thus, even if Alderman's and Hunter's statements expressed that they did not see the murder, there is no reasonable inference that such information would have impeached Thomas more effectively than the material with which Thomas was examined during trial. *See Juniper v. Zook*, 876 F.3d 551, 571 (4th Cir. 2017) (holding that suppressed evidence was material because it would have cast the impeached testimony of key witnesses "in a different light by seriously undermining" their testimony, not simply because it provided a new avenue for impeachment).

At most, Plaintiffs speculate that their defense attorneys might have produced more impeaching testimony from Thomas than they did at trial. Plaintiffs also speculate that the jury would have rejected Thomas's testimony upon learning that the girls Thomas claimed to have been with had not seen what Thomas saw. But even if Plaintiffs' criminal defense attorneys developed such testimony, no reasonable juror would have rejected Thomas's unwavering testimony that Plaintiffs, whom she recognized, confronted and shot Duckett. *See* ECF No. 196-1 at 9, 12-13.

In *Johnson*, this Court found that a purportedly suppressed police report was not material for *Brady* purposes. The report documented an eyewitness witness statement in which the witness named none of the assailants, though she later identified them at trial and testified that she knew them. 2022 WL 9976525, at *51-54. Just like the statement in the purportedly suppressed report in *Johnson*, Alderman and Hunter did not tell Officer Defendants that Plaintiffs were not at the scene and named no other suspect. *See Id.* at *6, *52-54; ECF No. 202-20; ECF No. 202-22.

Instead, Alderman and Hunter claim that they did not witness the murder. *See* ECF No. 202-20; ECF No. 202-22. Thus, their statements could have been used to point out Thomas's mistaken belief that Hunter and Alderman also witnessed the murder, but the impeachment value of this evidence is nil compared to the inconsistencies in Thomas's statements that were used to impeach her. *See* ECF No. 196-21 at 143:8-203:12; ECF No. 196-13 at 9:18-19:14. Thus, Hunter's and Alderman's statements were not material for purposes of *Brady*.

### C. Even Assuming Witness Statements were Suppressed, the Statements Do Not Support Plaintiffs' *Brady* Claim Because the Information was not Solely with the State and Plaintiffs were on Notice to Look for it yet Failed to Exercise Reasonable Diligence

Plaintiffs suggest that Individual Defendants' assertion that Plaintiffs' criminal defense counsel and the State failed to exercise reasonable diligence to uncover the wrongdoing cannot be resolved on summary judgment because it is an affirmative defense. This is untrue. In the Fourth Circuit, a movant seeking summary judgment on an affirmative defense can prevail if the movant "conclusively establish[es] all essential elements of that defense." *Ray Communications, Inc. v. Clear Channel Communications, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012).

The Supreme Court explained that the *Brady* rule was not intended "to displace the adversary system as the primary means by which truth is uncovered." *United States v. Bagley*, 473 U.S. 667, 675 (1985). It does not relieve the defendant of the obligation to investigate the case and prepare for trial. *See United States v. Prior*, 546 F.2d 1254, 1259 (5th Cir. 1977) ("[T]he government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself"); *cf. Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir. 1994) ("[i]f we were to hold that Stockton's claim amounts to a violation of *Brady*, we would create the risk that *Brady* could dull the adversarial process and render the prosecution the gatherer of all the evidence necessary to preparation of the defendant's case").

