IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| ALFRED CHESTNUT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD KINCAID, *et al.*,<br><br>Defendants. | Civil Action No. LKG-20-2342 |

**PLAINTIFFS' SURREPLY IN SUPPORT OF OPPOSITION TO
INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In their Reply, Defendants address multiple claims for the first time, offer new legal theories with newly cited cases, and make arguments they failed to develop in their opening brief. Because Defendants belatedly introduce these points in their Reply, the Court should consider their arguments waived. *See Grayson O Co. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). Nevertheless, in the interest of addressing the merits, Plaintiffs submit this Surreply to respond to Defendants' new arguments. Even if these arguments did not suffer from serious legal and factual flaws, Defendants do not engage with the evidence supporting Plaintiffs' claims, much less defeat those claims as a matter of law. A myriad of material factual disputes remain as to each of Plaintiffs' claims.

 **I. Defendants' new arguments regarding the fabrication claim misapply Fourth Circuit precedent.**

Having set forth the wrong legal standard in their opening brief, ECF No. 196-1 ("Defendants' Motion") 23–24, Defendants now concede that in the Fourth Circuit a plaintiff may prove a fabrication claim by showing that an officer fabricated evidence "deliberately or with reckless disregard for the truth." *See* ECF No. 207 ("Defs.' Reply") 7–8 (citing *Massey v. Ojaniit*,

759 F.3d 343, 357 (4th Cir. 2014)). Arguing under this standard for the first time in their Reply, Defendants seek to distinguish several cases, including *Gilliam v. Sealey*, 932 F.3d 216 (4th Cir. 2019), Defs.' Reply 9. But a straightforward application of that binding precedent compels denial of Defendants' Motion. If coercing a 16-year-old witness by falsely treating him as a suspect in the alleged crime permits a fabrication claim to proceed to trial, *Gilliam*, 932 F.3d at 240, so, too, does Defendants' worse misconduct—forcing two juveniles (Ron Bishop and Edward Capers) to falsely name Plaintiffs by threatening them with false criminal charges, separation from their families, and physical harm.

Defendants seek to avoid this inescapable conclusion by developing an unsound theory that, because they allegedly had no reason to doubt Yvette Thomas's and John Caldwell's statements, they had no reason to doubt the truth of Bishop's and Capers's statements and a jury could not find their conduct was reckless. But Defendants point to no authority supporting that one witness's statement can prove as a matter of law that a different witness's statement was not fabricated. To the contrary, as Defendants concede, the *Howard* court found that plaintiff proved police fabricated a witness statement even where *eight* other witnesses inculpated the plaintiff. *Howard v. Dowdy*, No. 1:17cv477, 2022 WL 1720156 (M.D.N.C. May 27, 2022).[1] *Howard* supports the sensible rule that police cannot fabricate even a single piece of evidence, *regardless* of what other inculpatory evidence (including witness statements) they may have.[2] The Court should decline Defendants' invitation to alter the Fourth Circuit's analysis of fabrication claims.

---

[1] *See also Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) ("[E]ven if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect.")
[2] Not only are Thomas's and Caldwell's statements irrelevant to the legal analysis, Defendants ignore the numerous factual disputes regarding those statements, including whether Defendants could reasonably rely on them. ECF No. 202 ("Pls.' Opp'n") 38–41.

Defendants strain to distinguish *Howard* by claiming that, in this case, the other witness testimony "corroborated the information provided by Bishop and Capers." Defs.' Reply 10. Defendants offer no legal authority recognizing their proposed "corroboration" rule. Moreover, their argument ignores that Bishop's and Capers's stories "corroborated" Thomas's because Defendants coerced them to adopt Thomas's narrative. *See, e.g.*, ECF 202-2, Capers Dep. 81:17–82:14 (Capers told Kincaid that Thomas could not have seen what she claimed to see, Kincaid then threatened to charge him and kept repeating Thomas's statement, and Capers felt forced to adopt Thomas's statement because he understood that "is what [Kincaid] wanted [him] to say"); *see also* Pls.' Opp'n 11–12. Defendants cannot force one witness to repeat a second witness's statement and then escape liability by claiming the two statements match.