To that end, "the Fourth Circuit has firmly established that where the suppressed evidence is both available to the defendant and in a source where a reasonable defendant would look, the *Brady* rule does not apply." *Blankenship v. United States*, No. 5:18-cv-00591 2020 WL 247313, *8 (S.D.W.V. Jan. 15, 2020) (citing *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990)). The prosecution cannot be said to have suppressed evidence for *Brady* purposes when the information allegedly suppressed was available to the defendant through reasonable and diligent investigation. *See, e.g.*, *Hoke v. Netherland*, 92 F.3d 1350, 1355 (4th Cir. 1996), *cert. denied*, 519 U.S. 1048 (1996); *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988) (affirming no *Brady* violation when defendant "knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence"); *Lugo v. Munoz*, 682 F.2d 7, 9-10 (1st Cir. 1982) (holding that government has no *Brady* burden when allegedly suppressed facts are a matter of public record); *United States v. Johnson*, No. 20-4616 2022 WL 989353, *1 (4th Cir. 2022) (noting that Government did not have to provide appellant with cooperating witness' allegedly exculpatory testimony during a co-defendant's trial); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) (stating that there is also no *Brady* violation "if the evidence is available to the defense from other sources or the defense already possesses the evidence"); *cf. Stockton v. Murray*, 41 F.3d at 927 ("Aware of the existence of potentially exculpatory information, a defendant cannot sit idly by in the hopes that the prosecution will discover and disclose that information and, when the prosecution does not do so, seize upon the prosecution's conduct as grounds for habeas relief").

Particularly applicable here, courts have repeatedly found that there is no *Brady* violation where the exculpatory evidence lies with a witness who a criminal defendant would reasonably be expected to have interviewed in preparation for trial. *See, e.g.*, *U.S. v. Wilson*, 901 F.2d at 380-81 (finding no *Brady* violation where defendant could have interviewed a witness likely to have

exculpatory evidence before trial); *United States v. Davis*, 787 F.2d 1501 (11th Cir. 1986) (finding no *Brady* violation where defendant knew the identities of the government's witnesses before trial and had reasonable access to them so that they could have discovered inconsistent statements); *Blankenship v. United States*, 2020 WL 247313, at *10 ("[r]equiring a defendant to exercise reasonable diligence in interviewing potentially exculpatory witnesses does not constitute deprivation of a fair trial"); *Hoke*, 92 F.3d at 1355 (finding no *Brady* violation where police failed to disclose interview notes from three witnesses with potentially exculpatory information because defendant could have discovered the witnesses through reasonably diligent investigation); *Lovitt v. True*, 403 F.3d 171, 184 (4th Cir. 2005) (finding exception to *Brady* where defendant could have questioned the doctor about her opinion about the murder weapon's potential to inflict the victim's wounds).

In *United States v. Wilson*, the Fourth Circuit affirmed the district court's finding that there was no *Brady* violation even though statements that a witness may have made suggesting a set-up could have helped the appellant's case. 901 F.2d at 380-81. In conducting its review, the circuit court found that because appellant was free to question the witness in preparation for trial, there was no *Brady* violation. *Id.* at 381. As the court explained, "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *Id.* The Fourth Circuit did not evaluate whether the witness would have been cooperative; the very fact that the information was not solely in the State's possession was enough to fall outside the bounds of *Brady*.

In *United States v. Blankenship*, 19 F.4th 685, 693-94 (4th Cir. 2021), an appeal related to a federal habeas action, the Fourth Circuit evaluated whether *Wilson* remained good law

considering the Supreme Court's decision in *Banks v. Dretke*, 540 U.S. 668 (2004). In *Banks*, the Court held that there was a *Brady* violation when prosecutors (1) suppressed information that a key government witness had set up the defendant's arrest and served as a paid police informant, (2) failed to correct the witness's misleading trial testimony, and (3) misrepresented the witness's relationship to police in postconviction filings. 540 U.S. at 678-84. The State had argued to the post-conviction court that Plaintiff waived his claim by failing to use appropriate diligence in pursuing his *Brady* claim and faulted him for failing to discover the suppressed facts earlier. *Id.* at 695. But the Supreme Court rejected the argument, explaining that its "decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Id.* Ultimately, the Fourth Circuit held in *Blankenship* that the circumstances in *Banks* did not apply because the petitioner "would not have been required to scavenge, guess, search, or seek[]" and thus the allegedly suppressed material fell under the exception in *Wilson*. 19 F.4th at 694; *see Wilson*, 901 F.2d at 381. While "the government's need to comply with *Brady* is not obviated by the defendant's lack of due diligence[,]" "common sense should not be ignored" and a defendant "should not be allowed to turn a willfully blind eye to available evidence and thus set up a *Brady* claim[.]" *Id.*