Even if Defendants' arguments were legally sound and factually supported, they still do not address numerous genuine disputes of material fact. Defendants falsely claim Plaintiffs have "no evidence" that Defendants had reason to doubt Bishop's and Capers's statements. Defs.' Reply 10. Defendants *ignore* the ample material evidence contrary to their position, including that Bishop and Capers did not identify Plaintiffs in the days after the murder, Bishop told Kincaid that Plaintiffs were not involved in the murder, Bishop pleaded that he would not lie about the murder of his friend, Capers told Defendants that one person (whom he could not identify) committed the murder, Bishop and Capers resisted Defendants' supplied false narrative, and they adopted the false narrative only after being threatened. *See* Pls.' Opp'n 9–12, 17–21.

Defendants cannot demonstrate an absence of material and genuine disputes by ignoring this powerful evidence. If the direct evidence of Defendants' coercion of juveniles to repeat false statements (including a threat to put 14-year-old Bishop's head through a window) does not

3

reflect at least a "reckless disregard of the truth," it is hard to imagine how a fabrication claim based on coercion of a witness would ever survive summary judgment.

### II. Defendants misunderstand Plaintiffs' fabrication claim that Defendants falsified statements in the warrant affidavit.

Defendants' Motion did not address Plaintiffs' fabrication claim that Defendants falsified two statements regarding witness Floueritta Hunter in the arrest warrant affidavit. In their Reply, Defendants concede that the statements were false (which they seek to minimize as "[i]naccuracies"). *See* Defs.' Reply 11. For the first time, they argue that summary judgment is warranted on this claim because they had probable cause to arrest Plaintiffs.

Defendants have mixed up the claims. Their argument, and the case they cite, does not concern a fabrication claim under the Fourteenth Amendment, but rather a different claim (a malicious prosecution claim under the Fourth Amendment). *See* Defs.' Reply 11–12 (citing *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007)). In particular, Defendants conflate the probable cause inquiry used for malicious prosecution claims with the causation inquiry for fabrication claims. However, fabrication is an independent claim from malicious prosecution. *Massey*, 759 F.3d at 354 ("[B]y fabricating evidence for use in a criminal prosecution, a state actor would violate a defendant's [Fourteenth Amendment due process] rights regardless of whether or not the state actor violated other constitutional rights of the defendant." (alterations in original) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295–96 (3d Cir. 2014))); *Halsey*, 750 F.3d at 289 (explaining that probable cause is not a defense to fabrication claim).[3] Defendants do not address that, because the false statements were in the affidavit, a jury

---

[3] *See also Frost v. N.Y. City Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020) ("[U]nlike a malicious prosecution claim, a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff." (citation omitted)); *Webb*, 789 F.3d at 670.

could reasonably conclude the statements "influenced the decision to bring charges," (i.e., the causation element for a fabrication claim is satisfied). *See Washington v. Wilmore*, 407 F.3d 274, 283 (4th Cir. 2005). Because Defendants conduct the wrong analysis (i.e., a Fourth Amendment probable cause analysis for a Fourteenth Amendment fabrication claim), and thus offer no substantive response, those claims should proceed to trial.

### III. Defendants still offer no substantive response to Plaintiffs' failure to investigate claim.

Defendants concede that they did not address Plaintiffs' failure to investigate claim. Defs.' Reply 24–25. They offer no adequate explanation for this omission. *See id.* Thus, the Court should consider Defendants' argument waived, and the failure to investigate claim should proceed to trial. Pls.' Opp'n 22–23. In their Reply, Defendants still offer only the undeveloped and erroneous assertion that "Plaintiffs lack any evidence." Defs.' Reply at 25. *See Grayson*, 856 F.3d at 316 (undeveloped arguments are waived).