In *United States v. Davis*, the appellants claimed that the State suppressed discrepancies in the testimony between state witnesses' grand jury testimony and their trial testimony. 787 F.2d at 1505. The district court did not find any *Brady* violations because the appellants knew the identities of the government's witnesses before trial and had reasonable access to them so that they could have discovered the inconsistent statements. *Id.* The court also found that all the witnesses were exhaustively cross-examined about the discrepancies and that appellants suffered no prejudice. *Id.*

In affirming the district court's rejection of Davis's argument, the Eleventh Circuit affirmed that *Brady* does not apply if the evidence is available to the defendant from other sources. *Id.*

### a. Bishop's and Capers's Statements Do Not Support Plaintiffs' *Brady* Claim

Plaintiffs' criminal defense counsel and the State knew that on the day of the murder, Capers and Bishop provided minimally inculpatory statements and later provided fully inculpatory statements during an interview in which they were not at first forthcoming. Thus, an inquiry about why Bishop and Capers moved from being uncooperative to being fully cooperative is an obvious point for any attorney to investigate.

Based on Bishop's and Capers's initial non-cooperation on November 23 along with their change of heart and identifications of Plaintiffs, which Plaintiffs' defense counsel brushed past during the suppression hearing, Plaintiffs had every reason to suspect that there was more to Bishop's and Capers's changes in narrative other than Kincaid's expression of frustration. Even so, Plaintiffs' criminal counsel failed to ask the most basic of questions to explore whether there was any coercion such as "Were you threatened?" or "Were you told what to say?" And Kincaid was never asked, "Did you threaten any of the witnesses or make them any promises?" or "Did you tell any of the witnesses what to say?" These would have been standard cross-examination questions of any witness who provided evolving statements. Because the allegedly suppressed information lay with sources outside the control of the State and Plaintiffs' criminal counsel were on notice to look for them, Bishop's and Caper's allegedly coerced and suppressed statements are not *Brady* material.

### b. Hunter's and Alderman's Statements, if Material, Do Not Support Plaintiffs' *Brady* Claim

Plaintiffs invoke *Burgess v. Balt. Police Dep't*, No. RDB-15-0834, 2016 WL 795975 (D. Md. Mar. 1, 2016) to suggest that because they were led to believe that Hunter had witnessed the

murder and Alderman had identified one of the Plaintiffs, criminal defense counsel could not have been reasonably expected to pursue the witnesses. But *Burgess* does not provide the support that Plaintiffs claim. In *Burgess*, the plaintiff did not allege that a *Brady* violation occurred. 2016 WL 795975, at *9. Instead, the plaintiff's claim was based on an officer defendant's representation that the purportedly suppressed witnesses saw nothing because they were asleep. *Id.* According to the plaintiff, his failure to interview the witnesses was therefore reasonable under the circumstances; he had been told the witnesses saw nothing. *Id.* Ultimately, Judge Bennett found that for purposes of the officer defendants' 12(b)(6) motion, it was unclear from the complaint's allegations whether the plaintiff failed to exercise reasonable diligence in obtaining the witness's testimony. *Id.*

Here, Plaintiffs' claim that they did not know the importance of Hunter or Alderman and their possible possession of exculpatory information conflicts with the information they learned during the suppression hearing. But both witnesses were identified by the State during discovery. *See* ECF No. 196-38; Ex. 1 at HP3_LI_MAIP 13393, 913395. Furthermore, Plaintiffs' criminal defense counsel learned from the State that Hunter had not identified anyone. *See* ECF 196-1 at 10. They also learned from Hunter herself that she had seen something during the murder and that she knew something about it. ECF 196-1 at 11. Thus, Plaintiffs' claim that they did not know of Hunter's or Alderman's importance to their defense is attributable to their own failure to investigate and not any alleged misconduct by Officer Defendants. At any rate, it is undisputed that both witnesses' statements were disclosed to the State and so do not support a *Brady* claim.