Even if considered, Defendants' refrain that "Plaintiffs lack any evidence" again ignores the ample evidence supporting the claim, *see* Pls.' Opp'n 6–8, including:

- Defendants failed to interview suspect Michael Willis despite multiple tips that he was the perpetrator of the murder (ECF No. 202-7, Kincaid Dep. 213:13–17; ECF No. 202-10, Nov. 23, 1983 Kincaid Report at NK DEF 006999);
- Defendants failed to interview Sharon Toon despite reports that she had material knowledge about the murder (ECF No. 202-15, Toon Dep. 26:13-27:16; ECF No. 202-10 at NK DEF 7000); and
- Defendants failed to corroborate the veracity of Yvette Thomas's statement regarding her purported identification of Plaintiffs (ECF No. 202-7, Kincaid Dep. 323:21–324:3)

*See Gilliam*, 932 F.3d at 240–41. In addition, the disputes of material fact regarding Plaintiffs' fabrication claims, *see* Pls.' Opp'n 16–22, and suppression claim, *id.* at 23–32, supply an independent basis to deny summary judgment on the failure to investigate claim. *See Howard*, 487 F. Supp. 3d at 426.

### IV. Defendants' new arguments regarding Floueritta Hunter's and Keyha Alderman's statements ignore the law.

Plaintiffs' suppression of evidence claim (Count III) is based on five discrete pieces of evidence (any one of which suffices to take the claim to a jury): (1) Hunter's statement to police that she did not witness the murder; (2) Alderman's written statement to police that she did not witness the murder; (3) Bishop's Nov. 23 Oral Statement; (4) Capers's Nov. 23 Oral Statement; and (5) the coercive tactics Defendants used to get juvenile witnesses to provide their false Nov. 23 written statements and trial testimony. In their Reply, Defendants raise several new arguments regarding the first two pieces of evidence (Hunter's and Alderman's statements).[4]

First, Defendants contend that they did not suppress Hunter's and Alderman's statements because "Hunter and Alderman do not claim that they were coerced by any officer defendant." Defs.' Reply 15. Defendants have confused the issue. The Hunter and Alderman statements are part of Plaintiffs' suppression claim, not the separate fabrication claim (i.e., that Defendants coerced certain witness statements). Any coercion is irrelevant to the suppression claim. Defendants' related assertion that it is only "rank speculation" that they suppressed the two witness statements, Defs.' Reply 15, again ignores the substantial evidence to the contrary (including testimony from one of Plaintiffs' criminal defense counsel) and inferences that multiple other courts have found reasonable under similar circumstances, *see* Pls.' Opp'n 25–27.

---

[4] Despite a second opportunity, Defendants again do not contest the three elements of Plaintiffs' suppression claim that Defendants concealed their coercive tactics (i.e., that evidence was suppressed, in bad faith, and material). As to Bishop's and Capers's Nov. 23 Oral Statements, Defendants now belatedly address only the second element in cursory fashion. Defs.' Reply 24. Defendants offer the curious argument that, because they had no reason to doubt Bishop's and Capers's inculpatory statements (which is wrong as explained above), the suppression of their exculpatory statements was not in bad faith as a matter of law. Defendants supply no authority to support this novel argument, and it ignores all the contrary precedent on this issue. *See* Pls.' Opp'n 29–30. As a result, Plaintiffs' suppression of evidence claim should proceed to trial.

Second, Defendants refuse to accept Hunter's and Alderman's under-oath statements, *see, e.g.*, ECF Nos. 202-20, 202-22, which must be credited. They go so far as to ask for an "inference" in their favor that these witnesses "are now confused about what they told detectives and the State before trial[.]" Defs.' Reply 15. Such credibility determinations are for a jury.