Plaintiffs' criticism of Individual Defendants' reliance on *Hoke v. Netherland*, 92 F.3d 1350, 1355 (4th Cir.), *cert. denied*, 519 U.S. 1048 (1996) is misplaced. According to Plaintiff, *Hoke* is too far afield to warrant consideration. Not so. In both *Hoke* and in this case, criminal defense attorneys faced circumstances lending themselves to the development of classic defense

arguments yet the attorneys did not undertake obvious inquiries. The same is true in *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011), in which the defendant failed to investigate whether a police officer unduly influenced the victim's identification. Plaintiffs accepted Bishop's and Capers's testimony during the suppression hearing without exploring how Kincaid's affect prompted their cooperation and now claim, despite their lack of diligence, that their rights under *Brady* were violated. This kind of argument is precisely what the *Hoke* and *Holland* courts rejected.

### D. Whether the State Should have Discovered the Alleged Coercion is Important to the Reasonableness of an Inference of Bad-Faith Suppression

Plaintiff's assertion—that considering the prosecutor's failure to uncover wrongdoing as blatant as the coercion claimed by Plaintiffs as support for Officer Defendants' affirmative defense would undermine the *Brady* rule and cases applying it—is exaggerated. Under *Kyles v. Whitley*, information known only to police investigators is chargeable to the State's disclosure obligation, which by itself encourages the State to delve into an initially uncooperative witnesses' change of heart, as suggested by Officer Defendants. *See* 514 U.S. 419, 437-38 (1995). Instead, Plaintiffs would roll-back a criminal defendant's obligation to undertake a reasonable investigation and blame the State for not disclosing any information that a criminal defendant, with the benefit of hindsight, decides may have been helpful in his unsuccessful defense.

While the State need not "conduct disciplinary inquiries into the general conduct of every officer working the case," *United States v. Robinson*, 627 F.3d 941, 952 (4th Cir. 2010), they do have a duty to ensure that they are not presenting unreliable evidence to the tribunal. *See, e.g.*, *United States v. Foster*, 874 F.2d 491, 495 (8th Cir. 1988) (noting a prosecutor's "overriding duty of candor to the court, and to seek justice rather than convictions"). When faced with Bishop's and Capers's changing stories, compounded with Bishop's statement during trial preparation that things did not happen as they were going over, *see* ECF No. 196-27, 245:18-246:15, a reasonable

prosecutor would have discovered whether the witnesses had been coerced, in anticipation that this would be classic cross-examination material the witness would face. Bishop and Capers provided no testimony that the State made any inquiry about whether they were coerced or threatened by Officer Defendants.

If the alleged coercion had occurred, the State and criminal defense counsel could easily have discovered it, particularly given the disclosure of Bishop's and Capers's November 23 change from being uncooperative to being completely cooperative. There is therefore no reasonable inference of bad-faith suppression by the Officer Defendants. Bad faith is also negated by the fact that based on Thomas's and Caldwell's statements, Officer Defendants had every reason to believe that Capers's and Bishop's inculpatory statements on November 23 were true. Without evidence of bad faith, Plaintiffs' *Brady* claims against Officer Defendants fail.