Third, Defendants' new argument attempting to align this case with *Johnson v. Baltimore Police Department*, Civil No. ELH-19-0968, 2022 WL 9976525 (D. Md. Oct. 14, 2022) fail. Defs.' Reply 16. There, the court found that the suppressed witness statement was "materially consistent with the witness's trial testimony." *Johnson*, 2022 WL 9976525, at *11. By contrast, the suppressed Hunter and Alderman statements (that they did not witness the murder) were materially *inconsistent* with Thomas's trial testimony (that she, Hunter, and Alderman witnessed the murder together). If disclosed, the two independent witness statements contradicting Thomas's account would have offered powerful impeachment of Thomas, casting her "in a different light by seriously undermining" her testimony. *Juniper v. Zook*, 876 F.3d 551, 571 (4th Cir. 2017).

More fundamentally, by analyzing Hunter's and Alderman's statements in isolation, Defendants continue to ignore that the proper analysis is whether, taken together, the five pieces of suppressed evidence were material. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (materiality of suppressed evidence must be "considered collectively, not item by item"). By failing to address the materiality of Bishop's and Capers's Nov. 23 Oral Statements and their undisclosed coercive tactics, *see* Pls.' Opp'n 31, Defendants have conceded the materiality inquiry for Plaintiffs' suppression claim.

### V. Defendants' reliance on new authority regarding "reasonable diligence" fails to address the disputed facts precluding summary judgment.

Defendants devote multiple pages analyzing numerous additional cases regarding their "reasonable diligence" affirmative defense to Plaintiffs' suppression claim. *See* Defs.' Reply 17–21. Not one is a civil case, let alone one where the court dismissed a plaintiff's § 1983 suppression claim based on the affirmative defense at summary judgment. At any rate, these cases support a finding that the reasonable diligence defense is inapplicable here. Under Supreme Court precedent, criminal defendants need not "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Banks v. Dretke*, 540 U.S. 668, 695 (2004); *accord United States v. Blankenship*, 19 F.4th 685, 694 (4th Cir. 2021). Here, as reflected in Defendants' new exhibit, the prosecutors made this representation in a pre-trial disclosure, *see* ECF No. 207-1 at HP3_LI_MAIP 13391, 13395, thus "extinguish[ing]" the availability of the defense, *see United States v. Nelson*, 979 F. Supp. 2d 123, 133 (D.D.C. 2013).

Even if the defense applied here, it could only succeed if "the exculpatory information is not only *available* to the criminal defendant but also lies in a source where a reasonable defendant would have looked," such that a defendant cannot "turn a willfully blind eye to available evidence." *Blankenship*, 19 F.4th at 693–94 (emphasis added) (defendant's knowledge of his *own* employees' exculpatory testimony precluded post-conviction *Brady* claim). Once again, Defendants ignore evidence that creates genuine disputes of material fact. That evidence reflects that Plaintiffs' criminal defense counsel were diligent and the exculpatory information was *not available*, including: defense counsel made repeated, unsuccessful attempts to contact witnesses; their investigator met with two witnesses (Capers and Caldwell) after several attempts, which did not yield exculpatory information; Kincaid instructed Capers not to speak to the public defender's office; Capers and Bishop were so traumatized by Defendants' threats that

8

they did not even tell their mothers what happened; Hunter declined to speak with defense counsel; and Alderman's mother said she was too scared to testify. *See* Pls.' Opp'n 33–35; ECF 196-24, May 28 Trial Tr., at MFM 825 (10:9-11). Moreover, Defendants' assumption that if defense counsel had been able to secure interviews with the witnesses, the exculpatory evidence would have been "available," is fundamentally flawed. *Jimenez v. City of Chicago*, 830 F. Supp. 2d 432, 445 (N.D. Ill. 2011) ("A legal rule that assumes that [a coerced] witness will readily describe the circumstances of the coercion or persuasion simply because the other side's lawyer asks the witness the right question would defy common sense. And just as importantly, it would effectively render *Brady* and its progeny, including *Giglio* . . . a dead letter . . . ."); *id.* at 443–45.