## V.    No Material Facts Suggest that Officer Defendants Intended to Cover-Up a Constitutional Violation Through Their Investigation

Plaintiffs assert that Officer Defendants' Motion did not address Plaintiffs' *Brady*-based due process claim that Defendants acted in bad faith by failing to conduct an adequate investigation. But the Fourth Circuit recognizes a bad-faith failure to investigate claim as a distinct due process claim, not as a *Brady*-based due process violation. *See Gilliam v. Sealey*, 932 F.3d at 237. According to the Fourth Circuit, the constitutional harm is in the bad-faith coverup of wrongful acts. *Id.* at 240-41. And despite Officer Defendants' arguments in their Motion to Dismiss (see ECF 22 at 15, section V(b)), Judge Bennett found in his Memorandum Opinion that "[Count III] is based on alleged violation of the principles laid down by the Court in the landmark case, *Brady v. Maryland*[.]" He did not analyze the claim as one asserting a bad-faith failure to investigate.

"The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys, Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). The rule addresses concerns about prejudice created by arguments raised without opportunity to respond. *Id.* "As a result, courts inside and outside the Fourth Circuit have considered issues that one party raises for the first time in a reply brief when the opposing party had an opportunity to either address the issue first or respond." *June v. Thomasson*, No. GLR-14-2450 2017 WL 3642944, at * 5 (D. Md. Aug. 24, 2017). In their opposition, Plaintiffs recognized and discussed several arguments they claim Officer Defendants waived, including the failure to investigate claim, and why they should survive summary judgment—so much so that they requested leave to exceed the page limit for their Opposition under the local rules. *See* ECF No. 199. For that reason, the Court should consider Officer Defendants' Reply arguments directed to each point Plaintiffs claim Officer Defendants waived.

Even though Plaintiffs couch their claims as a failure to investigate, the crux of their grievance is in the adequacy of the investigation and there is no independent constitutional right to the investigation of a third party. *See Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) (stating that there is no constitutional right "as a member of the public at large and as a victim to have the defendants criminally prosecuted"); *see also Baker v. McCollan*, 443 U.S. 137, 146 (1979) (stating that law enforcement have no constitutional duty to "investigate independently every claim of innocence" or "perform an error-free investigation"). But even if Plaintiffs' claim were based on an investigation used to cover-up wrongdoing, their claim is belied by the record.

In *Gilliam*, the Fourth Circuit explained that an inadequate investigation violates due process if it is conducted to shield earlier wrongful acts. 932 F.3d at 240-41. For the reasons already discussed in Officer Defendants' Memorandum in Support of their Motion for Summary Judgment

and above, Officer Defendants disclosed and the State was aware of the exculpatory and impeachment evidence that Plaintiffs claim Officer Defendants suppressed or failed to investigate. Because Plaintiffs lack any evidence that Officer Defendants failed to investigate in bad faith to shield wrongful acts, their claim must fail.

**VI.     Plaintiffs' Failure to Intervene Claim Fails Because § 1983 Does Not Support Claims of Vicarious Liability**

Plaintiffs did not plead a conspiracy claim against Kincaid and Joyce, yet they pursue a conspiracy-like claim by asserting bystander liability despite developing no evidence that the Officer Defendants communicated about any of the purported wrongdoing. The Fourth Circuit has explained that "bystander liability" is "'premised on a  law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them'" (*Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). But Plaintiffs' theory contradicts Supreme Court precedent.

The Supreme Court has consistently held that § 1983 does not support liability based on a theory of vicarious liability. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 622, 676-77 (2009); *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658 (1978); *see also DeShaney v. Winnebago Cnty. Dept. of Soc. Services*, 489 U.S. 189 (1989) (holding that the Constitution establishes negative liberties—the right to be free of official misconduct—rather than positive rights to have public employees protect private interests). And Judge Easterbrook of the Seventh Circuit recently explained in a concurring opinion that absent participation in a constitutional violation, what a Plaintiff seeks in a failure to intervene claim is vicarious liability. *See Mwangangi v. Nielsen*, 48 F.4th 816, 834-35 (7th Cir. 2022) (Easterbrook, J., concurring).

Plaintiffs base their claim against Joyce on his alleged failure to stop Kincaid from threatening Capers and base their claim against Kincaid on his alleged failure to stop an unknown

detective from directing Capers to identify Plaintiffs in a photo array. Because Plaintiffs' failure to intervene claims sound in vicarious liability, §1983 does not provide relief and their claims should be dismissed.