Thus, even assuming the affirmative defense applies, many genuine disputes of material fact remain. On this record, it cannot be concluded, as a matter of law, that Plaintiffs' criminal defense counsel "turn[ed] a willfully blind eye" to evidence that was "available." *See Blankenship*, 19 F.4th at 694.[5] While Defendants may seek to assert the defense at trial, they have not come close to carrying their burden of proving it as a matter of law.

### VI. Defendants' new arguments regarding the failure to intervene claim and qualified immunity are unavailing.

While Defendants initially argued that Plaintiffs' failure to intervene claim lacked factual support, Defs.' Mot. 32–34, they now offer the new legal argument that the claim amounts to vicarious liability, relying on a concurrence from the Seventh Circuit, Defs.' Reply 26. In this Circuit, however, failure to intervene is a well-recognized claim that does not run afoul of the general prohibition on vicarious liability for § 1983 claims. *E.g.*, *Burgess v. Balt. Police Dep't*,

---

[5] Defendants' reliance on the post-conviction case, *United States v. Wilson*, is similarly misplaced, as it did not involve witnesses who refused defense counsel's efforts to meet (or were threatened into silence by police). 901 F.2d 378, 380–81 (4th Cir. 1990). *Wilson* did not concern witness availability, as it appeared defense counsel never even tried to interview the witness pre-trial. *Id.*

9

No. RDB-15-0834, 2017 WL 4947004, at *21 (D. Md. Oct. 31, 2017) (citations omitted). Plaintiffs do not claim that Defendants are vicariously liable; instead, they are personally liable because they failed to intervene to prevent—and participated in—their fellow officers' unconstitutional conduct.

Last, Defendants newly argue that a reasonable officer would not have been aware of his duty to intervene, entitling them to qualified immunity on that claim. Defs.' Reply 27–28. This argument misunderstands the qualified immunity test, which asks in relevant part whether the constitutional right at issue was "clearly established" at the time of the violation. *Gilliam*, 932 F.3d at 234–35. Plaintiffs' failure to intervene claim "derive[s] from their underlying claims" *Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1020 (D. Md. 2019). Here, Plaintiffs claim that Defendants failed to intervene and prevent their fellow officer's fabrication of witness statements. Thus, the underlying right is Plaintiffs' right not to "be deprived of liberty as a result of the fabrication of evidence," which the Fourth Circuit has determined was clearly established in 1983. *Gilliam*, 932 F.3d at 241. Moreover, as Judge Richard D. Bennett explained, even in the absence of "precedent 'on all fours,' courts should not grant qualified immunity if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Burgess*, 2017 WL 4947004, at *20 (quoting *Hope v. Pelzer*, 536 U.S. 730, 752 (2002)). In this case, the evidence supports that Defendants failed to prevent each other's threats of violence, false criminal charges, and family separation against teenage witnesses. That is misconduct that Defendants' expert deemed "criminal," and thus, a reasonable officer would know was unlawful.

## CONCLUSION

For the foregoing reasons and those explained in Plaintiffs' Opposition, the Court should deny Individual Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

_____/s/_____
Kobie A. Flowers (Bar No. 16511)
Andrew D. Freeman (Bar No. 03867)
Chelsea J. Crawford (Bar No. 19155)
Neel K. Lalchandani (Bar No. 20291)
Anthony J. May (Bar No. 20301)
Shane M.K. Doyle (Bar No. 30481)
kflowers@browngold.com
adf@browngold.com
ccrawford@browngold.com
nlalchandani@browngold.com
amay@browngold.com
sdoyle@browngold.com
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

_____/s/_____
Larry A. Nathans (Bar No. 03023)
Booth M. Ripke (Bar No. 25764)
nathans@nathanslaw.com
bripke@nathanslaw.com
Nathans & Ripke LLP
120 E. Baltimore Street, Suite 1800
Baltimore, Maryland 21202
Tel: (410) 783-0272
Fax: (410) 783-0518

*Attorneys for Plaintiffs Alfred Chestnut, Andrew Stewart, Jr., and Ransom Watkins*

Dated: December 2, 2022