**VII.  Plaintiffs' Intentional Infliction of Emotional Distress Claim Fails Because Officer Defendants' Actions did not go Beyond All Possible Bounds of Decency**

Generally, claims for IIED are disfavored, difficult to establish and, as such, "rarely viable" under Maryland law. *Repass v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011). To prevail on a claim for IIED, a defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 850 (D. Md. 2015) (quoting *Harris v. Jones*, 281 Md. 560, 567 (1977)). A defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* Here, because Officer Defendants had probable cause to arrest Plaintiffs and substantial evidence suggests that Officer Defendants disclosed the allegedly suppressed evidence, their conduct could not have been "so extreme as to go beyond all possible bounds of decency or regarded as atrocious and intolerable in a civilized community. Thus, Plaintiffs' IIED claim must fail.

**VIII.  Officer Defendants are Entitled to Qualified Immunity for All of Plaintiffs' Claims**

If the Court finds that Plaintiffs' failure to intervene claims do not sound in vicarious liability, and assuming that Plaintiffs had a constitutional right to have an officer intervene if he recognizes a fellow officer's illegal act and had a reasonable opportunity to prevent the harm, then Officer Defendants are entitled to qualified immunity because in 1983 and 1984, the constitutional right was not clearly defined. Plaintiffs assert that *Gilliam*, 932 F.3d at 235, 241 established that

their constitutional rights were "clearly established" in 1983. But the plaintiff in *Gilliam* did not bring a failure to intervene claim and the Fourth Circuit did not opine whether a reasonable officer in 1983 would have known that he had a duty to intervene to prevent the violation of an individual's constitutional rights. In fact, none of the cited caselaw in Plaintiffs' Opposition supports that a reasonable officer in 1983 would have been aware of a constitutional duty to intervene. *See, e.g.*, *Burgess*, 2017 WL 4947004, *21 (denying summary judgment on § 1983 claims for failure to intervene in 1994 murder investigation without discussion of entitlement of qualified immunity over failure to intervene claim). Thus, Officer Defendants are entitled to qualified immunity over Plaintiffs' failure to intervene claim because a reasonable officer would not have been aware of that he was violating a clearly established constitutional right by failing to stop a fellow officer from committed a constitutional harm.

Regardless, "qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013) (cleaned up). Thus, under the circumstances above, if there are close questions about whether Plaintiffs' arrests were supported by probable cause, whether Thomas's and Caldwell's statements were dependable, or whether Officer Defendants knew that Capers's and Bishop's statements were false, Officer Defendants are entitled to qualified immunity to Plaintiffs' claims over their reasonable but mistaken judgment.

## **CONCLUSION**

For these reasons and the reasons in their Motion for Summary Judgment, this Honorable Court should grant Officer Defendants' motion and dismiss Plaintiffs' claims against them.

DATED: November 18, 2022

Respectfully submitted,

_____/s/_____

Avi T. Kamionski (Bar No. 20703)
akamionski@nklawllp.com
Shneur Nathan (Bar No. 20707)
snathan@nklawllp.com
Mayer Engelsberg (Bar No. 21105)
mengelsberg@nklawllp.com
Michael J. Elliker (Bar No. 20810)
melliker@nklawllp.com
Nathan & Kamionski LLP
575 S. Charles Street Suite 402
Baltimore, MD 21201
T: (312) 612-1928

*Attorneys for Individual Defendants
Donald Kincaid, Jr. & Bryn Joyce*

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that I have caused true and correct copies of the above Individual Defendants' Reply in Support of their Motion for Summary Judgment to be served on all counsel of record via the Court's CM/ECF system, in accordance with the rules of electronic filing of documents on this, 18th day of November, 2022.

_____*/s/*_____
Michael J. Elliker